**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re | Chapter 11 |
| Sticky's Holdings LLC, *et al.*, | Case No. 24-10856 |
| Debtors.[1] | Joint Administration Requested |

## DECLARATION OF JAMIE GREER IN SUPPORT OF FIRST DAY RELIEF

I, Jamie Greer, hereby declare as follows:

1. I am the chief executive officer ("CEO") of the above-captioned debtors and debtors in possession (collectively, the "Debtors" or "Sticky's").

2. As the Debtors' CEO, I am generally familiar with each of the Debtors' business, day-to-day operations, financial affairs, and books and records. Except as otherwise indicated, the statements set forth in this First Day Declaration are based upon my personal knowledge of the Debtors' operations, information learned from my review of relevant documents, information supplied to me from the Debtors' advisors, or my own opinion based on my knowledge, experience and information concerning the Debtors' operations and financial condition. I am authorized to submit this declaration on behalf of the Debtors. If called to testify, I could and would testify competently to the matters set forth in this declaration.

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number are as follows: Sticky's Holdings LLC (3586); Sticky Fingers LLC (3212); Sticky Fingers II LLC (7125); Sticky Fingers III LLC (3914); Sticky Fingers IV LLC (9412); Sticky Fingers V LLC (1465); Sticky Fingers VI LLC (0578); Sticky's BK 1 LLC (0423); Sticky's NJ 1 LLC (5162); Sticky Fingers VII LLC (1491); Sticky's NJ II LLC (6642); Sticky Fingers IX LLC (5036); Sticky's NJ III LLC (7036); Sticky Fingers VIII LLC (0080); Sticky NJ IV LLC (6341); Sticky's WC 1 LLC (0427); Sticky's Franchise LLC (5232); Sticky's PA GK I LLC (7496); Stickys Corporate LLC (5719); and Sticky's IP LLC (4569). The Debtors' mailing address is 24 E. 23rd Street, New York, NY 10010.

3. On April 25, 2024 (the "Petition Date"), the Debtors filed voluntary petitions commencing these chapter 11 cases (the "Chapter 11 Cases"). The Debtors are eligible, and have elected, to proceed under Subchapter V of title 11 of the United States Code (the "Bankruptcy Code").

4. The Debtors continue to operate their businesses and manage their affairs in the ordinary course of business as debtors in possession. The Debtors have filed various motions identified herein requesting "first day" relief. I submit this declaration in support of such first day relief, as well as to provide support for, and background concerning, the Chapter 11 Cases and other pleadings filed or expected to be filed in this case.

## I. OVERVIEW OF THE DEBTORS' BUSINESSES AND FINANCIAL AFFAIRS

### A. The Debtors' Businesses

5. The Debtors operate a chain of restaurants in New York and New Jersey, focusing primarily on selling high quality chicken fingers and sandwiches. Sticky's uses only the finest ingredients in making its products, including fresh, never frozen, antibiotic-free chicken. With various menu items and over eighteen in-house produced sauces to choose from, Sticky's strives to serve its customers "The Best Damn Chicken."

6. Some of the Debtors' product offerings are shown in the image below:



7. In total, gross sales for the Debtors have averaged $10.3 million, since their founding in 2012.

B. **The Debtors' Capital Structure**

8. Sticky's Holdings LLC ("Sticky's Holdings") is the Debtors' parent company. All but one of the other Debtor entities are wholly owned by Sticky's Holdings.

9. As of the Petition Date, the Debtors' only secured creditor is the Small Business Administration, who entered into Economic Injury Disaster Loans with the Debtors (the "EIDL Loans"). The Debtors are current on the EIDL Loans. Additionally, the Debtors have approximately $1,010,000.00 in unsecured liabilities, mostly consisting of trade payables.

10. Most of the Debtor entities own and operate each of the Debtors' restaurant locations. The Debtors currently operate in twelve (12) different locations. Below is information regarding leases for each of the Debtors' locations:

(a) Sticky's BK 1 LLC leases space at 66 Willoughby Street, Brooklyn, NY 11201 (the "Brooklyn Restaurant"). The landlord of the Brooklyn Restaurant is 432268 LLC.

(b) Sticky Fingers II LLC leases space at 484 Third Avenue, New York, NY 10016 (the "Murray Hill Restaurant"). The landlord of the Murray Hill Restaurant is Vagelatos Realty, LLC. The lease for the Murray Hill Restaurant expired in October 2023, but the Murray Hill Restaurant is operating without a formal lease.

(c) Sticky Fingers III LLC leases space at 598 9th Ave., New York, NY 10036 (the "Hell's Kitchen Restaurant"). The landlord of the Hell's Kitchen Restaurant is 592-598 Ninth Ave LLC.

(d) Sticky Fingers IV LLC leases space at 21-23 Maiden Lane, New York, NY 10038 (the "Maiden Lane Restaurant"). The landlord of the Maiden Lane Restaurant is YJL Holdings LLC.

(e) Sticky Fingers V LLC leases space at 107 E. 14th St., New York, NY 10003 (the "Union Square Restaurant"). The landlord of the Union Square Restaurant is ESRT 10 Union Square, LLC.

(f) Sticky Fingers VI LLC leases space at 1450 Broadway, New York, NY 10018 (the "Bryant Park Restaurant"). The landlord of the Bryant Park Restaurant is 1450 Broadway, LLC.

    (g) Sticky Fingers VII LLC leases space at 466 Lexington Avenue, New York, NY 10017 (the "Lexington Avenue Restaurant"). The landlord of the Lexington Avenue Restaurant is 237 Park LH Owner LLC.

    (h) Sticky Fingers IX LLC leases space at 24 East 23rd Street, New York, NY 10010 (the "Madison Park Restaurant"). The landlord of the Madison Park Restaurant is Rockfeld Group One Madison LLC.

    (i) Stickys WC 1 LLC leases space at 2060 Mall Walk, Yonkers, NY 10704 (the "Cross County Restaurant"). The landlord of the Cross County Restaurant is Marx Realty & Improvement Co.

    (j) Sticky's NJ 1 LLC leases space at 605 Bergen Town Center, Paramus, NJ 07652 (the "Bergen Town Center Restaurant"). The landlord of the Bergen Town Center Restaurant is UE Bergen Mall Owner LLC.

    (k) Sticky's NJ III LLC leases space at 2180 US-22, Union, NJ 07083 (the "Union NJ Restaurant"). The landlord of the Union NJ Restaurant is Rani Management LLC.

    (l) Sticky's NJ IV LLC leases space at 112 Washington St., Hoboken, NJ 07030 (the "Hoboken Restaurant"). The landlord of the Hoboken Restaurant is SRI-WSA Properties I, LLC.

    11. Additionally, the following four Debtor entities were established to run restaurants that are no longer operating:

    (a) Sticky Fingers LLC was established to operate a former restaurant location at 31 W.8th St., New York, NY 10011 (the "Former 8th Street Restaurant"). The Former 8th Street Restaurant ceased operations in October 2021.

(b) Sticky Fingers VIII LLC leased space at 370 7th Avenue, New York, NY 10001 (the "Former 7 Penn Restaurant"). As of April 1, 2024, operations ceased at the Former 7 Penn Restaurant. The landlord of the Former 7 Penn Restaurant is Jeffrey Management Corporation.

(c) Sticky's PA GK I LLC was established to operate a "ghost kitchen"[2] at 3300 Fairmount Avenue, Philadelphia, PA 19104 (the "Philadelphia Location"). The Philadelphia Location ceased operations in May 2021.

(d) Sticky's NJ II LLC leased space at 640 Commons Way, Suite 4240, Bridgewater, NJ 08807 (the "Bridgewater Restaurant"). As of April 13, 2024, operations ceased at the Bridgewater Restaurant. The landlord of the Bridgewater Restaurant is Bridgewater Commons Mall Development.

12. Debtor Sticky's Franchise LLC was established to operate the Debtors' potential franchising business. However, to date, no such franchising operations exist or have been established.

13. Sticky's IP LLC was established to hold intellectual property in connection with the Debtors planned expansion into franchising. However, to date, no such franchising operations exist or have been established and no intellectual property has been transferred into Sticky's IP LLC.

14. Sticky's Corporate LLC was established to enter into a lease arrangement for corporate office space located at 33 E 33rd Street, New York, NY 10016.

## II. EVENTS LEADING TO FILING THE CHAPTER 11 CASES

---

[2] A "ghost kitchen" supports third party delivery orders rather than dine-in customers.

15. The Debtors experienced significant success early in their existence. This success led to rapid growth from roughly $500,000.00 in sales in 2013 to more than $22 million in 2023.

16. Of course, like countless other companies in the food services industry, the Debtors did not anticipate the unprecedented disruption to the restaurant business caused by the spread of the novel coronavirus disease 2019 ("COVID-19"). COVID-19 dramatically impacted the restaurant industry due to quarantine mandates, which had the impact of: (1) closing in store locations; (2) negatively affecting restaurant sales; and (3) forcing businesses to change how their organizations fundamentally operated, including significantly greater reliance on food delivery apps to generate business, which had the effect of substantially increasing the Debtors cost structure. The Debtors' businesses were similarly negatively affected by the impact of COVID-19, with store traffic and revenues suffering irrecoverable damage.

17. Even as COVID-19's most severe effects subsided, New York City (the Debtors' primary center of operations) continues to see lower foot traffic as a result of the "new normal" of shorter work weeks for employees who previously commuted to work in New York City five days a week.

18. Further, during the period following COVID-19, commodity prices for many of the Debtors' key inputs, including chicken and potatoes, have seen unprecedented increases resulting in further pressure on the Debtors' business. In an effort to mitigate the impact of these factors on cash flow, the Debtors were compelled to increase prices for their products, which had a further negative impact on traffic.

19. While the Debtors have adjusted as much as possible to this new reality (and cash flow has steadily improved), the Debtors are still recovering from the financial burdens and new business realities that resulted from COVID-19.

20. As part of its efforts to manage cash flows, the Debtors also exited their corporate office (the "Corporate Office") location at 33 E 33rd Street in New York City in early 2021. On June 22, 2021, the landlord for the Corporate Office, ELK33 East 33rd LLC, filed a motion for summary judgement for the amounts remaining due through the end of the lease term, which case it styled *ELK33 East 3rd LLC v. Sticky's Corporate LLC, Sticky's Holdings, LLC, and Jonathan Sherman,* Case No. 650290/2021 (N.Y. 2021) (the "Corporate Office Litigation"). On June 21, 2023, the Court issued a summary judgment in favor of the plaintiff including an award of attorney's fees, which taken together with the damages, total roughly $600,000.00. While the Debtors have appealed the judgement, the cost of sustaining the appeal of the Corporate Office Litigation have placed a further financial strain on the business, compounding the difficulties caused by the extremely challenging operating environment.

21. Additionally, on June 30, 2022, Sticky Fingers Restaurants, LLC filed an action against Sticky's Holdings in the District Court for the Southern District of New York, for alleged trademark infringement violations, which case is styled *Sticky Fingers Restaurants, LLC v. Sticky's Holdings, LLC*, Case No. 22-cv-5606 (S.D.N.Y. 2022) (the "Pre-Petition Litigation"). The costs and expenses associated with this ongoing Pre-Petition Litigation have imposed significant further financial hardship on the Debtors at the worst possible time.

22. In light of the above, the Debtors were forced to seek additional financing to bolster operations in an effort to increase cash flow. On February 23, 2024, the Debtors entered into an equity financing, issuing new Series D preferred equity interests in Sticky's Holdings to a

number of investors (the "Series D Financing").  Additionally, in connection with the Series D Financing, the Debtors were able to convert certain Convertible Notes issued November 9, 2022 (the "Convertible Notes") and maturing on March 31, 2024.  At the time of the conversion, the Convertible Notes had an accrued value of approximately $2,420,000.00.  As a result of the conversion, the Debtors were able to substantially reduce their short-term liquidity needs.

23. Notwithstanding the Series D Financing, the financial headwinds described above being faced by the Debtors have made it nearly impossible to continue operations in light of the Debtors' existing obligations, and a financial restructuring has become necessary through these cases.

24. The Debtors file these cases with the goal of right-sizing their balance sheets and confirming a plan of reorganization that will provide value to their creditors.  The Debtors look forward to working with their creditors, vendors and other parties in interest as they chart a path to restructuring their balance sheet, realizing their full economic potential for the future, and continuing to provide their customers with the delicious meals they desire for years to come.

### III. FIRST DAY MOTIONS

25. Concurrently with the filing of their chapter 11 petitions, the Debtors have filed a number of motions identified herein requesting "first day" relief (the "First Day Motions") that the Debtors believe are necessary to enable them to maximize the value of their estates while the Chapter 11 Cases are pending.

26. The facts set forth in the First Day Motions are incorporated herein in their entirety.  The Debtors request that the Court grant the First Day Motions as critical elements in ensuring a smooth transition into, and stabilizing and facilitating the Debtors' operations during, the pendency of these Chapter 11 Cases.

27. I have reviewed each of the First Day Motions, and the facts set forth in each First Day Motion are true and correct to the best of my knowledge, information and belief with appropriate reliance on the Debtors' personnel and advisors. To this end, the Debtors have filed the following First Day Motions:

   i. *Debtors' Motion for Entry of an Order Directing Joint Administration of Chapter 11 Cases*

   ii. *Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing Continued Use of Cash Management System, (II) Authorizing Use of Prepetition Bank Accounts and Payment Methods, (III) Authorizing Use of Existing Business Forms, (IV) Authorizing Continuation of Ordinary Course Intercompany Transactions, (V) Granting Administrative Priority to Post-Petition Intercompany Claims, (VI) Extending Time to Comply with the Requirements of 11 U.S.C. § 345(b), (VII) Scheduling a Final Hearing, and (VIII) Granting Related Relief*

   iii. *Debtors' Motion Pursuant to Sections 105(A), 363(B), 363(C) and 1107(A) of the Bankruptcy Code and Bankruptcy Rules 6003 and 6004(H) for Interim and Final Orders Authorizing Debtor to (A) Continue Insurance Policies and Agreements Relating Thereto, (B) Honor Certain Prepetition Obligations in Respect Thereof, (C) Renew, Revise, Extend, Supplement, Change or Enter Into New Insurance Coverage as Needed in Their Business Judgment, (D) Maintain the Surety Bond, and (E) Continue to Honor Insurance Premium Financing Obligations*

   iv. *Debtors' Motion for Entry of Interim and Final Orders Authorizing, But Not Directing, the Debtor to Pay Certain Taxes*

   v. *Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to Pay Certain Prepetition Wages, Benefits and Other Compensation Obligations, (II) Authorizing Financial Institutions to Honor All Obligations Related Thereto, and (III) Granting Related Relief*

   vi. *Debtors' Motion for Entry of Interim and Final Orders (I) Prohibiting Utility Providers from Altering, Refusing or Discontinuing Utility Services, (II) Approving Proposed Adequate Assurance of Payment to Utility Providers and Authorizing Debtors to Provide Additional Assurance, (III) Establishing Procedures to Resolve Requests for Additional Assurance and (IV) Granting Related Relief*

   vii. *Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to Honor and Continue Certain Customer Programs, (II)*

       *Authorizing Banks to Honor and Process Checks and Electronic Transfer Requests Related Thereto, and (III) Granting Related Relief*

  viii.  *Debtors' Motion for Interim and Final Orders (I) Authorizing Payment of Prepetition Claims of Certain Critical Vendors and (II) Granting Related Relief*

  ix.  *Debtors' Motion for Entry of Interim and Final Orders Pursuant to Sections 105(a), 363, 541, 1107(a), and 1108 of the Bankruptcy Code, (I) Authorizing the Payment of Prepetition Claims Arising Under (A) the Perishable Agricultural Commodities Act and (B) the Packers and Stockyards Act, and (II) Authorizing Banks to Honor and Process Checks and Electronic Transfer Requests Related to the Foregoing*

  x.  *Debtors' Application for Authorization to Employ and Retain Kurtzman Carson Consultants LLC as Claims and Noticing Agent Effective as of the Petition Date*

28. It is my belief that the relief sought in each of the First Day Motions is necessary for a successful reorganization and to maximize creditor recoveries. It is my further belief that, with respect to those First Day Motions requesting the authority to pay specific prepetition claims or continue selected prepetition programs, *i.e.* the First Day Motions seeking relief related to the Debtors' obligations to their taxing authorities, customers, critical vendors and banks, the relief requested is essential to avoid immediate and irreparable harm to the Debtors' estates. The success of these Chapter 11 Cases depends upon the Debtors' ability to maintain their operations, maximize estate value, and successfully confirm a plan of reorganization. The relief requested in the First Day Motions is a critical component of maintaining uninterrupted business operations and the confidence of key constituencies necessary to implement a successful chapter 11 process.

## **CONCLUSION**

29. I believe approval of the relief requested in the First Day Motions is in the best interests of all stakeholders and respectfully requests that the Court grant all relief requested in the First Day Motions and such other further relief as may be just.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information and belief.

Dated: April 25, 2024
　　　New York, NY　　　　　　　　　　　*/s/ Jamie Greer*
　　　　　　　　　　　　　　　　　　　　Jamie Greer