## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re | Chapter 11 |
| Sticky's Holdings LLC, *et al.*, | Case No. 24-10856 (JKS) |
| Debtors.[1] | Jointly Administered |

## SUBCHAPTER V DEBTORS' MODIFIED FIRST AMENDED PLAN OF REORGANIZATION

**PASHMAN STEIN WALDER HAYDEN, P.C.**
824 North Market Street, Suite 800
Wilmington, DE 19801
Telephone: (302) 592-6496
John Weiss (No. 4160)
Joseph C. Barsalona II (No. 6102)
Email: jweiss@pashmanstein.com
        jbarsalona@pashmanstein.com

Richard C. Solow (admitted *pro hac vice*)
Katherine R. Beilin (admitted *pro hac vice*)
Court Plaza South, East Wing
21 Main Street, Suite 200
Hackensack, NJ 07601
Email: rsolow@pashmanstein.com
        kbeilin@pashmanstein.com

*Counsel to the Debtors and Debtors in Possession*

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number are as follows: Sticky's Holdings LLC (3586); Sticky Fingers LLC (3212); Sticky Fingers II LLC (7125); Sticky Fingers III LLC (3914); Sticky Fingers IV LLC (9412); Sticky Fingers V LLC (1465); Sticky Fingers VI LLC (0578); Sticky's BK I LLC (0423); Sticky's NJ 1 LLC (5162); Sticky Fingers VII LLC (1491); Sticky's NJ II LLC (6642); Sticky Fingers IX LLC (5036); Sticky's NJ III LLC (7036); Sticky Fingers VIII LLC (0080); Sticky NJ IV LLC (6341); Sticky's WC 1 LLC (0427); Sticky's Franchise LLC (5232); Sticky's PA GK I LLC (7496); Stickys Corporate LLC (5719); and Sticky's IP LLC (4569). The Debtors' mailing address is 21 Maiden Lane, New York, NY 10038.

Dated: October 21, 2024

### SUBCHAPTER V DEBTORS' FIRST AMENDED PLAN OF REORGANIZATION

This Plan of Reorganization is presented to you to inform you of the Plan for restructuring the debts of Sticky's Holdings LLC and its Debtor affiliates.

You are encouraged to carefully review the full text of this document, including all exhibits and attachments.  To assist you in your review, please note that a list of definitions and a section of frequently asked questions are at the end of this document.  **Capitalized terms used in this Plan and not otherwise defined are defined in the definitions section the end of the Plan.**

**A HEARING ON THE CONFIRMATION OF THE PLAN IS SCHEDULED FOR NOVEMBER 13, 2024 AT 10:00 A.M., EASTERN TIME IN COURTROOM NO. 6, 3rd FLOOR, AT THE U.S. BANKRUPTCY COURT, DISTRICT OF DELAWARE, 824 N. MARKET STREET, WILMINGTON, DELAWARE 19801.  Parties wishing to participate must make arrangements with the Bankruptcy Court in advance.  Please consult the Bankruptcy Court's website for details.**

Your rights may be affected by this Plan. You should consider discussing this document with an attorney.

Dated: October 21, 2024

**PASHMAN STEIN WALDER HAYDEN, P.C.**
824 North Market Street, Suite 800
Wilmington, DE 19801
Telephone: (302) 592-6496
John Weiss (No. 4160)
Joseph C. Barsalona II (No. 6102)
Email: jweiss@pashmanstein.com
        jbarsalona@pashmanstein.com

Richard C. Solow (admitted *pro hac vice*)
Katherine R. Beilin (admitted *pro hac vice*)
Court Plaza South, East Wing
21 Main Street, Suite 200
Hackensack, NJ 07601
Email: rsolow@pashmanstein.com
        kbeilin@pashmanstein.com

*Counsel to the Debtors and Debtors in Possession*

Dated: October 21, 2024

## TABLE OF CONTENTS

**ARTICLE 1** ....................................................................................................................1

**HISTORY OF THE BUSINESS OPERATIONS OF THE DEBTORS** ............................1

    **1.1**    **Nature and history of the Debtors' business.** ...............................................1

    **1.2**    **Filing of the Debtors' Chapter 11 Cases.** ...................................................2

    **1.3.**   **Legal structure and ownership.** ..................................................................2

    **1.4**    **Debtors' assets.** ...........................................................................................2

    **1.5**    **Debtors' liabilities** .......................................................................................2

    **1.6.**   **Current and historical financial conditions.**..............................................3

    **1.7.**   **Events leading to filing the Chapter 11 Cases.** .........................................3

    **1.8**   **Significant Events During the Chapter 11 Cases.** ....................................4

    **1.9**   **Projected recovery of avoidable transfers.** ...............................................6

**ARTICLE 2** ....................................................................................................................6

**THE PLAN** ....................................................................................................................6

    **2.1**    **Unclassified claims.** ...................................................................................6

    **2.2**    **Classes of Claims and Equity Interests.**...................................................9

    **2.3**    **Claim Objections** .......................................................................................12

    **2.4**    **Treatment Of Executory Contracts and Unexpired Leases**...............................12

    **2.5**    **Means For Implementation Of The Plan**...............................................12

    **2.6**    **Payments**....................................................................................................12

    **2.7**    **Post-Confirmation Management** .............................................................13

    **2.8**    **Tax Consequences Of The Plan** ...............................................................13

    **2.9**    **Projections In Support Of Debtors' Ability to Make Payments under The Proposed Plan** .............................................................................................13

**ARTICLE 3** ....................................................................................................................13

**SETTLEMENT WITH US FOODS** .................................................................................**13**

    **ARTICLE 4** ..............................................................................................................**14**

    **FEASIBILITY OF PLAN** .......................................................................................**14**

        **4.1    Ability To Initially Fund Plan** ..............................................................**14**

        **4.2    Ability To Make Further Plan Payments And Operate Without Further Reorganization** ....................................................................................................**15**

    **ARTICLE 5** ..............................................................................................................**16**

    **LIQUIDATION ANALYSIS** ...................................................................................**16**

    **ARTICLE 6** ..............................................................................................................**16**

    **DISCHARGE** ..........................................................................................................**16**

        **6.1    Discharge.** .............................................................................................**16**

    **ARTICLE 7** ..............................................................................................................**16**

    **GENERAL PROVISIONS** .......................................................................................**16**

        **7.1    Title to Assets** ......................................................................................**16**

        **7.2    Binding Effect** .....................................................................................**17**

        **7.3    Severability.** ........................................................................................**17**

        **7.4    Retention of Subject Matter Jurisdiction.** ..........................................**17**

        **7.5    Captions** ..............................................................................................**17**

        **7.6    Modification of Plan.** ..........................................................................**17**

        **7.7    Final Decree.** .......................................................................................**18**

        **7.8    Default; Accelerated Judgment** ...........................................................**18**

        **7.9    Releases by the Debtors** ......................................................................**18**

        **7.10   Releases by Holders of Claims and Equity Interests** ..........................**19**

        **7.11   Exculpation** ..........................................................................................**19**

        **7.12   Injunction Related to Third Parties** ....................................................**19**

        **7.13   Term of Injunctions or Stays** ..............................................................**20**

        **7.14   Nonconsolidated Plan** .........................................................................**20**

    **ARTICLE 8** ..............................................................................................................**20**

**CONDITION PRECEDENT TO THE EFFECTIVE DATE** .................................................**20**

**ARTICLE 9** ...............................................................................................................**21**

    **ATTACHMENTS**.................................................................................................**21**

**ARTICLE 10** .............................................................................................................**21**

    **FREQUENTLY ASKED QUESTIONS** ........................................................**21**

**ARTICLE 11** .............................................................................................................**22**

    **DEFINITIONS** ....................................................................................................**22**

## SUMMARY OF THE PLAN AND DISTRIBUTIONS TO CREDITORS

Under the Plan, the Debtors will devote all of their projected Disposable Income toward the payment of Creditors. The Plan will be funded with the funds that are not for the payment of expenditures necessary for the continuation, preservation, or operation of the business of the Debtors. The Plan provides for payment of Administrative Expenses and Priority Tax Claims in accordance with the Bankruptcy Code, and projects payment to Allowed General Unsecured Claims. Furthermore, Holders of Equity Interests will retain their Equity Interests as they existed on the Commencement Date. The Plan does not contemplate substantive consolidation of any of the Debtors.

## ARTICLE 1

## HISTORY OF THE BUSINESS OPERATIONS OF THE DEBTORS

### 1.1 Nature and history of the Debtors' business.

Sticky's operates a chain of restaurants in New York and New Jersey, focusing primarily on selling high quality chicken fingers and sandwiches. Sticky's uses only the finest ingredients in making its products, including fresh, never frozen, antibiotic-free chicken. With various menu items and over eighteen in-house produced sauces to choose from, Sticky's strives to serve its customers "The Best Damn Chicken." In total, gross sales for the Debtors have averaged $10.3 million since their founding in 2012.



## 1.2    Filing of the Debtors' Chapter 11 Cases.

On April 25, 2024, the Debtors filed voluntary petitions for relief under Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware.  On April 26, 2024, the United States Trustee appointed Natasha Songonuga of Archer & Greiner, P.C. to serve as the Subchapter V trustee (the "Subchapter V Trustee") in these Cases pursuant to Bankruptcy Code section 1183(a).  No other trustee, examiner, or official committee has been appointed in these Chapter 11 Cases.

## 1.3.    Legal structure and ownership.

Each of the Debtors are incorporated under the laws of Delaware.  There are 5,384,095 total shares of common stock in Debtor Sticky's Holdings LLC.

Eighteen of the other Debtors are wholly owned by Debtor Sticky Holdings LLC.  One Debtor, Sticky Fingers VIII LLC, is wholly owned by Debtor Sticky Fingers LLC, which in turn is wholly owned by Debtor Sticky's Holdings LLC.

## 1.4    Debtors' assets.

The Debtors filed detailed Schedules with the Bankruptcy Court on May 23, 2024 [Docket Nos. 108 through 147].  The Schedules set forth all of the Debtors' assets and liabilities as of the Petition Date.  The Debtors' assets include cash, accounts receivable, and intellectual property.

## 1.5    Debtors' liabilities

As of the date hereof, the General Claims Bar Date has run, but the Governmental Claims Bar Date has not.

As of the Petition Date, the Debtors have one secured creditor, the Small Business Administration (the "SBA").  The SBA entered into Economic Disaster Loans with the Debtors (the "EIDL Loans").

Additionally, the Debtors have approximately $110,000,000 in asserted unsecured debt based on the Debtors' claims register, consisting of mostly trade debt, claims asserted by the Debtors' founder and former Chief Executive Officer, and a large unliquidated claim with respect to the Pre-Petition IP Litigation.  In contrast, based on the Debtors' books and records and as set forth in detail in the Schedules, the Debtors believe their general unsecured debt to total approximately $650,000.

### 1.6.    Current and historical financial conditions.

The Debtors' financial condition is reflected in the Debtors' most recently filed monthly operating report.  Debtor Sticky's Holdings LLC's most recently filed monthly operating report is attached hereto as **Exhibit A**.[1]

### 1.7.    Events leading to filing the Chapter 11 Cases.

The Debtors experienced significant success early in their existence.  This success led to rapid growth from roughly $500,000.00 in sales in 2013 to more than $22 million in 2023.  However, like countless other companies in the food services industry, the Debtors did not anticipate the unprecedented disruption to the restaurant business caused by the spread of the novel coronavirus disease 2019 ("COVID-19").   COVID-19 dramatically impacted the restaurant industry due to quarantine mandates, which had the impact of: (1) closing in store locations; (2) negatively affecting restaurant sales; and (3) forcing businesses to change how their organizations fundamentally operated, including significantly greater reliance on food delivery apps to generate business, which had the effect of substantially increasing the Debtors cost structure.  The Debtors' businesses were similarly negatively affected by the impact of COVID-19, with store traffic and revenues suffering irrecoverable damage.

Even as COVID-19's most severe effects subsided, New York City, where the Debtors primarily operate, continues to see lower foot traffic due to the "new normal" of shorter work weeks for employees who previously commuted to work in New York City five days a week.  Further, during the period following COVID-19, commodity prices for many of the Debtors' key inputs, including chicken and potatoes, have seen unprecedented increases resulting in further pressure on the Debtors' business.  To mitigate the impact of these factors on cash flow, the Debtors were compelled to increase prices for their products, which had a further negative impact on traffic.  While the Debtors have adjusted as much as possible to this new reality (and cash flow has steadily improved), the Debtors are still recovering from the financial burdens and new business realities that resulted from COVID-19.

As part of their efforts to manage cash flows, the Debtors also exited their corporate office (the "Corporate Office") location at 33 E 33rd Street in New York City in early 2021.  On June 22, 2021, the landlord for the Corporate Office, ELK33 East 33rd LLC, filed a motion for summary judgement for the amounts remaining due through the end of the lease term, which case it styled *ELK33 East 3rd LLC v. Sticky's Corporate LLC, Sticky's Holdings, LLC, and Jonathan Sherman*, Case No. 650290/2021 (N.Y. 2021) (the "Corporate Office Litigation").  On June 21, 2023, the Court issued summary judgment in favor of the plaintiff including an award of attorney's fees, which taken together with the damages, total roughly $600,000.00.  While the Debtors have appealed the judgement, the cost of sustaining the appeal of the Corporate Office Litigation have placed a further financial strain on the businesses, compounding the difficulties caused by the extremely challenging operating environment.

---

[1]    The Monthly Operating Reports for all other Debtors are located at https://veritaglobal.net/stickysholdings and are also available upon request to Debtors' counsel.

On June 30, 2022, Sticky Fingers Restaurants, LLC filed an action against Sticky's Holdings in the District Court for the Southern District of New York, for alleged trademark infringement violations, which case is styled *Sticky Fingers Restaurants, LLC v. Sticky's Holdings, LLC*, Case No. 22-cv-5606 (S.D.N.Y. 2022) (the "Pre-Petition IP Litigation"). The costs and expenses associated with this ongoing Pre-Petition IP Litigation have imposed significant further financial hardship on the Debtors at the worst possible time. However, in an abundance of caution, and to avoid further arguments and allegations as to infringement, the Debtors changed their branding to "Sticky's Chicken Joint." Therefore, to the extent the Debtors were infringing on any trademarks, no such violations continued after the Petition Date.

In light of the above, the Debtors were forced to seek additional financing to bolster operations in an effort to increase cash flow. On February 23, 2024, the Debtors entered into an equity financing, issuing new Series D preferred equity interests in Sticky's Holdings to a number of investors (the "Series D Financing"). Additionally, in connection with the Series D Financing, the Debtors were able to convert certain Convertible Notes issued November 9, 2022 (the "Convertible Notes") and maturing on March 31, 2024. At the time of the conversion, the Convertible Notes had an accrued value of approximately $2,420,000.00. As a result of the conversion, the Debtors were able to substantially reduce their short-term liquidity needs.

Notwithstanding the Series D Financing, the financial headwinds described above being faced by the Debtors have made it nearly impossible to continue operations in light of the Debtors' existing obligations, and a financial restructuring has become necessary through these cases.

The Debtors filed these cases with the goal of right-sizing their balance sheets and confirming a plan of reorganization that will provide value to their creditors. The Debtors look forward to working with their creditors, vendors and other parties in interest as they chart a path to restructuring their balance sheet, realizing their full economic potential for the future, and continuing to provide their customers with the delicious meals they desire for years to come.

Accordingly, in February 2024, the Debtors started exploring restructuring alternatives to right-size their balance sheet. In connection therewith, in March 2024, the Debtors retained Pashman Stein Walder Hayden, P.C. ("Pashman") to serve as their counsel and chose to file voluntary petitions under Subchapter V to implement the automatic stay and provide the Debtors with the necessary breathing room to successfully complete their restructuring. The Debtors filed these cases with the goal of right-sizing their balance sheet and confirming a plan of reorganization that will provide value to their creditors.

## 1.8  Significant Events During the Chapter 11 Cases.

The Debtors have taken a number of steps in the Chapter 11 Cases to implement their restructuring. Prior to the Petition Date, the Debtors began the process of analyzing their leases and personal property, and determined, in their business judgment, that certain leases and personal property were unnecessary and burdensome to the Debtors' estates and that the costs incurred under the leases constituted an unnecessary drain on the Debtors' already limited resources. Accordingly, the Debtors filed the *First Omnibus Motion for Entry of an Order (I) Authorizing the Rejection of Unexpired Leases, Effective as of May 31, 2024; (II) Authorizing the Abandonment of Certain Personal Property, Effective as of May 31, 2024; (III) Offsetting Landlord 1450*

*Broadway, LLC's Rejection Damages Net of its Exercised Letter of Credit; and (IV) Granting Related Relief* [D.I. 153] (the "<u>First Rejection Motion</u>").  The First Rejection Motion sought to reject two (2) unexpired leases that (1) provided no value to the Debtors' estates; and (2) would cause the estates an unnecessary administrative burden.  On June 18, 2024, the Bankruptcy Court entered an order approving the First Rejection Motion [D.I. 177].

Additionally, on September 30, 2024, the Debtors filed their *Second Omnibus Motion for Entry of an Order (I) Authorizing the Rejection of Certain Executory Contracts, Effective as of September 30, 2024 and (II) Granting Related Relief* [D.I. 326] (the "<u>Second Rejection Motion</u>").  The Second Rejection Motion sought to reject two (2) executory contracts that (1) provided no value to the Debtors' estates; and (2) would cause the estates an unnecessary administrative burden.  A hearing for the Bankruptcy Court to consider the Second Rejection Motion is scheduled November 13, 2024, at 10:00 A.M. (ET).

Also, during the Chapter 11 Cases, the Debtors retained certain Professionals to implement their restructurings.  To this end, the Debtors filed the:

    a.  *Debtors' Application for Entry of an Order Under Sections 327(a), 328(a), and 1107(b) of the Bankruptcy Code, Bankruptcy Rules 2014 and 2016 and Local Rules 2014-1 and 2016-1 Authorizing Retention and Employment of Pashman Stein Walder Hayden, P.C. as Counsel for the Debtors Nunc Pro Tunc to the Petition Date* [D.I. 66].  The Court entered an order approving the retention of Pashman on May 16, 2024. *See* D.I. 103.

    b.  *Debtors' Application for Authorization to Employ and Retain Kurtzman Carson Consultants LLC as Claims and Noticing Agent Effective as of the Petition Date* [D.I. 70] (the "<u>KCC Administrative Advisor Retention Application</u>").  The Court entered the order approving the KCC Administrative Advisor Retention Application on May 16, 2024 [D.I. 102].

    c.  *Debtors' Motion for Entry of an Order Approving Procedures for the Retention and Compensation of Ordinary Course Professionals Nunc Pro Tunc to the Petition Date* [D.I. 152] (the "<u>Ordinary Course Professionals Motion</u>"), which, among other things, sought to retain (1) Aprio Wealth Management, LLC, as tax accountant; (2) Dine Technology, LLC, which provides the Debtors with accounting and restaurant technology services; and (3) Garden Road Capital Advisors, LLC, who serves as the Debtors' agent in a class action lawsuit. The Court entered an order approving this motion on June 17, 2024. *See* D.I. 172.

On July 24, 2024, the Debtors filed their *Subchapter V Debtors' Plan of Reorganization* [D.I. 247] (the "<u>Initial Plan</u>").  On August 21, 2024, the Debtors filed their Plan Supplement [D.I. 268], which includes the Debtors' List of Assumed Contracts and Unexpired Leases, whereby the Cure amounts related to each assumed executed contract are identified.  The deadline to file confirmation objections to the Initial Plan was August 28.  Accordingly, the Debtors received objections from the United States Trustee [D.I. 292] and Sticky Fingers Restaurants, LLC [D.I. 293].

Since filing the Initial Plan, the Debtors experienced a greater cost of goods sold than previously projected, as well as larger administrative costs due to unexpected developments and actions by parties in interest. Additionally, the fast-food service industry experienced a greater decline in revenue than anticipated. While the Debtors strongly believe these negative trends will reverse themselves, the Debtors determined that it was necessary to revise their projections (the "Disposable Income Projections") attached to the Initial Plan, as well as to raise additional funds to satisfy their obligations pursuant to such revised Disposable Income Projections, which are attached to this Plan. Therefore, prior to the Effective Date, certain Holders of Equity Interests have agreed to infuse $300,000 of new capital into the Debtors in the form of new equity, for the purpose of bolstering the Debtors' balance sheet and making necessary distributions pursuant to the Plan (the "Equity Raise").

**1.9  Projected recovery of avoidable transfers.**

The Debtors have not yet performed an analysis of any potential recovery with respect to preference, fraudulent conveyance, or other Avoidance Actions. To the extent any such actions are pursued, the Reorganized Debtors will make such determination.

## ARTICLE 2

## THE PLAN

As required by the Code, the Plan places Claims and Equity Interests in various classes and describes the treatment each class will receive. The Plan also states whether each class of Claims or Equity Interests is impaired or unimpaired. A Claim or Equity Interest can be impaired if the Plan alters the legal, equitable or contractual rights to which the Holders of such Claims or Equity Interests are otherwise entitled. If the Plan is confirmed, each Creditor's recovery is limited to the amount provided in the Plan.

**2.1    Unclassified claims.**

Certain types of Claims are automatically entitled to specific treatment under the Bankruptcy Code. For example, Administrative Expense Claims and Priority Tax Claims are not classified. They are not considered Impaired, and Holders of such Claims do not vote on the Plan. They may, however, object if, in their view, their treatment under the Plan does not comply with that required by the Code. As such, the Plan does not place the following Claims in any Class:

**A.      Administrative Expenses**

The Debtors must pay all Administrative Expense in full, unless the Holder of the Administrative Expense Claim agrees to a different treatment. If an Administrative Expense is disputed, the Bankruptcy Court must determine the validity and amount of the Administrative Claim or, in other words, "allow" the Administrative Expense. Any Administrative Expense that is undisputed and is due and owing on the Confirmation Date must be paid in accordance with this Plan, or upon such other terms as agreed upon by the Debtors and the Holder of such Administrative Claim or court order. If the Administrative Expense Claim is disputed, payment

will be made after the Administrative Expense Claim is allowed by the Bankruptcy Court.

There are several types of Administrative Expense Claims, including the following:

1. If the Debtors incur trade debt in the ordinary course of business following the filing of the Chapter 11 Cases, such Creditors are entitled to be paid in full for the goods or services provided. This ordinary trade debt incurred by the Debtors after the Commencement Date will be paid on the ongoing basis in accordance with the ordinary business practices and terms between the Debtors and their trade creditors.

2. If the Debtors received goods they purchased in the ordinary course of business within 20 days before the Petition Date, the value of the goods received is an Administrative Expense Claim.

3. Administrative Expense Claims also include any post-petition fees and expenses allowed to Professionals, including the Allowed Claim for the Subchapter V Trustee for fees and expenses, and for attorneys and accountants employed upon Bankruptcy Court authority to render services to the Debtors during the course of the Chapter 11 Cases. These fees and expenses must be noticed to Creditors and approved by the Bankruptcy Court prior to payment.

The following chart lists the Debtors' estimated Administrative Expenses, and their proposed treatment under the Plan:

| Type | Estimated Amount Owed | Proposed Treatment |
|---|---|---|
| Expenses arising in the ordinary course of business after the Petition Date | Approximately $0 | Payment through the Plan as follows:<br><br>Not applicable. |
| Administrative Tax Claim | Approximately $0 | Payment through the Plan as follows:<br><br>Not applicable. |
| The value of goods received in the ordinary course of business within 20 days before the Petition Date | Approximately $271,726.72 | Payment through the Plan as follows:<br><br>To be paid in full as soon as practicable pro rata on a monthly basis and in accordance with the Debtors' Disposable Income projections. |
| Professional Fees, as approved by the Bankruptcy Court | Approximately $805,286.71 | Payment through the Plan as follows:<br><br>Allowed Professional Fee |

| | | |
|---|---|---|
| | | Claims that are due and owing as of the Effective Date shall paid in full as soon as practicable pro rata on a monthly basis and in accordance with the Debtors' Disposable Income projections. Further, each Professional who holds a Professional Fee Claim shall be required to File with the Bankruptcy Court, and to serve on all parties required to receive notice, a final Fee Application on or before the Professional Fee Bar Date.  A Professional Fee Claim with respect to which a Fee Application has been properly and timely filed pursuant to this Article 2 shall be paid only to the extent Allowed by Final Order.  Once all of the Professional Fee Claims have been considered and Allowed by the Bankruptcy Court, the Debtors or the Reorganized Debtors, as the case may be, shall pay, after the application of any retainer amounts held by such Professional, such Allowed Professional Fee Claims as soon as practicable and in accordance with the Debtors' Disposable Income projections. |
| Cure Claims | Approximately $164,157.16 | Payment through the Plan as follows:<br><br>To be paid in full in accordance with the |

| | | |
|---|---|---|
| | | Debtors' Disposable Income projections. |
| Subchapter V Trustee | Approximately $10,000 | Payment through the Plan as follows: To be paid in full as soon as practicable from the Subchapter V Trustee's Fee Account.  To the extent amounts are due and owning as of the Effective Date, such amounts to be paid in full as soon as practicable pro rata on a monthly basis and in accordance with Debtors' Disposable Income projections. |
| TOTAL | **$1,251,170.59** | |

### B.    Priority Tax Claims.

Priority Tax Claims are unsecured income, employment, and other taxes described by section 507(a)(8) of the Code.  Unless the Holder of such Allowed Priority Tax Claim agrees otherwise, it must receive the present value of such Claim, in regular installments paid over a period not exceeding 5 years from the order of relief.

Each holder of Priority Tax Claim will be paid as set forth in the chart below.

| Type | Estimated Amount Owed | Proposed Treatment |
|---|---|---|
| Priority Tax Claims | $7,700 | Payment through the Plan as follows:  all Allowed Priority Tax Claims shall be paid in full, either through monthly installments commencing and completing in or around December 2024 or otherwise. |

### 2.2    Classes of Claims and Equity Interests.

The classification of Claims against and Equity Interests in the Debtors pursuant to the Plan are as follows and are discussed in more detail below:

| Class | Description | Treatment | Impairment | Entitled |
|---|---|---|---|---|

9

| | | | | to Vote |
|---|---|---|---|---|
| 1 | SBA's Secured Claim | The SBA's Secured Claim shall be reinstated on the Effective Date and paid in accordance with the terms of the EIDL Loan. | Unimpaired | No (Presumed to Accept) |
| 2 | Other Secured Claims | Depending on the applicable Allowed Secured Claim, each Holder shall receive: (1) reinstatement of the subject Allowed Secured Claim; or (2) value that leaves such Allowed Secured Claim otherwise unimpaired. | Unimpaired | No (Presumed to Accept) |
| 3 | General Unsecured Claims | Pro rata payment in monthly installments from Disposable Income commencing in June 2027 and ending on the Last Distribution Date. | Impaired | Yes |
| 4 | Equity Interests | Maintain Existing Equity | Unimpaired | No (Presumed to Accept) |

The following is a more complete discussion of the classes set forth in the Plan, and the proposed treatment that they will receive under the Plan:

A.   **Classes of Secured Claims**

Allowed Secured Claims are Claims secured by property of the Debtors' bankruptcy estate (or that are subject to setoff) to the extent Allowed as secured Claims under section 506 of the Code.  If the value of the collateral or setoffs securing the Creditor's Claim is less than the amount of the Creditor's Allowed Claim, the deficiency will be classified as a General Unsecured Claim.

The following chart identifies the Plan's proposed treatment of Secured Claims against the Debtors:

| Class # | Description | Impairment | Treatment |
|---|---|---|---|
| 1 | SBA's Secured Claim | Unimpaired | The SBA's Secured Claim shall be reinstated on the Effective Date and paid in |

| | Total amount of Claims: $300,000 in principal plus interest | | accordance with the terms of the EIDL Loan. |
|---|---|---|---|
| 2 | Other Secured Claims<br><br>Total amount of Claims asserted: $48,857.00 | Unimpaired | Depending on the applicable Allowed Secured Claim, each Holder shall receive: (1) reinstatement of the subject Allowed Secured Claim; or (2) value that leaves such Allowed Secured Claim otherwise unimpaired. |

B.    **Class of General Unsecured Claims**

General Unsecured Claims are not secured by property of the estate and are not entitled to priority under section 507(a) of the Code.

The following chart identifies the Plan's proposed treatment of General Unsecured Claims against the Debtors:

| Class # | Description | Impairment | Treatment |
|---|---|---|---|
| 3 | General Unsecured Claims<br><br>Approximate amount of Claims asserted: $110,000,000 | Impaired | Except to the extent that a Holder of an Allowed General Unsecured Claim agrees to a different treatment, all Allowed General Unsecured Claims shall be paid pro rata in monthly installments from Disposable Income commencing in June 2027 and ending on the Last Distribution Date. |

C.    **Class of Holders of Equity Interests**

Equity Interest Holders are parties who hold an ownership interest (*i.e.*, equity interest) in the Debtors. In a corporation, entities holding preferred or common stock are Equity Interest Holders.

The following chart sets forth the Plan's proposed treatment of the Class of Equity Interest Holders:

| Class # | Description | Impairment | Treatment |
|---|---|---|---|

| 4 | Equity Interests | Unimpaired | Maintain existing Equity Interest |

### 2.3    Claim Objections

The Debtors or the Reorganized Debtors, as applicable, may object to the amount or validity of any Claim within 180 days of the Confirmation Date (the "Claims Objection Deadline") by filing an objection with the Bankruptcy Court and serving a copy of the objection on the Holder of the Claim; *provided however*, that the Reorganized Debtors may file one or more motions with the Bankruptcy Court on notice and an opportunity for a hearing to extend such deadline from time to time.  The Claim objected to will be treated as a Disputed Claim under the Plan.  If and when a Disputed Claim is finally resolved by the allowance of the Claim in whole or in part, the Debtors or the Reorganized Debtors, as applicable will pay the Allowed Claim in accordance with the Plan.

### 2.4    Treatment Of Executory Contracts and Unexpired Leases

Executory Contracts are contracts where significant performance of the contract remains for both the Debtors and another party to the contract.  The Debtors have the right to reject, assume (*i.e.,* accept), or assume and assign these types of contracts to another party, subject to the Bankruptcy Court's approval.  The paragraphs below explain the Debtors' intentions regarding its Executory Contracts (which includes its unexpired leases) and the impact such intentions would have on the other parties to the Executory Contracts.

The Debtors will reject any Executory Contract that is not expressly included on the Assumed Contract List or that has previously been rejected under section 365 of the Bankruptcy Code by an order of the Bankruptcy Court.

**The deadline for filing a Proof of Claim based on a Rejection Claim arising from the rejection of an Executory Contract that is rejected by the Debtors is 30 days after entry of the Confirmation Order**.   Any Rejection Claim based on the rejection of an Executory Contract will be barred if the Proof of Claim is not timely filed by the applicable Rejection Claim Bar Date, unless the Bankruptcy Court orders otherwise.

### 2.5    Means For Implementation Of The Plan.

The Plan will be funded by the proceeds realized from the operations of the Debtors.  On Confirmation of the Plan, all property of the Debtors, tangible and intangible, including, without limitation, will revert, free and clear of all Claims and Equitable Interests except as provided in the Plan, to the Debtors.

The officers and directors of the Debtors are identified in section 2.7 of this Plan.  Each officer and director shall serve in accordance with applicable non-bankruptcy law and the Debtors' corporate governance documents, as each of the same may be amended from time to time.

### 2.6    Payments

If the Plan is confirmed under section 1191(a) of the Bankruptcy Code, payments to Creditors provided for in the Plan will be made by the Reorganized Debtors.

If the Plan is confirmed under section 1191(b) of the Bankruptcy Code, payments to Creditors provided for in the Plan will be made by the Reorganized Debtors.

### 2.7    Post-Confirmation Management

Greer shall remain the Reorganized Debtors' CEO after the Effective Date.

Zach Finley is the current CFO of the Debtors.  Meredith Saucci is currently a vice president of the Debtors.  After the Effective Date, Meredith Saucci will assume all the duties of the CFO for the Reorganized Debtors.

Paul Tuennerman shall remain the Reorganized Debtors' Executive Vice President after the Effective Date.

The Reorganized Debtors shall have five managers.  The managers of the Reorganized Debtors shall be the following after the Effective Date: (1) Paul Tietz; (2) James Robert Hart; (3) Brian Krumrei; (4) Paul Tuennerman; and (5) vacant (as of the Effective Date).

### 2.8    Tax Consequences Of The Plan

Creditors and Holders of Equity Interests concerned with how the Plan may affect their tax liability should consult with their own accountants, attorneys, and/or advisors.

### 2.9    Projections In Support Of Debtors' Ability to Make Payments under The Proposed Plan

The Debtors have provided projected financial information through Q4 2027.  Those projections are attached in **Exhibit B**.


## ARTICLE 3

## SETTLEMENT WITH US FOODS

As set forth in the Disposable Income Projections, one supplier of goods, US Foods, Inc. ("US Foods") is receiving expedited payment of its Administrative Expense Claim and Cure Claim. Pursuant to the *Master Distribution Agreement*, effective December 3, 2023, by and between Debtor Sticky's Holdings Inc. and US Foods (the "MDA"), US Foods supplies the Debtors with food and other products that are essential to the continued operation of Debtors' businesses. Given the essential nature of US Foods's goods and services, it is critical that the Debtors maintain their relationship with US Foods under current favorable trade terms. Therefore, the Debtors and US Foods have agreed to the following (the "US Foods Settlement"):

- The Debtors shall assume the MDA pursuant to the Plan Supplement and List of Assumed Executory Contracts and Unexpired Leases.
- US Foods' Administrative Expense Claim and Cure Claim shall be paid on the schedule identified on the Disposable Income Projections (the "US Foods Payment Schedule").
- US Foods shall not be permitted to exercise its contractual right to terminate the MDA pursuant to Section 5(a) of the MDA (titled "Termination without Breach") until at least one (1) year following the Effective Date; *provided that* the Debtors timely make the scheduled payments set forth in the US Foods Payment Schedule; *provided further* that if the Debtors fail to timely make a scheduled payment set forth in the US Foods Payment Schedule, US Foods shall provide the Debtors written notice of such default and permit the Debtors the ability to cure such default within five (5) business days after receipt of such notice. For the sake of clarity, US Foods will maintain its right to terminate the MDA pursuant to Sections 5(b) and (c) of the MDA (titled "Termination for Nonpayment and Termination for Breach") upon written notice. If the Debtors breach the MDA or US Foods Settlement for non-payment and as a result of such non-payment, US Foods terminates the MDA, the Debtors' obligation to pay US Foods' Administrative Expense Claim and Cure Claim in accordance with the US Foods Payment Schedule will be unaffected.

Given the critical nature of the US Foods relationship and supply contract with the Debtors, the US Foods Settlement is a sound exercise of the Debtors' business judgment and in the best interests of the Debtors' estates.

Approval of the US Foods Settlement is subject to Bankruptcy Court approval pursuant to the standards set forth in Bankruptcy Rule 9019. Therefore, the entry of the Confirmation Order shall be deemed an approval by the Court pursuant to Bankruptcy Rule 9019 of US Foods Settlement.

## ARTICLE 4

## FEASIBILITY OF PLAN

The Bankruptcy Court must find that Confirmation of the Plan is not likely to be followed by the liquidation, or need for further financial reorganization, of the Debtors or any successor to the Debtors, unless such liquidation or reorganization is proposed in the Plan.

### 4.1 Ability To Initially Fund Plan

The Debtors believe that the Debtors will have enough cash on hand on the Effective Date of the Plan to pay all the Claims and expenses that are entitled to be paid on that date. The projections attached hereto as **Exhibit B** demonstrate the Debtors' ability to make all of the payments due both on the Effective Date, the First Distribution Date, and thereafter.

**4.2** **Ability To Make Further Plan Payments And Operate Without Further Reorganization**

The Debtors' financial projections, attached hereto as **Exhibit B**, show that the Debtors will have a cash flow after paying operating expenses and post-confirmation taxes to meet its obligations under the Plan.  All Disposable Income is devoted to paying Allowed Claims under the Plan.

**YOU SHOULD CONSULT WITH YOUR ACCOUNTANT OR OTHER FINANCIAL ADVISOR IF YOU HAVE ANY QUESTIONS PERTAINING TO THESE PROJECTIONS.**

## ARTICLE 5

## LIQUIDATION ANALYSIS

To confirm the Plan, the Bankruptcy Court must find that Holders of Claims and Equity Interest who do not accept the Plan will receive at least as much under the Plan as such Holders of Claims and Equity Interests would receive in a liquidation under chapter 7 of the Bankruptcy Code. A liquidation analysis is attached hereto as **Exhibit C**.

## ARTICLE 6

## DISCHARGE

**6.1 Discharge.**

**If the Plan is confirmed under § 1191(a)**, on the Confirmation Date of this Plan, the Debtors will be discharged from any debt that arose before Confirmation of this Plan, subject to the occurrence of the Effective Date, to the extent specified in § 1141(d) of the Bankruptcy Code; or

**If the Plan is confirmed under § 1191(b)**, as soon as practicable after completion by the Debtors of all payments due under the Plan, unless the Bankruptcy Court approves a written waiver of discharge executed by the Debtors after the order for relief under this chapter, the Bankruptcy Court shall grant the Debtors a discharge of all debts provided in § 1141(d)(1)(A) of this title, and all other debts allowed under § 503 of this title provided for in this Plan, except any debt-

1. on which the last payment is due after the first three years of the Plan, or such other time not to exceed five years fixed by the Court; or

2. if applicable, of the kind specified in § 523(a) of this title.

This Plan constitutes the Debtors' request that if the Plan is confirmed under § 1191(b), the discharge applies to all debts on which the last payment is due on or before the Final Distribution Date.

## ARTICLE 7

## GENERAL PROVISIONS

**7.1    Title to Assets**

If a Plan is Confirmed under section 1191(A) of the Bankruptcy Code, except as otherwise provided in the Plan or in the Confirmation Order, (i) Confirmation of the Plan vests all of the property of the Estates in the Debtors, and (ii) after Confirmation of the Plan, the property dealt with by the Plan is free and clear of all Claims and Equity Interests.

If a plan is confirmed under section 1191(b) of the Bankruptcy Code, property of the Estate includes, in addition to the property specified in section 541 of the Bankruptcy Code, all property of the kind specified in that section that the Debtors acquire, as well as earnings from services performed by the Debtors, after the date of commencement of the case but before the case is closed, dismissed, or converted to a case under chapter 7, 12, or 13 of the Bankruptcy Code, whichever occurs first. Except as provided in section 1185 of the Bankruptcy Code, the Plan, or the Confirmation Order, the Debtors shall remain in possession of all property of the Estates.

### 7.2    Binding Effect

Notwithstanding Bankruptcy Rules 3020(e), 6004(h) or 7062 or any other Bankruptcy Rule, upon the occurrence of the Effective Date, the terms of this Plan shall be immediately effective and enforceable and deemed binding upon the Debtors, any and all Holders of Claims or Equity Interests (irrespective of whether such Claims or Equity Interests are deemed to have accepted this Plan), all persons that are parties to or are subject to the settlements, compromises, releases, discharges and injunctions described in this Plan, each person acquiring property under this Plan, and any and all non-Debtor parties to Executory Contracts with the Debtors.

### 7.3    Severability.

If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

### 7.4    Retention of Subject Matter Jurisdiction.

The proposed Confirmation Order will provide that the Bankruptcy Court shall retain jurisdiction of this case with regard to the following matters: (i) to make such orders as are necessary or appropriate to implement the provisions of this Plan and to resolve any disputes arising from implementation of the Plan; (ii) to rule on any modification of the Plan proposed under section 1193 of the Bankruptcy Code; (iii) to hear and allow all applications for compensation to Professionals and other Administrative Expense Claims; (iv) to resolve all issues regarding Claims objections, and issues arising from the assumption/rejection of the Executory Contracts; (v) to adjudicate any cause of action which may exist in favor of the Debtors, including Avoidance Actions; and (vi) to hear any other matter not inconsistent with the provisions of the Bankruptcy Code.

### 7.5 Captions

The headings contained in this Plan are for convenience of reference only and do not affect the meanings or interpretation of this Plan.

### 7.6    Modification of Plan.

The Debtors may modify the Plan at any time before Confirmation of the Plan pursuant to § 1193(a). However, the Bankruptcy Court may require additional items including revoting on the Plan.

If the Plan is Confirmed under § 1191(a), the Debtors may also seek to modify the Plan at any time after Confirmation only if (1) the Plan has not been substantially consummated *and* (2) the Bankruptcy Court authorizes the proposed modifications after notice and a hearing.

If the Plan is Confirmed under § 1191(b), the Debtors may seek to modify the Plan at any time only if (1) it is within three years of the Confirmation Date, or such longer time not to exceed five years as fixed by the court *and* (2) the Bankruptcy Court authorizes the proposed modifications after notice and a hearing.  This Plan represents the Debtors' request that the Court enter an order that the Debtors may seek to modify the Plan under such circumstances within three years of the Confirmation Date, since the Plan payments go out three years.

### 7.7    Final Decree.

Once the estate has been fully administered, as provided in Rule 3022 of the Federal Rules of Bankruptcy Procedure, the Debtors, or such other party as the Bankruptcy Court shall designate in the Confirmation Order, shall file a motion with the Bankruptcy Court to obtain a final decree to close the Case.  Alternatively, the Bankruptcy Court may enter such a final decree on its own motion.

### 7.8    Default; Accelerated Judgment

In the event of a post-Effective Date payment default by the Debtors under Sections 2.1 or 2.2 of this Plan, the affected creditor may give notice to the Debtors of the default; and if the default is not cured and remains unresolved twenty-one (21) days after such notice has been given, the Court may enter judgment in favor of the affected creditor and against the Debtors on motion of the affected creditor supported by an affidavit attesting as to the Debtors' payment default, the Debtors' failure to timely cure the same and the giving of notice to the Debtors as provided herein.

### 7.9    Releases by the Debtors

Pursuant to section 1123(b) of the Bankruptcy Code and except as otherwise specifically provided in this Plan or the Plan Supplement, for good and valuable consideration, including the service of the Released Parties to facilitate the expeditious liquidation of the Debtors and the consummation of the transactions contemplated by this Plan, on the Effective Date, the Released Parties are deemed forever released by the Debtors and their Estates, and each of their successors and assigns, from any and all claims, obligations, rights, suits, damages, Causes of Action, remedies and liabilities whatsoever, including any derivative claims asserted or assertable on behalf of the Debtors or the Estates, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity or otherwise, that the Debtors or their Estates would have been legally entitled to assert in its own right (whether individually or collectively) based on or relating to, or in any manner arising from, in whole or in part, the Chapter 11 Cases, the business or contractual arrangements between the Debtors and any of the Released Parties, the negotiation, formulation or preparation of this Plan, any Plan Supplement or related agreements, instruments or other documents (collectively, the "Debtor Released Claims"), other than Debtor Released Claims against a Released Party arising out of the gross negligence, willful misconduct, intentional fraud, or criminal liability of any such person or entity.

**7.10** **Releases by Holders of Claims and Equity Interests**

On the Effective Date, except as otherwise provided herein and except for the right to enforce this Plan, all persons (i) who voted to accept this Plan or who are presumed to have voted to accept this Plan but did not affirmatively mark the box on the ballot to opt out of granting the releases provided under this Plan and (ii) who voted to reject this Plan but did not affirmatively mark the box on the ballot to opt out of granting the releases provided under this Plan, under section 1126(f) of the Bankruptcy Code shall, to the fullest extent permitted by applicable law, be deemed to forever release, and waive the Released Parties of and from all liens, claims, causes of action, liabilities, encumbrances, security interests, interests or charges of any nature or description whatsoever based or relating to, or in any manner arising from, in whole or in part, the Chapter 11 Cases or affecting property of the Estate, whether known or unknown, suspected or unsuspected, scheduled or unscheduled, contingent or not contingent, unliquidated or fixed, admitted or disputed, matured or unmatured, senior or subordinated, whether assertable directly or derivatively by, through, or related to any of the Released Parties and their successors and assigns whether at law, in equity or otherwise, based upon any condition, event, act, omission occurrence, transaction or other activity, inactivity, instrument or other agreement of any kind or nature occurring, arising or existing prior to the Effective Date in any way relating to or arising out of, in whole or in part, the Debtors, the Debtors' prepetition operations, governance, financing, or fundraising, the purchase or sale of the Debtors' securities, the Chapter 11 Cases, the pursuit of Confirmation of this Plan, the consummation of this Plan or the administration of this Plan, including without limitation, the negotiation and solicitation of this Plan, all regardless of whether (a) a Proof of Claim or Equity Interest has been filed or is deemed to have been filed, (b) such Claim or Equity Interest is allowed, or (c) the Holder of such Claim or Equity Interest has voted to accept or reject this Plan, except for willful misconduct, gross negligence, fraud or criminal misconduct; *provided*, *however*, that the Debtors shall not be a Released Party until the Last Distribution Date if the Plan is confirmed under section 1191(b) of the Bankruptcy Code.  Nothing contained herein shall impact the right of any Holder of an Allowed Claim or interest to receive a Distribution on account of its Allowed Claim or Allowed Interest in accordance with this Plan.

**7.11** **Exculpation**

None of the Debtors, their Professionals, Greer, the Debtors' officers and directors, or the Subchapter V Trustee (collectively, the "Exculpated Parties") shall have or incur any liability to any Holder of a Claim or Equity Interest, or other party in interest, with respect to any Exculpated Claim, including, without limitation, any act or omission in connection with, related to, or arising out of, in whole or in part, the Debtors' Chapter 11 Cases from the Petition Date to the Effective Date of the Plan, except for willful misconduct, gross negligence, fraud or criminal misconduct as determined by a Final Order of a court of competent jurisdiction, and, in all respects, the Exculpated Parties shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under this Plan.

**7.12** **Injunction Related to Third Parties**

From and after the Effective Date, all persons who have held, hold or may hold Claims against or Equity Interests in the Debtors are permanently enjoined from commencing or continuing in any manner, any Cause of Action released, to be released or discharged pursuant to this Plan, or the Confirmation Order, from and after the Effective Date, to the extent of the releases, exculpation and discharge granted in this Plan, all Holders of Claims or Equity Interests shall be permanently enjoined from commencing or continuing in any manner against the Released Parties and the Exculpated Parties and their assets and properties, as the case may be, any suit, action or other proceeding, on account of or respecting any claim, demand, liability, obligation, debt, right, cause of action, interest or remedy released or to be released pursuant to this Plan. except as otherwise expressly provided in this Plan, the Plan Supplement or related documents, or for obligations issued pursuant to this Plan, all persons who have held, hold or may hold Claims or Equity Interests that have been released, discharged, or are subject to exculpation, are permanently enjoined, from and after the Effective Date, from taking any of the following actions: (a) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Equity Interests; (b) enforcing, attaching, collecting or recovering by any manner or means any judgment, award, decree or order against such persons on account of or in connection with or with respect to any such Claims or Equity Interests; (c) creating, perfecting or enforcing any encumbrance of any kind against such persons or the property or estates of such persons on account of or in connection with or with respect to any such Claims or Equity Interests; and (d) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Equity Interests released, settled or discharged pursuant to this Plan.

### 7.13    Term of Injunctions or Stays

Unless otherwise provided in this Plan or Confirmation Order, all injunctions or stays provided for under this Plan and ordered in the Confirmation Order or pursuant to sections 105 or 362 of the Bankruptcy Code arising under or entered during the Chapter 11 Cases, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the later of the Effective Date and the date indicated in the order providing for such injunction or stay and to the extent consistent with the terms and provisions of this Plan or the Confirmation Order, as applicable.

### 7.14    Nonconsolidated Plan

Although for purposes of administrative convenience, efficiency, and distributions the Plan has been filed as a joint plan for each of the Debtors and presents together Classes of Claims against, and Interests in, the Debtors, the Plan does not provide for the substantive consolidation of any of the Debtors.

## ARTICLE 8

## CONDITION PRECEDENT TO THE EFFECTIVE DATE

The Effective Date shall not occur unless and until the Equity Raise is consummated and

fully funded to the Debtors as set forth herein.

## ARTICLE 9

## ATTACHMENTS

The following documents are deemed to be part of the Plan:

Exhibit A:    Most recently filed Monthly Operating Report for Debtor Sticky's Holdings

LLC[2]

Exhibit B:    Financial Projections

Exhibit C:    Liquidation Analysis

The Assumed Contracts List, to be included in the Plan Supplement.

## ARTICLE 10

## FREQUENTLY ASKED QUESTIONS

**What are the Debtors Attempting to Do in Chapter 11?** Chapter 11 is the principal reorganization chapter of the Bankruptcy Code. Under Chapter 11, a debtor attempts to restructure the claims held against it. Formulation and confirmation of a plan of reorganization is the primary goal of Chapter 11. When reorganization is not feasible, however, a debtor may propose a liquidating plan under Chapter 11. The plan is the legal document that sets forth the manner and the means by which holders of claims against a debtor will be treated.

**Why Am I Receiving This Plan?** In order to confirm a plan of reorganization, the Bankruptcy Code requires that a debtor solicit acceptances of a proposed plan, which it is doing with this Plan. If the creditors are satisfied with the information provided in the Plan and the terms of the Plan as proposed, and have voted for the Plan and returned the requisite number of ballots to counsel for the Debtors, the Bankruptcy Court may confirm the Plan as proposed by the Debtors.

**How Do I Determine Which Class I Am In?** To determine the Class of your Claim or Equity Interest, you must first determine whether your claim is secured or unsecured. Your claim is secured if you have a validly perfected security interest in collateral owned by the Debtors. If you do not have any collateral, your claim is unsecured. The Table of Contents will direct you to the treatment provided to the Class in which you are grouped. The pertinent section of the Plan dealing with that Class will explain, among other things, who is in that Class, what is the size of the Class, what you will receive if the Plan is Confirmed, and when you will receive what the Plan

---

[2]    The Monthly Operating Reports for all other Debtors are located at https://veritaglobal.net/stickysholdings and are also available upon request to Debtors' counsel.

has provided for you if the Plan is confirmed.  Section 2.2 lists Classes of Claimants and their types of Claims.

**Why Is Confirmation of a Plan of Reorganization Important?** Confirmation of the Plan is necessary because if the Plan is confirmed, the Debtors and all of their creditors are bound by the terms of the Plan.  If the Plan is not confirmed, the Debtors may not pay creditors as proposed in the Plan while the Debtors remain in bankruptcy.

**What Is Necessary to Confirm a Plan of Reorganization?** Confirmation of the Plan requires, among other things, the vote in favor of the Plan of two- thirds in total dollar amount and a majority in number of claims actually voting in each voting class.  If the vote is insufficient, the Bankruptcy Court can still confirm the Plan, but only if certain additional elements are shown including that the plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted, the Plan.

**Am I Entitled to Vote on the Plan?** Any creditor of the Debtors whose Claim is Impaired under the Plan is entitled to vote, if either (i) the creditor's Claim has been scheduled by the Debtors and such claim is not scheduled as disputed, contingent, or unliquidated, or (ii) the creditor has filed a Proof of Claim on or before the last date set by the Bankruptcy Court for such filings. Any Claim to which an objection has been filed (and such objection is still pending) is not entitled to vote, unless the Bankruptcy Court temporarily allows the creditor to vote upon the creditor's motion.  Such motion must be heard and determined by the Bankruptcy Court prior to the date established by the Bankruptcy Court to confirm the Plan.

**How Do I Determine Whether I Am in an Impaired Class?** The Chart in Section 2.2 identifies the Classes of creditors and indicates which Classes are Impaired and entitled to vote.  If your Claim is Impaired, your vote will be considered by the Bankruptcy Court.

**When Is the Deadline by Which I Need to Return My Ballot?** The Plan is being distributed to Claim Holders for their review, consideration, and approval. The deadline by which ballots must have been returned by was August 28, 2024, at 5:00 P.M. (ET).

**How Do I Determine When and How Much I Will Be Paid?** In Article 2 of the Plan, the Debtors have provided both written and financial summaries of what it anticipates each class of creditors will receive under the Plan.

## ARTICLE 11

### DEFINITIONS

### A.    Scope of Definitions

For purposes of this Plan, unless the context otherwise requires, all capitalized terms not otherwise defined shall have the meanings ascribed to them in Article 9 of this Plan.  The definitions and rules of construction set forth in §§ 101 and 102 of the Bankruptcy Code shall apply when terms defined or construed in the Code are used in this Plan.  The definitions that

follow that are found in the Code are for convenience of reference only, and are superseded by the definition found in the Bankruptcy Code.

### B.   Definitions

**11.1 "Administrative Expense Bar Date"** shall apply to Administrative Expense Claims and means the first Business Day that is thirty (30) days after the Effective Date or such other date as established by Final Order of the Bankruptcy Court.

**11.2 "Administrative Expense Claim"** or "**Administrative Claim**" means any right to payment constituting a cost or expense of administration of the Chapter 11 Case under Sections 503(b) and 507(a)(2) of the Bankruptcy Code, including without limitation: (a) any actual and necessary costs and expenses incurred on or after the Commencement Date of preserving the Estate and operating the Debtors' businesses; (b) Claims that have been determined by a Final Order to constitute an administrative expense of the Estate; (c) Professional Fee Claims; and (d) any fees or charges assessed against and payable by the Debtors under Section 1930 of title 28 of the United States Code.

**11.3   "Allowed Claim"** means (a) any Claim against the Debtors, proof of which is filed or by order of the Bankruptcy Court is not or will not be required to be filed, (b) any Claim that has been or is hereafter listed in the Schedules as neither disputed, contingent or unliquidated, and for which no filed Proof of Claim has been filed, or (c) any Claim allowed pursuant to this Plan and, in each such case in (a) and (b) above, as to which either (i) no objection to the allowance thereof has been filed within the applicable period of time fixed by this Plan, the Bankruptcy Code, the Bankruptcy Rules or the Bankruptcy Court, or (ii) such an objection is so filed and the Claim shall have been allowed pursuant to a Final Order (but only to the extent so allowed).

**11.4   "Allowed Priority Tax Claim"** means a Priority Tax Claim to the extent that it is or has become and Allowed Claim, which in any event shall be reduced by the amount of any offsets, credits, or refunds to which the Debtors or Debtors-in-Possession shall be entitled on the Confirmation Date.

**11.5   "Allowed General Unsecured Claim"** means an unsecured claim to the extent it is, or has become, an Allowed Claim, which in any event shall be reduced by the amount of any offsets, credits, or refunds to which the Debtors or Debtors-in-Possession shall be entitled on the Confirmation Date.

**11.6   "Assets"** means all assets and property of the Estates of the Debtors, regardless of whether reflected in the financial records of the Debtors, including but not limited to: Cash, deposits, refunds, rebates, abatements, fixtures, equipment, inventory, contractual interests, intangibles, claims, Cause of Action, suits, setoffs, recoupments, equitable or legal rights, interests and remedies.

**11.7   "Assumed Contracts"** means an Executory Contract deemed assumed effective as of the Effective Date or such other date as may be agreed to by the parties to the Executory Contract or as ordered by the Bankruptcy Court.

23

**11.8** **"Assumed Contracts List"** means the list of Assumed Contracts the Debtors intend to assume pursuant to section 365 of the Bankruptcy Code as of the Effective Date. The Assumed Contract List shall be included with the Plan Supplement.

**11.9** **"Avoidance Actions"** means the Causes of Action under sections 502(d), 542, 544, 545, 547, 548, 549, 550, and 553 of the Bankruptcy Code and any other avoidance actions under the Bankruptcy Code. These may also be referred to as the "Chapter 5 Causes of Action".

**11.10** **"Ballot" or "Ballots"** means the ballots accompanying the Plan upon which Holders of Impaired Claims entitled to vote shall, among other things, indicate their acceptance or rejection of the Plan in accordance with the Plan and the procedures governing the solicitation process, and which must be actually received on or before the Voting Deadline.

**11.11** **"Bankruptcy Code" or "Code"** means title 11 of the United States Code, as amended and in effect on the Commencement Date.

**11.12** **"Bankruptcy Court"** means the United States Bankruptcy Court for District of Delaware having jurisdiction over the Chapter 11 Cases.

**11.13** **"Bankruptcy Rules"** means (a) the Federal Rules of Bankruptcy Procedure as promulgated by the United States Supreme Court under Section 2075 of title 28 of the United States Code, and (b) the Local Rules, in each case, as in effect on the Commencement Date.

**11.14** **"Bar Date"** means the deadline set by the Bankruptcy Court, pursuant to a Final Order or otherwise, for filing Proofs of Claim in the Case, as the context may require, which includes the Administrative Expense Bar Date, the General Claims Bar Date, and the Governmental Claims Bar Date.

**11.15** **"Business Day"** means any day other than: (a) a Saturday, (b) a Sunday, and (c) a "legal holiday" as defined in Bankruptcy Rule 9006(a).

**11.16** **"Cases"** has the same meaning as the term "Chapter 11 Cases".

**11.17** **"Cash"** means legal tender of the United States of America.

**11.18** **"Cash Equivalents"** means equivalents of Cash in the form of readily marketable securities or instruments issued by an Entity, including readily marketable direct obligations of, or obligations guaranteed by, the United States of America, commercial paper of domestic corporations carrying a Moody's rating of "P2" or better, or equivalent rating of any other nationally recognized rating service, or interest bearing certificates of deposit or other similar obligations of domestic banks or other financial institutions having a shareholders' equity or capital of not less than five hundred million dollars ($500,000,000) having maturities of not more than one year, at the then generally prevailing rates of interest for like amounts and like periods.

**11.19  "Causes of Action"** means any and all actions, causes of action, rights, suits, debts, sums of money, damages, judgments, claims, and demands whatsoever, whether known or unknown, existing or hereafter arising, in law, equity, or otherwise, including but not limited to the Avoidance Actions, based in whole or in part upon any act or omission or other event occurring prior to the Commencement Date or during the course of the Case, including through the Effective Date, that belong to the Debtors, the Debtors-in-Possession, or the Estates.

**11.20  "Chapter 11 Cases"** means the cases under Subchapter V of chapter 11 of the Bankruptcy Code in which Sticky's Holdings LLC and its Debtor affiliates are the Debtors-in-Possession.

**11.21  "Claim"** means any "right to payment from the Debtors whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; or any right to an equitable remedy for future performance if such breach gives rise to a right of payment from the Debtors, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, disputed, undisputed, secured or unsecured." 11 U.S.C. § 101(5).

**11.22  "Claims Objection Deadline"** shall have the meaning ascribed to it in Section 2.3. of the Plan.

**11.23  "Class"** means any group of substantially similar Claims or Equity Interests classified by the Plan pursuant to Section 1122 of the Bankruptcy Code.

**11.24  "Commencement Date"** means April 25, 2024, the date the chapter 11 petitions for relief were filed.

**11.25  "Confirmation"** means the entry by the Bankruptcy Court of the Confirmation Order confirming this Plan.

**11.26  "Confirmation Date"** means the date upon which the Bankruptcy Court shall enter the Confirmation Order; *provided*, *however*, that if on motion the Confirmation Order or consummation of the Plan is stayed pending appeal, then the Confirmation Date shall be the entry of the Final Order vacating such day or the date on which such stay expires and is no longer in effect.

**11.27  "Confirmation Hearing"** means the hearing held by the Court to consider the confirmation of the Plan, as it may be adjourned or continued from time to time, which is presently scheduled for November 13, 2024, at 10:00 A.M. (ET).

**11.28  "Confirmation Order"** means an order of the Court or any amendment thereto confirming the Plan in accordance with the provisions of chapter 11 of the Bankruptcy Code.

**11.29  "Convertible Notes"** shall have the meaning ascribed to it in section 1.7 of the Plan.

**11.30** **"Corporate Office"** shall have the meaning ascribed to it in section 1.7 of the Plan.

**11.31** **"Corporate Office Litigation"** shall have the meaning ascribed to it in section 1.7 of the Plan.

**11.32** **"COVID-19"** shall have the meaning ascribed to it in section 1.7 of the Plan.

**11.33** **"Creditor"** has the meaning ascribed to such term in § 101(10) of the Bankruptcy Code.

**11.34** **"Cure"** means the payment or other honoring of all obligations required to be paid or honored in connection with the assumption of an Executory Contract pursuant to § 365 of the Bankruptcy Code, including (a) the cure of any non-monetary defaults to the extent required, if it all, pursuant to § 365 of the Bankruptcy Code, and (b) with respect to monetary defaults, the distribution, within a reasonable period of time following the Effective Date, of Cash, or such other property as may be agreed upon by the parties or ordered by the Bankruptcy Court, with respect to the assumption (or assumption and assignment) of an Executory Contract, pursuant to §365(b) of the Bankruptcy Code, in an amount equal to all unpaid monetary obligations or such other amount as may be agreed upon by the parties, under such Executory Contract, to the extent such obligations are enforceable under the Bankruptcy Code and applicable non-bankruptcy law.

**11.35** **"Debtors and Debtors-in-Possession"** means Sticky's Holdings, LLC, Sticky Fingers LLC, Sticky Fingers II LLC, Sticky Fingers III LLC, Sticky Fingers IV LLC, Sticky Fingers V LLC, Sticky Fingers VI LLC, Sticky's BK 1 LLC, Sticky's NJ 1 LLC, Sticky Fingers VII LLC, Sticky's NJ II LLC, Sticky Fingers IX LLC, Sticky's NJ III LLC, Sticky Fingers VIII LLC, Sticky NJ IV LLC, Sticky's WC 1 LLC, Sticky's Franchise LLC, Sticky's PA GK I LLC, Stickys Corporate LLC, and Sticky's IP LLC, the debtors and debtors in possession in this Case.

**11.36** **"Disallowed"** means a (a) Claim, or any portion thereof, that has been disallowed by a Final Order or a settlement, or as provided in this Plan, (b) Claim or any portion thereof that is Scheduled at zero or as an unknown amount, or as contingent, disputed, and/or unliquidated, and as to which a Bar Date has been established but no Proof of Claim has been timely filed or deemed timely filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or any Final Order of the Bankruptcy Court or otherwise deemed timely filed under applicable law, or (c) Claim or any portion thereof that is not Scheduled and as to which a Bar Date has been established but no Proof of Claim has been timely filed or deemed timely filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or any Final Order of the Bankruptcy Court or otherwise deemed timely filed under applicable law.

**11.37** **"Disposable Income"** shall have the meaning ascribed to it in § 1191(d) of the Bankruptcy Code.

**11.38** **"Disposable Income Projections"** shall have the meaning ascribed to it in section 1.8 of the Plan.

**11.39** **"Disputed Claim"** means any Claim against the Debtors pursuant to § 502 of the Bankruptcy Code which the Debtors has in any way objected to, challenged, or otherwise disputed.

**11.40** **"Distribution"** means a distribution of Cash or other Assets of the Estates made in accordance with the Plan to Holders of Allowed Claims.

**11.41** **"Distribution Date"** means the date on which the Debtors or Subchapter V Trustee, as the case may be, shall make a Distribution, which shall be a date or dates selected by the Debtors in accordance with the terms of this Plan.

**11.42** **"EIDL Loans"** shall have the meaning ascribed to it in Article 1.5 of the Plan.

**11.43** **"Effective Date"** means a Business Day after the Confirmation Order becomes a Final Order.

**11.44** **"Entity"** means an entity as defined in Section 101(15) of the Bankruptcy Code.

**11.45** **"Equity Interest" or Interest"** means an ownership interest in the Debtors.

**11.46** **"Equity Raise"** shall have the meaning ascribed to it in section 1.8 of the Plan.

**11.47** **"Estates"** means the estates created in the Debtors' Chapter 11 Cases containing all assets of the Debtors pursuant to Bankruptcy Code section 541.

**11.48** **"Exculpated Claim"** means any Claim or Causes of Action whatsoever related to any act taken or omitted after the Commencement Date and on or before the Effective Date arising out of the Chapter 11 Cases related to the Debtors, including, without limitation, (i) the negotiation of any settlements entered into, with, or by the Debtors or any Estate representative, (ii) the formulation, preparation, dissemination, negotiation, filing, prosecution, approval or administration of the Plan and/or any financing, investment, or sale agreement with respect to the Debtors, and/or (iii) any contract, instrument, release, assignment, or other agreement or document created or entered into in connection with any such negotiations or settlements of the Chapter 11 Cases, or any financing agreement or settlement agreement in connection therewith, the filing of the Chapter 11 Cases, the pursuit of Confirmation, and the administration implementation of the Plan.

**11.49** **"Exculpated Party" or "Exculpated Parties"** shall have the meaning ascribed to it in Article 6.11 of the Plan.

**11.50** **"Executory Contract"** means all unexpired leases and executory contracts as described in section 365 of the Bankruptcy Code.

**11.51** **"Final Order"** means an order or judgment of the Bankruptcy Court that has not been reversed, stayed, modified or amended and as to which (a) any appeal that has been taken has been finally determined or dismissed, or (b) the time for appeal has expired and no notice of appeal has been filed.

**11.52** **"First Distribution Date"** means the date identified in any notice of Effective Date which shall be the first date of monthly installment payments under this Plan.

**11.53** **"First Rejection Motion"** shall have the meaning set forth in section 1.8 of the Plan.

**11.54** **"General Claims Bar Date"** means June 24, 2024.

**11.55** **"Governmental Claims Bar Date"** means October 22, 2024.

**11.56** **"General Unsecured Claim"** means any Claim against a Debtors that is not (i) a Secured Claim; (ii) entitled to priority under Sections 503 or 507 of the Bankruptcy Code; (iii) an Administrative Expense Claim, or (iv) a Priority Tax Claim.

**11.57** **"Holder"** means the beneficial holder of any Claim or Equity Interest, in its capacity as such.

**11.58** **"Impaired"** shall have the meaning ascribed to it in Section 1124 of the Bankruptcy Code.

**11.59** **"Initial Plan"** shall have the meaning ascribed to it in section 1.8 of the Plan.

**11.60** **"Insiders"** shall have the meaning ascribed to it in Section 101(31) of the Bankruptcy Code, plus all entities under common control with the Debtors as of the Petition Date.

**11.61** **"Joint Admin Motion"** shall have the meaning set forth in section 1.8 of the Plan.

**11.62** **"KCC"** shall have the meaning set forth in section 1.8 of the Plan.

**11.63** **"KCC Claims and Noticing Agent Application"** shall have the meaning set forth in section 1.8 of the Plan.

**11.64** **"KCC Administrative Advisor Retention Application"** shall have the meaning set forth in section 1.8 of the Plan.

**11.65** **"Last Distribution Date"** means three (3) years from the First Distribution Date.

**11.66** **"Liabilities"** means the liabilities of the Estates, whether or not reflected in the financial records of the Debtors.

**11.67** **"Lien"** shall have the meaning ascribed to it in § 101(37) of the Bankruptcy Code, except that a lien that has been or may be avoided or void shall not constitute a Lien for the purposes of the Plan.

**11.68** **"Local Rules"** means the Local Rules of Bankruptcy Practice and Procedures of the United States Bankruptcy Court for the District of Delaware.

**11.69** **"MDA"** shall have the meaning set forth in Article 3 of the Plan.

**11.70** **"Ordinary Course Professionals Motion"** shall have the meaning set forth in section 1.8 of the Plan.

**11.71** **"Pashman"** shall have the meaning set forth in section 1.7 of the Plan.

**11.72** **"Person"** means a person as defined in § 101(41) of the Bankruptcy Code.

**11.73** **"Petition Date"** means the Commencement Date, or April 25, 2024.

**11.74** **"Plan"** means this plan of reorganization for the resolution of outstanding Claims and Interests in the Cases, as may be modified, amended, or supplemented at any time in accordance with the Bankruptcy Code, Bankruptcy Rules, and the terms hereof, including all exhibits, supplements, appendices, and schedules hereto.

**11.75** **"Plan Proponent"** means the Debtors.

**11.76** **"Plan Supplement"** means the compilation of documents and forms of documents, schedules, and exhibits to the Plan, to be filed at least seven (7) calendar days before the deadline to object to the Plan, and any additional documents or schedules filed before the Effective Date as supplements or amendments to the Plan Supplement. The Debtors shall have the right to amend the documents contained in, and exhibits to, the Plan Supplement through the Effective Date.

**11.77** **"Pre-Petition IP Litigation"** shall have the meaning ascribed to it in section 1.7 of the Plan.

**11.78** **"Priority Tax Claim"** means any Claim of a governmental unit (as that term is defined in the Bankruptcy Code) of the kind entitled to priority in payment as specified in Sections 502(i) and 507(a)(8) of the Bankruptcy Code.

**11.79** **"Professional"** means any person or Entity employed by the Debtors in accordance with Sections 327, 328, or 1103 of the Bankruptcy Code, and who shall be compensated for services rendered prior to and including the Effective Date pursuant to Sections 327, 328, 329, 330, or 331 of the Bankruptcy Code.

**11.80** **"Professional Fee Bar Date"** shall apply to Professional Fee Claims and means the first Business Day that is sixty (60) days after the Effective Date or such other date established by Final Order of the Bankruptcy Court.

**11.81** **"Professional Fee Claims"** means an Administrative Claim for reasonable compensation of a Professional for services rendered or expenses incurred in the Chapter 11 Case on or prior to the Effective Date.

**11.82** **"Proof of Claim"** means a Claim filed against the Debtors in the Chapter 11 Cases.

**11.83** **"Record Date"** means the record date for determining the entitlement to vote on the Plan, which date is July 24, 2024.

**11.84** **"Rejected Contract"** means an Executory Contract deemed rejected effective as of the Effective Date or such other date as may be agreed to by the parties to the Executory Contract or as ordered by the Bankruptcy Court.

**11.85** **"Rejection Claim"** means any Claim arising from a Rejected Contract, which is a General Unsecured Claim.

**11.86** **"Rejection Claims Bar Date"** means the deadline to file a Proof of Claim for damages under a Rejected Contract and such deadline is thirty (30) days after the entry of an order by the Bankruptcy Court rejecting such contract or thirty (30) days after entry of the Confirmation Order (in the event the Rejected Contract was rejected pursuant to the Plan), whichever occurs first.

**11.87** **"Released Party"** means each of the following: (a) the Debtors (but only if the Plan is confirmed under section 1191(a) of the Bankruptcy Code); (b) Greer; (c) the Debtors' officers and directors; (d) Pashman; (e) Aprio Wealth Management, LLC; (f) Dine Technology, LLC; (g) Garden Road Capital Advisors, LLC and (h) Kurtzman Carson Consultants LLC (dba Verita); *provided that*, if the Plan is confirmed under section 1191(b), such parties shall only be Released Parties on the Last Distribution Date.

**11.88** **"Representatives"** means, without limitation, any existing or former affiliate, subsidiary, member, officer, director, partner, stockholder, trustee, member, representative, employee, agent, attorney, business advisor, financial advisor, accountant, other Professional, their successors or assigns, or any Person who is or was in control of any of the foregoing.

**11.89** **"Reorganized Debtors"** means the Debtors after the Effective Date. Where the context requires, the term "Debtors" will mean the Reorganized Debtors.

**11.90** **"SBA"** means the Small Business Administration.

**11.91** **"Schedules"** means the schedules of assets and liabilities and the statement of financial affairs filed by the Debtors pursuant to § 521 of the Bankruptcy Code, as such schedules and statement have been or may be supplemented or amended from time to time.

**11.92** **"Second Rejection Motion"** shall have the meaning ascribed to it in section 1.8.

**11.93** **"Secured Claim"** means a Claim that is secured by a Lien (which is valid, perfected, and enforceable under applicable law or by reason of a Final Order) on the property in which the Estate has an interest or that is subject to a set off under § 553 of the Bankruptcy Code,

to the extent of the value of the collateral, as determined in accordance with § 506(a) of the Bankruptcy Code, or to the extent of the amount subject to setoff.

**11.94    "Series D Financing"** shall have the meaning set forth in section 1.7 of the Plan.

**11.95** "**Subchapter V Trustee" or "Trustee"** means Natasha Songonuga, the trustee appointed pursuant to 11 U.S.C. § 1183(a) and whose duties are prescribed under 11 U.S.C. § 1183(b), the Plan, or the order confirming the Plan.

**11.96** "**Subchapter V Trustee's Fee Account**" shall mean the segregated account established by the Debtors pursuant to the *Agreed Order Establishing Reserve Account for Subchapter V Trustee Fees and Expenses* [D.I. 78].

**11.97    "Unclaimed Property"** means any Distributions that are returned to the Debtors or the Subchapter V Trustee, as the case may be, as: (i) undeliverable to a Creditor or (ii) unclaimed by a Creditor or Holder of an Equity Interest.

**11.98    "Unimpaired"** means an Allowed Claim or Equity Interest that is not Impaired.

**11.99    "US Foods"** shall have the meaning ascribed to it in Article 3 of the Plan.

**11.100 "US Foods Payment Schedule"** shall have the meaning ascribed to it in Article 3 of the Plan.

**11.101 "US Foods Settlement"** shall have the meaning ascribed to it in Article 3 of the Plan.

**11.102 "United States Trustee" or "U.S. Trustee"** means the United States Trustee appointed under Section 591 of title 28 of the United States Code to serve in the District of Delaware.

Dated: October 21, 2024

Respectfully submitted,

DEBTORS

By: _/s/ Jamie Greer_
Name: Jamie Greer
CEO