IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re<br><br>Sticky's Holdings LLC, *et al.*,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 24-10856 (JKS)<br><br>Jointly Administered |

**DECLARATION OF JAMIE GREER
IN SUPPORT OF CONFIRMATION OF SUBCHAPTER V
DEBTORS' MODIFIED FIRST AMENDED PLAN OF REORGANIZATION**

I, Jamie Greer, declare that the following is true and correct to the best of my knowledge, information, and belief:

1. I submit this Declaration (this "Declaration") in support of confirmation of the *Subchapter V Debtors' Modified First Amended Plan of Reorganization* [D.I. 368] (as may be further modified, amended, or supplemented from time to time, the "Plan").[2]

2. I am the chief executive officer ("CEO") of the above-captioned debtors and debtors in possession (the "Debtors" or "Sticky's").

3. I am over the age of 18 and am authorized to submit this Declaration on the Debtors' behalf.

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number are as follows: Sticky's Holdings LLC (3586); Sticky Fingers LLC (3212); Sticky Fingers II LLC (7125); Sticky Fingers III LLC (3914); Sticky Fingers IV LLC (9412); Sticky Fingers V LLC (1465); Sticky Fingers VI LLC (0578); Sticky's BK I LLC (0423); Sticky's NJ 1 LLC (5162); Sticky Fingers VII LLC (1491); Sticky's NJ II LLC (6642); Sticky Fingers IX LLC (5036); Sticky's NJ III LLC (7036); Sticky Fingers VIII LLC (0080); Sticky NJ IV LLC (6341); Sticky's WC 1 LLC (0427); Sticky's Franchise LLC (5232); Sticky's PA GK I LLC (7496); Stickys Corporate LLC (5719); and Sticky's IP LLC (4569). The Debtors' mailing address is 21 Maiden Lane, New York, NY 10038.

[2] Capitalized terms used but not defined herein shall have the meaning given to such terms in the Plan or the Confirmation Brief (defined below), as applicable.

1

4. As the Debtors' CEO, I am generally familiar with the Debtors' business, day-to-day operations, financial affairs, and books and records. Except as otherwise indicated, the statements set forth in this Declaration are based upon my personal knowledge of the Debtors' operations, information learned from my review of relevant documents, information supplied to me from the Debtors' advisors, or my own opinion based on my knowledge, experience, and information concerning the Debtors' operations and financial condition. I am authorized to submit this Declaration on behalf of the Debtors. If called to testify, I could and would testify competently to the matters set forth in this Declaration.

5. As this Declaration is provided in support of confirmation of the Plan, I have reviewed and am generally familiar with the terms and provisions of the Plan and applicable requirements set forth under Bankruptcy Code sections 1190, 1191, and 1129.

## BACKGROUND

6. On April 25, 2024 (the "Petition Date"), the Debtors filed voluntary petitions commencing these chapter 11 cases (the "Chapter 11 Cases"). Further facts relating to the Debtors, their background, capital structure, and the circumstances relating to the Debtors' Chapter 11 Cases are set forth in my declaration in support of these Chapter 11 Cases [D.I. 13] (the "First Day Declaration") and incorporated by reference herein.

7. On April 25, 2024, Natasha Songonuga was appointed as the Subchapter V Trustee (the "Subchapter V Trustee"). No other trustee, examiner, or official committee has been appointed in these cases. The Debtors are operating their businesses as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

8.  As detailed in my First Day Declaration, the Debtors experienced success early in their existence. This success led to rapid growth from roughly $500,000.00 in sales in 2013 to more than $22 million in 2023.

9.  Like countless other companies in the food services industry, the Debtors did not anticipate the unprecedented disruption to the restaurant business caused by the spread of the novel coronavirus disease 2019 ("COVID-19"). COVID-19 dramatically impacted the restaurant industry due to quarantine mandates, which had the impact of: (1) closing store locations; (2) negatively affecting restaurant sales; and (3) forcing businesses to change how their organizations fundamentally operated, including significantly greater reliance on food delivery apps to generate business, which had the effect of substantially increasing the Debtors' cost structure. The Debtors' businesses were similarly negatively affected by the impact of COVID-19, with store traffic and revenues suffering irreparable damage.

10. Even as COVID-19's most severe effects subsided, New York City (the Debtors' primary center of operations) continues to see lower foot traffic as a result of the "new normal" of shorter work weeks for employees who previously commuted to work in New York City five days a week. Further, during the period following COVID-19, commodity prices for many of the Debtors' key inputs, including chicken and potatoes, have seen unprecedented increases resulting in further pressure on the Debtors' business. In an effort to mitigate the impact of these factors on cash flow, the Debtors were compelled to increase prices for their products, which had a further negative impact on traffic. While the Debtors have adjusted as much as possible to this new reality (and cash flow has steadily improved), the Debtors are still recovering from the financial burdens and new business realities that resulted from COVID-19.

11. As part of their efforts to manage cash flows, the Debtors also exited their corporate office (the "Corporate Office") location at 33 E 33rd Street in New York City in early 2021. On June 22, 2021, the landlord for the Corporate Office, ELK33 East 33rd LLC, filed a motion for summary judgement for the amounts remaining due through the end of the lease term, which case it styled *ELK33 East 3rd LLC v. Sticky's Corporate LLC, Sticky's Holdings, LLC, and Jonathan Sherman*, Case No. 650290/2021 (N.Y. 2021) (the "Corporate Office Litigation"). On June 21, 2023, the Court issued summary judgment in favor of the plaintiff including an award of attorney's fees, which taken together with the damages, total roughly $600,000.00. While the Debtors appealed the judgement, the cost of sustaining the appeal of the Corporate Office Litigation placed a further financial strain on the business, compounding the difficulties caused by the extremely challenging operating environment.

12. Additionally, on June 30, 2022, Sticky Fingers Restaurants, LLC filed an action against Debtor Sticky's Holdings LLC in the District Court for the Southern District of New York, for alleged trademark infringement violations, which case is styled *Sticky Fingers Restaurants, LLC v. Sticky's Holdings, LLC*, Case No. 22-cv-5606 (S.D.N.Y. 2022) (the "Pre-Petition Litigation"). The costs and expenses associated with this ongoing Pre-Petition Litigation imposed significant further financial hardship on the Debtors at the worst possible time.

13. In light of the above, the Debtors were forced to seek additional financing to bolster operations in an effort to increase cash flow. On February 23, 2024, the Debtors entered into an equity financing, issuing new Series D preferred equity interests in Sticky's Holdings to a number of investors (the "Series D Financing"). Additionally, in connection with the Series D Financing, the Debtors were able to convert certain Convertible Notes issued November 9, 2022 (the "Convertible Notes") and maturing on March 31, 2024. At the time of the conversion, the

Convertible Notes had an accrued value of approximately $2,420,000.00. As a result of the conversion, the Debtors were able to substantially reduce their short-term liquidity needs.

14. Notwithstanding the Series D Financing, the financial headwinds described above that were faced by the Debtors made it nearly impossible to continue operations in light of the Debtors' existing obligations, and a financial restructuring became necessary through these cases.

15. Since the Petition Date, the Debtors' goal has been to cooperate and work with the Subchapter V Trustee and the Debtors' creditors to confirm a plan of reorganization. With such cooperation, the Debtors engaged in various efforts to implement their restructuring in their Chapter 11 Cases, which included the following:

    a. On May 30, 2024, the Debtors' filed the *First Omnibus Motion for Entry of an Order (I) Authorizing the Rejection of Unexpired Leases, Effective as of May 31, 2024; (II) Authorizing the Abandonment of Certain Personal Property, Effective as of May 31, 2024; (III) Offsetting Landlord 1450 Broadway, LLC's Rejection Damages Net of its Exercised Letter of Credit; and (IV) Granting Related Relief* [D.I. 153] (the "First Rejection Motion"). The First Rejection Motion sought to reject two (2) unexpired leases that (1) provided no value to the Debtors' estates; and (2) would cause the estates an unnecessary administrative burden. On June 18, 2024, the Bankruptcy Court entered an order approving the First Rejection Motion [D.I. 177].

    b. Additionally, on September 30, 2024, the Debtors filed their *Second Omnibus Motion for Entry of an Order (I) Authorizing the Rejection of Certain Executory Contracts, Effective as of September 30, 2024 and (II) Granting Related Relief* [D.I. 326] (the "Second Rejection Motion"). On October 22, 2024, the Bankruptcy Court entered an order approving the Second Rejection Motion [D.I. 370].

c. Also, during these Chapter 11 Cases, the Debtors retained certain Professionals to implement their restructurings. To this end, the Debtors filed the *Debtors' Application for Entry of an Order Under Sections 327(a), 328(a), and 1107(b) of the Bankruptcy Code, Bankruptcy Rules 2014 and 2016 and Local Rules 2014-1 and 2016-1 Authorizing Retention and Employment of Pashman Stein Walder Hayden, P.C. as Counsel for the Debtors Nunc Pro Tunc to the Petition Date* [D.I. 66]. The Court entered an Order approving the retention of Pashman on May 16, 2024. *See* D.I. 103. The Debtors also filed the *Debtors' Application for Authorization to Employ and Retain Kurtzman Carson Consultants LLC as Claims and Noticing Agent Effective as of the Petition Date* [D.I. 70] (the "KCC Administrative Advisor Retention Application"). The Court entered the Order approving the KCC Administrative Advisor Retention Application on May 16, 2024 [D.I. 102]. Additionally, the Debtors filed the Debtors' *Motion for Entry of an Order Approving Procedures for the Retention and Compensation of Ordinary Course Professionals Nunc Pro Tunc to the Petition* Date [D.I. 152] (the "Ordinary Course Professionals Motion"), which, among other things, sought to retain (1) Aprio Wealth Management, LLC, as tax accountant; (2) Dine Technology, LLC, which provides the Debtors with accounting and restaurant technology services; and (3) Garden Road Capital Advisors, LLC, who serves as the Debtors' agent in a class action lawsuit. The Court entered an order approving the Ordinary Course Professionals Motion on June 17, 2024 [D.I. 172].

16. Following the aforementioned steps to implement their restructuring, the Debtors filed their proposed Plan on July 24, 2024. The Plan provides that Holders of Administrative Claims and Priority Tax Claims will be paid in full in accordance with the Debtors' Financial

Projections. After payment of all Administrative Claims and Priority Tax Claims, Holders of General Unsecured Claims will receive the Debtors' projected Disposable Income for the balance of the term of the Plan.

17. I am aware that the United States Trustee filed the *United States Trustee's Objection to Confirmation of the Subchapter V Debtors' Plan of Reorganization* [D.I. 292] (the "UST Objection") asserting: (1) the Third-Party Releases (defined below) are inappropriate because they are non-consensual in light of *Harrington v. Purdue Pharma, L.P.*, 144 S. Ct. 2071 (2024); and (2) the Initial Plan included a section called "Compromise and Settlement of Claims and Controversies" (the "Settlement Provision"), which impermissibly deemed the Plan a settlement. I am aware that the Debtors have since removed the Settlement Provision objected to in the UST Objection.

18. I am also aware that on August 28, 2024, Sticky Fingers Restaurants LLC ("SFR") filed the *Sticky Fingers Restaurants LLC's Objection to Subchapter V Debtors' Plan of Reorganization and Reservation of Rights* [D.I. 293] (the "SFR Objection"), generally asserting: (1) the Debtors' financial projections are not sufficiently detailed to establish feasibility; (2) the Plan does not provide for sufficient distributions to Holders of General Unsecured Claims; and (3) the Third-Party Releases are inappropriate.

19. For the reasons set forth in the *Debtors' Brief in Support of Confirmation of Subchapter V Debtors' Modified First Amended Plan of Reorganization* (the "Confirmation Brief") filed concurrently herewith, I believe that the Third-Party Releases are fully consensual, the Release Provisions, and Exculpation Provisions are integral components of the Plan, are consistent with the Bankruptcy Code, and comply with applicable case law and recent precedent, and, as such, should be approved. Additionally, I believe that the Plan is feasible, that the

distributions to General Unsecured Creditors in the Plan are appropriate, and that the Finley Declaration provides sufficient detail and support for the Financial Projections.

20. I am also aware that the Plan contains the US Foods Settlement. For the reasons detailed in the Confirmation Brief, I believe, in my reasonable business judgment, that the US Foods Settlement is the best interests of the Debtors' Estates.

21. As described more fully in the Confirmation Brief, filed concurrently with this Declaration, the Debtors have engaged in extensive discussions and negotiations during these cases with the United States Trustee and other Creditors.

22. The Debtors have worked productively throughout this proceeding with the United States Trustee, the Subchapter V Trustee, and their significant creditors and major equity holders. I understand that the Debtors are seeking non-consensual confirmation of the Plan under section 1191(b) of the Bankruptcy Code.

## COMPLIANCE WITH THE BANKRUPTCY CODE

A. **Plan Compliance with Bankruptcy Code (11 U.S.C. 1129(a)(1))**.

23. I believe that the Plan complies with the applicable provisions of the Bankruptcy Code including, but not limited to, the following:

> (i) *Proper Classification (11 U.S.C. §§ 1122, 1123(a)(1))*. Article 2 of the Plan designates four (4) classes of Claims or Equity Interests. I am familiar with the classification of Claims and Equity Interests in the Plan and believe that such classification system is based upon the legal nature and relative rights of the Claims and Equity Interests and is not proposed for any improper purposes. Each Class contains only Claims or Equity Interests that are substantially similar to other Claims and Equity Interests therein.

*(ii) Specified Treatment of Unimpaired Claims (11 U.S.C. §§ 1123(a)(2)).* The Plan specifies whether each Class of Claims and Equity Interests is unimpaired under the Plan, and sets forth the treatment of such classes of Claims and Equity Interests.

*(iii) Specified Treatment of Impaired Classes (11 U.S.C. § 1123(a)(3)).* The Plan specifies whether each Class of Claims and Equity Interests is impaired under the Plan, and sets forth the treatment of such classes of Claims and Equity Interests.

*(iv) No Discrimination (11 U.S.C. § 1123(a)(4)).* Pursuant to the Plan, the treatment of each Claim or Equity Interest in each particular Class is the same as the treatment of each other Claim or Equity Interest in such Class, unless the holder of a particular Claim or Equity Interest has agreed to a less favorable treatment of such particular Claim or Equity Interest.

*(v) Implementation of the Plan (11 U.S.C. § 1123(a)(5)).* Article 2.5 of the Plan, as well as various other provisions of the Plan, provides adequate and proper means for implementation of the Plan. The Reorganized Debtors will fund distributions under the Plan after the Effective Date to implement the Plan.

*(vi) Nonvoting Equity Securities (11 U.S.C. § 1123(a)(6)).* The Plan does not contemplate the issuance of non-voting equity securities.

*(vii) Continuation of Existing Corporate Officers and Directors (11 U.S.C. § 1123(a)(7)).* Article 2.7 of the Plan specifies that I shall remain

with the Reorganized Debtors as CEO after the Effective Date. Article 2.7 also details the Reorganized Debtors' other post-confirmation management.

(viii)    *Impairment of Classes (11 U.S.C. § 1123(b)(1))*. Article 2 of the Plan impairs or leaves unimpaired, as the case may be, each Class of Claims or Equity Interests under the Plan. Specifically: (a) Small Business Administration's Secured Claim (Class 1), Other Secured Claims (Class 2), and Equity Interests (Class 4) are presumed to have accepted the plan; and General Unsecured Claims (Class 3) are impaired under the Plan and are entitled to vote on the Plan.

(ix)    *Treatment of Executory Contracts and Unexpired Leases 11 U.S.C.§ 1123(b)(2))*. Pursuant to Article 2.4 of the Plan, on the Effective Date, the Debtors shall be conclusively deemed to have assumed all Executory Contracts that are identified on the Assumed Contracts List. The Debtors will reject any Executory Contract that is not expressly included on the Assumed Contract List or that has previously been rejected under section 365 of the Bankruptcy Code by an order of the Bankruptcy Court.

(x)    *Section 1123(b)(1)–(4), (6) of the Bankruptcy Code Releases, Exculpation, etc.* The Plan also includes debtor releases, third-party releases, exculpation, limitation of liability and injunction provisions. These provisions were an integral component of the negotiations and compromises underlying these Chapter 11 Cases and the Plan. The Released Parties and Exculpated Parties participated in good faith with respect to the Debtors' restructuring efforts, these Chapter 11 Cases, and formulating and negotiating the Plan. Based

on my knowledge of the negotiations, these provisions are fair and reasonable, and necessary to the realization of a successful Confirmation.

**B.      Compliance with Bankruptcy Code (11 U.S.C. § 1129(a)(2)).**

24. To the best of my knowledge, the Debtors have complied with the Bankruptcy Code in proposing the Plan and in commencing and conducting Plan solicitation.

**C.      Plan Proposed in Good Faith (11 U.S.C. § 1129(a)(3)).**

25. To the best of my knowledge, the Debtors have proposed the Plan in good faith and not by any means forbidden by law. The Debtors, as proponents of the Plan, have acted in good faith in the negotiation and formulation of the Plan.

**D.      Payments for Services or Costs and Expenses (11 U.S.C. § 1129(a)(4)).**

26. To the best of my knowledge, any payment made or to be made by the Debtors for services or for costs and expenses in or in connection with these Chapter 11 Cases, or in connection with the Plan and incident to the Chapter 11 Cases, outside the ordinary course of business, has been approved by, or is subject to the approval of, the Court as reasonable.

**E.      Directors, Officers, and Insiders (11 U.S.C. § 1129(a)(5)).**

27. Pursuant to Article 2.7 of the Plan, I shall remain with the Reorganized Debtors as CEO after the Effective Date. The Reorganized Debtors' other post-confirmation management are also detailed in Article 2.7 of the Plan.

**G.      No Rate Changes (11 U.S.C. § 1129(a)(6)).**

28. The Plan does not provide for rate changes subject to the jurisdiction of any governmental regulatory agency.

H.   **Best Interests of Creditors Test (11 U.S.C. § 1129(a)(7)).**

29.   I understand that under the "best interests test," with respect to each impaired Class, each Holder of a Claim or Equity Interest against the Debtors has either accepted the Plan or will receive at least as much under the Plan as such Holder would receive in a liquidation under chapter 7 of the Bankruptcy Code on such date.

30.   As described in the Plan, the Debtors have put forth affirmative evidence showing that all Creditors will fare better under the Plan than in a chapter 7 liquidation. The Liquidation Analysis attached as Exhibit C to the Plan demonstrates that Holders of Claims are projected to receive under the Plan at least as much as they would expect to receive in a hypothetical chapter 7 liquidation.

I.   **Acceptance of the Plan (11 U.S.C. § 1129(a)(8)).**

31.   I understand that section 1129(a)(8) requires that each class of claims and interests established under a plan either accept the plan or not be impaired under the plan. 11 U.S.C. § 1129(a)(8). I understand that a class of claims accepts a plan if holders of at least two-thirds in dollar amount and more than one-half in number of claims in that class vote to accept the plan, counting only those claims whose holders actually vote. *See* 11 U.S.C. §§ 1126(c)–(d). However, I further understand that because the Debtors are seeking confirmation pursuant to section 1191(b) of the Bankruptcy Code (because Administrative Expense Claims are being paid over time), section 1129(a)(8) is not applicable to the Plan. *See* 11 U.S.C. § 1191(b) ("[I]f all of the applicable requirements of section 1129(a) of this title, *other than paragraphs (8), (10) and (15)* of that section, are met with respect to a plan, the court, on request of the debtor, shall confirm the plan notwithstanding the requirements of such paragraphs . . . .") (emphasis added).

Nevertheless, the Plan has the support of General Unsecured Creditors, who voted to accept the Plan.

**J.      Treatment of Administrative and Tax Claims (11 U.S.C. § 1129(a)(9)).**

32.     I understand that section 1129(a)(9) of the Bankruptcy Code requires that persons holding claims entitled to priority under section 507(a) of the Bankruptcy Code receive specified cash payments under the plan.  I also understand that, unless the holder of a particular claim agrees to a different treatment with respect to such claim, section 1129(a)(9) of the Bankruptcy Code requires the plan to provide as follows:

  i.   with respect to a claim of a kind specified in section 507(a)(1) or 507(a)(2) of [the Bankruptcy Code], on the effective date of the plan, the holder of such claim will receive on account of such claim cash equal to the allowed amount of such claim;

  ii.  with respect to a class of claims of a kind specified in section 507(a)(3), 507(a)(4), 507(a)(5), 507(a)(6) or 507(a)(7) of
       [the Bankruptcy Code], each holder of a claim of such class will receive —

       1. if such class has accepted the plan, deferred cash payments of a value, as of the effective date of the plan, equal to the allowed amount of such claim; or

       2. if such class has not accepted the plan, cash on the effective date of the plan equal to the allowed amount of such claim; and

  iii. with respect to a claim of a kind specified in section 507(a)(8) of [the Bankruptcy Code], the holder of such claim will receive on account of such claim deferred cash payments, over a period not exceeding six years after the date of assessment of such claim, of a value, as of the effective date of the plan, equal to the allowed amount of such claim.

11 U.S.C. § 1129(a)(9).

33. I believe that the Plan and its proposed treatment of Administrative Expense Claims and Priority Tax Claims satisfy the requirements of section 1129(a)(9). As I understand, pursuant to section 1191(e) and notwithstanding section 1129(a)(9)(A), a plan that provides for the payment through the plan of a claim of a kind specified in paragraph (2) or (3) of section 507(a) of this title may be confirmed under 11 U.S.C. § 1191(b). 11 U.S.C. § 1191(e). In other words, the foregoing types of administrative expense claims can be paid through the life of the plan of reorganization, and the Plan can still confirmed under 11 U.S.C. § 1191(b). Thus, with respect to the Allowed Administrative Claims, the Plan provides that Allowed Administrative Claims will be paid in full as soon as practicable *pro rata* on a quarterly basis in accordance with the Debtors' Disposable Income projections, as is permitted by section 1191(e), unless the Holder agrees or shall have agreed to other treatment of such claim.

34. Additionally, I understand that section 1129(a)(9)(C) provides that claims specified under section 507(a)(8) may be paid in regular installments (i) of a total value, as of the Effective Date of the Plan, equal to the Allowed amount of such claim, (ii) over a period ending not later than 5 years after the date of the order for relief, and (iii) in a manner not less favorable that the most favored nonpriority unsecured claim provided for by the Plan. 11 U.S.C. § 1129(a)(9)(C). The Plan, including provisions under Article 2.1, provides for payment of Priority Tax Claims in monthly installments commencing and completing in or around December 2024, or otherwise. Accordingly, I believe that the Plan can be confirmed.

K. **Acceptance By at Least One Impaired Class (11 U.S.C. § 1129(a)(10)).**

35. I understand that section 1129(a)(10) requires that at least one class of claims that is impaired under the plan has voted to accept the plan, determined without including any acceptance of the plan by any insider. 11 U.S.C. § 1129(a)(10). Because the Debtors are seeking

confirmation pursuant to section 1191(b) of the Bankruptcy Code (because Administrative Expense Claims are being paid over time), section 1129(a)(10) is not applicable. *See* 11 U.S.C. § 1191(b) ("[I]f all of the applicable requirements of section 1129(a) of this title, *other than paragraphs (8), (10) and (15)* of that section, are met with respect to a plan, the court, on request of the debtor, shall confirm the plan notwithstanding the requirements of such paragraphs . . . .") (emphasis added). Nevertheless, the Plan has the support of General Unsecured Creditors, who voted to accept the Plan.

### L.     Feasibility (11 U.S.C. § 1129(a)(11)).

36.     I understand that section 1129(a)(11) requires a court to find that "[c]onfirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtors or any successor to the debtors under the plan, unless such liquidation or reorganization is proposed in the plan." 11 U.S.C. § 1129(a)(11). The Plan and Financial Projections demonstrate the Debtors' ability to make all of the payments due on the Effective Date and thereafter. The Plan will be funded with funds that are not for the payment of expenditures necessary for the continuation, preservation, or operation of the Debtors' business. The Debtors' financial projections show that the Debtors will have sufficient cash flow after paying operating expenses and post-confirmation taxes to meet their obligations under the Plan. All Disposable Income is devoted to paying Allowed Claims under the Plan.

37.     I believe the Finley Declaration provides sufficient detail and support with respect to cash flow set forth in the Financial Projections.

38.     Additionally, as detailed in the Finley Declaration, I believe the Debtors will have sufficient cash on hand on the Effective Date to pay all of the Claims and expenses that are entitled to be paid on that date. Finally, the Debtors will be able to satisfy Allowed General

Unsecured Claims, as set forth in the Plan, until the Last Distribution Date, from the Debtors' Disposable Income.

39. Therefore, I believe that Confirmation of the Plan is not likely to be followed by liquidation or the need for further financial reorganization of the Debtors, thereby satisfying (or eliminating the need to consider) section 1129(a)(11) of the Bankruptcy Code.

**M.** **Payment of Fees (11 U.S.C. 1129(a)(12)).**

40. I understand that section 1129(a)(12) requires that a plan provide that all fees payable under 28 U.S.C. § 1930 be paid on or before the effective date of the plan. Here, the Plan provides for the payment of all such fees. Accordingly, I believe the Plan complies with the requirements of section 1129(a)(12).

**N.** **Retiree Benefits (11 U.S.C. § 1129(a)(13)).**

41. The Debtors provide no "retiree benefits" as such term is defined in section 1114 of the Bankruptcy Code. Therefore, I believe 11 U.S.C. § 1129(a)(13) is inapplicable and need not be addressed.

**O.** **Domestic Support Obligation (11 U.S.C. § 1129(a)(14)).**

42. As the Debtors are not required to pay any domestic support obligation, I believe that 11 U.S.C. § 1129(a)(14) is inapplicable and need not be addressed.

**P.** **Individual Debtor Requirements (11 U.S.C. § 1129(a)(15)).**

43. The Debtors are not "individuals" and, therefore, the requirements of section 1129(a)(15) of the Bankruptcy Code do not apply. Further, I understand that section 1129(a)(15) of the Bankruptcy Code is inapplicable to cases filed under Subchapter V.

**Q.    Section 1129(c) -- Only One Plan.**

44. The Debtors are not presently seeking confirmation of any plan other than the Plan. Therefore, the Plan complies with section 1129(c) of the Bankruptcy Code.

**R.    Principal Purpose of Plan (11 U.S.C. § 1129(d)).**

45. The principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act of 1933.

**S.    Debtor Releases, Third-Party Releases and Exculpation Provision.**

46. The Plan provides for the release of certain claims by the Debtors and the Reorganized Debtors (the "Debtor Releases"), as well as releases for the Debtors' insiders and professionals (the "Third-Party Releases," and together with the Debtor Releases, the "Release Provisions"). Furthermore, the Plan exculpates estate fiduciaries critical to these Chapter 11 Cases (the "Exculpation Provision"). I believe that the Release Provisions and Exculpation Provision are integral components of the Plan, are consistent with the Bankruptcy Code, and comply with applicable case law and recent precedent, and, as such, should be approved. I further believe that the Third-Party Releases are fully consensual.

47. Article 7 of the Plan provides for a customary release of any and all Causes of Action, including derivative claims, with respect to the Debtors' current officers, directors, and managers, each Holder of a Claim or Equity Interest entitled to vote to accept or reject the Plan that votes to accept the Plan, each Holder of a Claim or Equity Interest that is unimpaired and presumes to accept the Plan, and parties related to each of the foregoing[3] in connection with,

---

[3] "**Released Party**" means each of the following: (a) the Debtors (but only if the Plan is confirmed under section 1191(a) of the Bankruptcy Code); (b) Jamie Greer; (c) the Debtors' Officers and Directors; (d) Pashman; (e) Aprio Wealth Management, LLC; (f) Dine Technology, LLC; (g) Garden Road Capital Advisors, LLC; and (h) Kurtzman Carson Consultants LLC (dba Verita).

17

among others, the Debtors, the restructuring efforts and documents, the Chapter 11 Cases and the Plan.

48. In addition, I believe that the Debtor Releases are a valid exercise of the Debtors' business judgment, and are fair, reasonable, and in the best interests of the Debtors' Estate. The Released Parties made valuable contributions to the restructuring process and efforts to negotiate and implement the Plan. Among other things, the Released Parties participated in negotiations with the Debtors in connection with the development of the Plan that ultimately resulted in a confirmable Plan and are integral for implementation of the Plan.

49. I also understand that courts in the Third Circuit routinely approve consensual third-party releases contained in plans. Here, the Plan provides that the Small Business Administration's Secured Claim (Class 1), Other Secured Claims (Class 2), and Equity Interests (Class 4) are unimpaired and presumed to accept the Plan, and General Unsecured Creditors (Class 3) are an impaired class. Importantly, pursuant to the Plan, the only parties that are deemed to consent to the Third-Party Releases are those that are *classified* Holders of Claims or Equity Interests, who also fail to affirmatively opt out of the Third-Party Releases on their respective Ballot or Non-Voting Status Notice and Opt-Out Form. No other party, including Holders of Administrative Expense Claims and Priority Tax Claims, are deemed to consent to the Third-Party Releases. The Creditors and Holders of Equity Interests had notice that the Plan provided for the releases, as it is printed, in bold type face, on the Non-Voting Status Notice and Opt-Out Form, the Class 3 Ballot, and the *Notice of Hearing to Consider Confirmation of the Plan and the Objection Deadline*, as well as notice that Holders of Claims or Equity Interests could opt out of the releases, and how to do so. Specifically, the Non-Voting Status Notice and Opt-Out Form and Ballots included a conspicuous disclosure coupled by a simple, check-box mechanism to opt

out. Therefore, I believe the Third-Party Releases are consensual, appropriate and should be approved.

50. Further, I believe the Exculpation Provision is appropriate and should be approved. I am of the belief that the Exculpated Parties participated in good faith with respect to these Chapter 11 Cases. Negotiation and compromise were crucial to the conduct of these Chapter 11 Cases generally and I do not believe that the formulation of a feasible Plan could have occurred without the protection from liability that the Exculpation Provision provides to the Exculpated Parties. Further, I understand that approval of the Exculpation Provision, which is limited to estate fiduciaries and includes a carve out for gross negligence and willful misconduct, is consistent with related practice in this jurisdiction and others.

**T.    The Plan Meets All of the Confirmation Requirements Under Section 1191(b) and (c) of the Bankruptcy Code.**

51. I understand that to confirm a plan that has not been accepted by all impaired classes, the plan proponent must show that the plan "does not discriminate unfairly" and is "fair and equitable" with respect to the non-accepting impaired classes. In turn, section 1191(c) provides how a plan is "fair and equitable."

52. Class 3 (General Unsecured Claims) are impaired under the Plan and voted to accept the Plan. The Plan does not unfairly discriminate, and it is fair and equitable with respect to Class 3.

53. The Plan is fair and equitable because (1) the Debtors will apply all projected disposable income to make payments under the Plan; (2) the Debtors will be able to make all payments under the Plan for the next three (3) years; and (3) the three-year timeline of the Plan is appropriate.

54. In addition, the Plan does not unfairly discriminate as to General Unsecured Claims, which is an impaired class. No Classes with similarly situated claims are receiving different treatment under the Plan. More specifically, Class 3 does not have similarly situated claims that are receiving different treatment under the Plan. Thus, the Plan's treatment of Claims and Equity Interests is proper because all similarly situated Holders of Claims and Equity Interests will receive substantially similar treatment.

**U.    The US Foods Settlement is in the Best Interests of the Estates**

55. Pursuant to the *Master Distribution Agreement*, effective December 3, 2023, by and between Debtor Sticky's Holdings Inc. and US Foods (the "MDA"), US Foods supplies the Debtors with food and other products that are critical and essential to the continued operation of Debtors' businesses. Given the critical importance of US Foods's goods and services, coupled with the Debtors' inability to find a suitable and comparably priced provider of such goods and services at this time, I believe it is critical that the Debtors maintain their relationship with US Foods under current favorable trade terms.

56. For the reasons set forth in the Confirmation Brief, I believe, in my reasonable business judgment, that entry into the US Foods settlement is in the best interest of the Debtors' Estates and should therefore be approved.

## CONCLUSION

57. Based on the foregoing, I believe that the Plan satisfies the requirements of the Bankruptcy Code and the Bankruptcy Rules and should be confirmed.

Pursuant to section 1746 of title 28 of the United States Code, I declare under penalty of perjury that the foregoing is true and correct.

Dated: November 6, 2024                          /s/ Jamie Greer
                                                                   Name:  Jamie Greer