IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re<br><br>Sticky's Holdings LLC, *et al.*,<br><br>Reorganized Debtors.[1] | Chapter 11<br><br>Case No. 24-10856 (JKS)<br><br>Jointly Administered<br><br>Proposed Obj. Deadline: April [__], 2025 at [__] (ET)<br>Proposed Hearing Date: April [__], 2025 at [__] (ET) |

**REORGANIZED DEBTORS' MOTION FOR ENTRY OF
AN ORDER (I) AUTHORIZING ENTRY INTO PROPOSED LETTER OF
INTENT WITH HARKER PALMER INVESTORS LLC; (II) AUTHORIZING
REORGANIZED DEBTORS AND THEIR PROFESSIONALS TO PERFORM
OBLIGATIONS THEREUNDER; AND (III) GRANTING RELATED RELIEF**

The above-captioned reorganized debtors and debtors in possession (the "Debtors" or "Reorganized Debtors," as applicable), by and through their undersigned counsel, move this Court (the "Motion") for entry of an order, substantially in the form attached hereto as **Exhibit A**, pursuant to sections 105(a) and 363(b) of title 11 of the United States Code (the "Bankruptcy Code") and Rule 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") (i) authorizing the Reorganized Debtors to execute and enter into a proposed letter of intent (the "Harker Palmer LOI") attached as Exhibit 1 to the Proposed Order (as defined below) with Harker Palmer Investors LLC ("Harker Palmer"); (ii) authorizing the Reorganized Debtors and their professionals to perform other obligations thereunder; and (iii) granting related relief. In support of the Motion, the Reorganized Debtors respectfully state as follows:

---

[1] The Reorganized Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number are as follows: Sticky's Holdings LLC (3586); Sticky Fingers LLC (3212); Sticky Fingers II LLC (7125); Sticky Fingers III LLC (3914); Sticky Fingers IV LLC (9412); Sticky Fingers V LLC (1465); Sticky Fingers VI LLC (0578); Sticky's BK I LLC (0423); Sticky's NJ 1 LLC (5162); Sticky Fingers VII LLC (1491); Sticky's NJ II LLC (6642); Sticky Fingers IX LLC (5036); Sticky's NJ III LLC (7036); Sticky Fingers VIII LLC (0080); Sticky NJ IV LLC (6341); Sticky's WC 1 LLC (0427); Sticky's Franchise LLC (5232); Sticky's PA GK I LLC (7496); Stickys Corporate LLC (5719); and Sticky's IP LLC (4569). The Reorganized Debtors' mailing address is 21 Maiden Lane, New York, NY 10038.

**PRELIMINARY STATEMENT[2]**

1. After having successfully confirmed their Plan on November 13, 2024, unforeseen market headwinds, congestion pricing and other detrimental factors put the Reorganized Debtors on the brink of converting their cases to cases under chapter 7. Yet in the face of shuttering for good, the Reorganized Debtors continued to exercise their fiduciary duties and explored all options with multiple parties with the goal of attempting to find a value-maximizing transaction and preserve going concern value for stakeholders.

2. After navigating through many unactionable offers, the Reorganized Debtors have reached agreement with Harker Palmer on the terms of the Harker Palmer LOI. The Harker Palmer LOI provides that the contemplated transactions (the "Transactions") will be effectuated pursuant to approval and confirmation of a modified Plan (the "Modified Plan"). Among other things, the Harker Palmer LOI provides for: (i) the sale of all assets of the Reorganized Debtors (other than real property leases or financed equipment) free and clear of all claims, liens, and interests to Harker Palmer for a purchase price of $2 million plus the assumption of payment obligations on the EIDL loan (the "Purchase Price"); (ii) rejection of all real property leases and executory contracts assumed under the Plan and surrender of equipment to the equipment lessors; and (iii) funding of an Allowed Administrative Claims Reserve with the Net Cash portion of the Purchase Price, less $260,840 that will be used to fund an Allowed General Unsecured Claims Reserve. To allow the parties time to document the terms of the Modified Plan and allow for notice and a hearing on the Modified Plan, the Harker Palmer LOI provides for earnest money deposits totalling $550,000 (a $150,000 portion of which Harker Palmer has already advanced) that are non-refundable upon Court approval of the Harker Palmer LOI. In addition, to

---

[2] Capitalized terms used but not otherwise defined in this preliminary statement shall have the meanings ascribed to them in this Motion or the Harker Palmer LOI, as applicable.

demonstrate the financial wherewithal of Harker Palmer, the Harker Palmer LOI requires a $500,000 refundable deposit upon the filing of the motion to approve the Modified Plan. Such deposits (collectively, the "Deposits") shall be credited against the Purchase Price.

3. The Harker Palmer LOI was determined by the Reorganized Debtors to be the highest and best offer received by the Reorganized Debtors to date. The Harker Palmer LOI also has no exclusivity provision, so the Reorganized Debtors may consider, and choose seek approval of, an alternative transaction on more favorable terms in the future should such an alternative transaction become available. Absent approval of the Harker Palmer LOI, the Reorganized Debtors may be forced to convert these cases to cases under chapter 7 of the Bankruptcy Code, leaving minimal funds for distribution to creditors.

## JURISDICTION

4. This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated as of February 29, 2012. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue of this proceeding and the Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

5. The statutory predicates for the relief requested herein are 28 U.S.C. § 1452, section 105(a) of the Bankruptcy Code, Bankruptcy Rules 9006(b)(1) and 9027(a)(2), and rule 9006-2 of the Local Rules of Bankruptcy Practice and Procedure for the United States Bankruptcy Court for the District of Delaware (the "Local Rules").

6. Pursuant to Local Rule 9013-1(f), the Reorganized Debtors consent to the entry of a final order by the Court if it is determined that the Court, absent consent of the parties, cannot

enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

## BACKGROUND

7. On April 25, 2024 (the "Petition Date"), the Reorganized Debtors commenced voluntary cases under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") as Debtors defined in Bankruptcy Code section 1182(1), and the Reorganized Debtors elected to proceed under Subchapter V of chapter 11 of the Bankruptcy Code pursuant to the Small Business Debtor Reorganization Act, as amended.

8. On April 26, 2024, the United States Trustee appointed Natasha Songonuga of Archer & Greiner, P.C. to serve as the Subchapter V trustee (the "Subchapter V Trustee") in these cases pursuant to Bankruptcy Code section 1183(a). No official committee was appointed in these cases. The Reorganized Debtors are operating their businesses as reorganized debtors in possession pursuant to section 1186(b) of the Bankruptcy Code.

9. Additional detail regarding the Reorganized Debtors, their businesses, the events leading to commencement of these cases, and the facts and circumstances supporting the relief requested herein are set forth in the *Declaration of Jamie Greer in Support of First Day Relief*, sworn to on April 25, 2024 [D.I. 13] (the "First Day Declaration") and are incorporated herein by reference.

10. On November 13, 2024, the Bankruptcy Court entered the *Findings of Fact, Conclusions of Law, and Order Confirming Subchapter V Debtors' Modified First Amended Plan of Reorganization* [D.I. 398] (the "Confirmation Order") confirming the *Subchapter V Debtors' Modified First Amended Plan of Reorganization* [D.I. 368] (the "Plan").

11. Each condition precedent to the effectiveness of the Plan occurred in accordance with the provisions of the Plan. Accordingly, the Plan went effective November 29, 2024 (the "Effective Date").

12. As described in the *Motion of Reorganized Debtors to Convert the Chapter 11 Cases to Cases Under Chapter 7 of the Bankruptcy Code* [D.I. 481] (the "Motion to Convert"), filed February 10, 2025, and herein, the Reorganized Debtors were unable to generate sufficient cash to administer these Chapter 11 Cases and continue as a going concern. The Motion to Convert was initially scheduled for a hearing on February 26, 2025. *See* D.I. 491. On February 24, 2025, the hearing was cancelled and converted to a status conference to be held on March 4, 2025. *See* D.I. 500.

13. On March 4, 2025, the Reorganized Debtors appeared for their first status conference following the Motion to Convert. On that date, Bojangles Restaurants, Inc. ("Bojangles") provided an initial indication of interest to the Reorganized Debtors for consideration. That indication of interest was determined by the Reorganized Debtors' to be unactionable.

14. On March 12, 2025, the Reorganized Debtors appeared for a second status conference. *See* D.I. 510. At that status conference, the Reorganized Debtors explained that they were working with a number of parties to find an actionable solution.

15. Prior to the third status conference scheduled for March 19, 2025, the Reorganized Debtors received email correspondence from Chicken Innovations LLC ("Chicken Innovations") containing diligence requests and potential terms for a possible letter of intent ("LOI"). However, the terms presented by Chicken Innovations were not actionable on the timeline provided by

Chicken Innovations, particularly concerning post-confirmation administrative costs including additional rent that was to be accrued.

16. On March 19, 2025, the Reorganized Debtors appeared for a third status conference. *See* D.I. 517. At that status conference, the Reorganized Debtors advised the Court that it had two parties working on proposed letters of intent (each, an "LOI"), but neither was actionable at that time. The Reorganized Debtors also advised the Court that Harker Palmer was prepared to provide the Reorganized Debtors with an equity contribution of $150,000 (the "Contribution") to allow the Reorganized Debtors time to finalize an LOI that would hopefully allow for the Plan to be modified and proposed to the Court as modified, conditioned upon (a) a status conference hearing on the Motion to Convert being continued to March 31, 2025 and (b) the Contribution being repaid to Harker Palmer if the Reorganized Debtors entered into a transaction with an alternative party providing for an alternative non-refundable deposit of $150,000. The Contribution was earmarked to pay the Reorganized Debtors' professional fees accrued after March 4, 2025, and thereafter the Reorganized Debtors' expenses accrued after March 4, 2025.

17. During the March 19, 2025 status conference, the Court requested that, should any LOI be entered into between the Reorganized Debtors and another party in interest, the Reorganized Debtors file such LOI with the Court. Moreover, several parties expressed concern that absent a possible deal being presented by March 31, 2025, they were likely in favor of conversion. Accordingly, the Court agreed to continue the status conference to March 31, 2025.

18. The Reorganized Debtors and Bojangles had been engaged in intensive negotiations and diligence over the past several weeks regarding the terms and conditions of a Bojangles LOI and the contemplated transactions. Harker Palmer first advised the Reorganized

Debtors that it would propose an LOI in combination with Bojangles on or about March 21, 2025, and after that time began related negotiations with the Reorganized Debtors.

19. On March 25, 2025, the Reorganized Debtors received their first LOI from Harker Palmer, and thereafter, the Reorganized Debtors, Bojangles, and Harker Palmer began negotiating the form of a joint LOI (the "Joint LOI").  Ultimately, the Reorganized Debtors concluded that the Joint LOI was the highest and best LOI available at that time to the Reorganized Debtors in their reasonable business judgment.  No other actionable LOI had been submitted at the time, and the Reorganized Debtors' board of directors authorized the Reorganized Debtors to enter into the Joint LOI.

20. On March 26, 2025, Bojangles, Harker Palmer, and the Reorganized Debtors entered into the Joint LOI.  Pursuant to the terms of the Joint LOI and at the Court's direction, the Reorganized Debtors filed a motion [D.I. 529] to put the Joint LOI before the Court for approval prior to the March 31, 2025 deadline for approval of the Joint LOI pursuant to its terms.

21. On March 28, 2025, Bojangles terminated the Joint LOI.  Shortly thereafter, Chicken Innovations submitted an LOI (the "Chicken Innovations LOI") for consideration by the Reorganized Debtors.

22. On March 28, 2025, the Court held a fourth status conference, during which the Reorganized Debtors apprised the Court of the termination of the Joint LOI and submission of the Chicken Innovations LOI.  The Court cancelled the status conference previously scheduled for March 31, 2025 to allow the Reorganized Debtors time to continue negotiations of any possible actionable LOI.

23. Following the status conference, Harker Palmer indicated its interest in submitting a standalone LOI for the Reorganized Debtors' consideration.  Over the next several days, the

Reorganized Debtors negotiated with both Harker Palmer and Chicken Innovations to attempt to obtain the best possible outcome for creditors.

24. The Reorganized Debtors received the proposed Harker Palmer LOI on March 30, 2025.

25. On April 2, 2025, the Reorganized Debtors received a revised proposed LOI from Chicken Innovations.

26. After considering the latest proposed LOIs from Harker Palmer and Chicken Innovations, the Reorganized Debtors' board of directors selected the Harker Palmer LOI as the highest and best offer, and directed the filing of this Motion and the Harker Palmer LOI with the Court for its consideration.

27. The Harker Palmer LOI provides for the following, among other things:[3]

    a. nonrefundable deposits in the aggregate amount of $950,000 in the form of (i) the First Earnest Money Deposit in the amount of $150,000, which has already been advanced and (ii) the Second Earnest Money Deposit in the amount of $400,000 to be funded prior to approval of the Harker Palmer LOI, $250,000 of which will be allocated to payment of the Reorganized Debtors' landlords for the month of March 2025, and $150,000 of which will be used to pay the Reorganized Debtors' reasonable professional fees and costs in April 2025 as well as the fees and expenses of the Subchapter V Trustee accrued after the Effective Date, with any excess amounts not so used as specified in the Harker Palmer LOI returned to Harker Palmer. The $400,000 Second Earnest Money Deposit becomes non-refundable only upon entry of an order approving the Harker Palmer LOI.

    b. subject to approval of the Harker Palmer LOI and concurrent with the filing of the Modification Motion, a $500,000 Refundable Earnest Money Deposit to be held in trust for the benefit of Harker Palmer, which, upon approval of the Modified Plan, shall be disbursed to the Reorganized Debtors to fund the Reserves;

    c. the establishment of the Allowed Administrative Claims Reserve funded with the Deposits and the Net Cash Portion of the Purchase Price held by the Reorganized Debtors on the Modified Plan Effective Date (less

---

[3] To the extent that the summary of terms set forth herein differs from the terms of the Harker Palmer LOI, the terms of Harker Palmer LOI shall control.

      $260,840), which Allowed Administrative Claims Reserve shall be used to first pay all professional fees incurred by the Reorganized Debtors to resolve Disputed Administrative Claims and out-of-pocket expenses incurred to make distributions on account of the Allowed Administrative Claims, and second to make pro rata payments to the holders of Allowed Administrative Claims;

  d. the establishment of an Allowed General Unsecured Claims Reserve funded with $260,840, which shall be used to first pay all professional fees incurred by the Reorganized Debtors to resolve Disputed General Unsecured Claims and out-of-pocket expenses incurred to make distributions on account of the Allowed General Unsecured Claims, and second to make pro rata payments to holders of Allowed General Unsecured Claims;

  e. subject to approval of the Harker Palmer LOI and concurrent with the filing of the Modification Motion, a $500,000 Refundable Earnest Money Deposit to be held in trust for the benefit of Harker Palmer, which, upon approval of the Modified Plan, shall be disbursed to the Reorganized Debtors to fund the Reserves;

  f. the rejection of all previously assumed real property leases and executory contracts; and

  g. the sale of all assets of the Reorganized Debtors to Harker Palmer for the $2 million Purchase Price free and clear of all liens, claims, and encumbrances, plus the assumption of the Reorganized Debtors' payment obligations under the EIDL loan, with the Deposits being credited against the Purchase Price.

28. The Harker Palmer LOI has been determined by the Reorganized Debtors in their business judgment to present the highest and best offer currently available for the Reorganized Debtors under the circumstances, and to be in the best interests of the Reorganized Debtors' estates and their creditors. The Reorganized Debtors have considered and further determined that no other actionable LOI is currently available for the Reorganized Debtors.

## RELIEF REQUESTED

29. By this Motion, the Reorganized Debtors respectfully request entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Proposed Order") (i) approving the Reorganized Debtors' entry into the Harker Palmer LOI; (ii) authorizing the Reorganized Debtors

and their professionals to perform all obligations thereunder; and (iii) granting related relief.

## BASIS FOR RELIEF

30. Section 363(b) of the Bankruptcy Code authorizes a debtor to enter into transactions outside of the ordinary course of business with court approval. *See* 11 U.S.C. § 363(b). Courts in the Third Circuit have authorized the use or sale of property of the estate outside of the ordinary course of business when such use or sale is grounded upon a "sound business purpose" and is proposed in good faith. *In re Martin*, 91 F.3d 389, 395 (3d Cir. 1996); *see also In re Elpida Memory, Inc.*, No. 12-10947 (CSS), 2012 WL 6090194, at *5 (Bankr. D. Del. Nov. 20, 2012) (noting that it is "well-settled" that a debtor may use its assets outside of the ordinary course where such use "represents the sound exercise of business judgment").

31. To determine whether the business judgment test is met, the court "is required to examine whether a reasonable business person would make a similar decision under similar circumstances." *In re Exide Techs, Inc.*, 340 B.R. 222, 239 (Bankr. D. Del. 2006), *rev'd on other grounds*, 607 F.3d 957 (3d Cir. 2010); *see also In re Helm*, 335 B.R. 528, 538–39 (Bankr. S.D.N.Y. 2006). Once a debtor articulates a valid business justification under 363(b) of the Bankruptcy Code, a presumption arises that the debtor's decision was made on an informed basis, in good faith, and in the honest belief that the action was in the best interests of the debtor's estate. *See, e.g.*, *In re Integrated Res., Inc.*, 147 B.R. 650, 656 (Bankr. S.D.N.Y. 1992) (quoting *Smith v. Van Gorkum*, 488 A.2d 858, 872 (Del. 1985)). The business judgment rule shields a debtor's management from judicial second-guessing, and requires that a court approve a debtor's business decision unless that decision is the product of bad faith or abuse of discretion. *See id*.

32. Moreover, under section 105(a), "the Court may issue any order, process, or judgment that is necessary to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C.

§ 105(a). Section 105(a) empowers the Court to fashion orders necessary to further the purposes of other sections of the Bankruptcy Code. *See, e.g.*, *In re Combustion Eng'g, Inc*., 391 F.3d 190, 236 (3d Cir. 2004) ("The general grant of equitable power contained in § 105(a)… must be exercised within the parameters of the Code itself.").

33. Here, the Reorganized Debtors believe that there are substantial business reasons for them to execute and enter into the Harker Palmer LOI and perform the obligations associated therewith. The Harker Palmer LOI currently represents the greatest opportunity for creditors to recover in these cases, with the alternative likely being conversion of these cases to cases under chapter 7 of the Bankruptcy Code. The incremental value being delivered immediately in the form of the Deposits, and the successful implementation of the Transactions contemplated by the Harker Palmer LOI, benefits the Reorganized Debtors' estates and creditors while avoiding the possible imminent conversion of these cases to chapter 7.

34. In this context, the Reorganized Debtors believe that execution and entry into the Harker Palmer LOI and performing the obligations thereunder is a sound exercise of the Reorganized Debtors' business judgment. Accordingly, the Reorganized Debtors submit that approval of the Harker Palmer LOI and the performance of the required obligations thereunder are appropriate and should be approved by the Court.

### WAIVER OF BANKRUPTCY RULE 6004(a) AND 6004(h)

35. To implement the Harker Palmer LOI, under which time is of the essence, the Reorganized Debtors seek waiver of the notice requirements under Bankruptcy Rule 6004(a) and the 14-day stay of an order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h). It is critical that the Reorganized Debtors and Harker Palmer know if the Harker Palmer LOI is approved by the Court before they proceed with attempting to document the Transactions

addressed therein. Accordingly, any delay in the effectiveness of the order granting this Motion may be prejudicial to the Reorganized Debtors and their estates.

## NOTICE

36. Notice of this Motion will be provided to: (i) the Office of the United States Trustee; (ii) the Subchapter V Trustee; (iii) the Reorganized Debtors' twenty (20) largest unsecured creditors; and (iv) all parties requesting notice pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested herein, the Reorganized Debtors submit that no other or further notice is necessary.

**CONCLUSION**

WHEREFORE, the Reorganized Debtors respectfully request that the Court enter an order substantially in the form attached as **Exhibit A** (i) authorizing and approving the Reorganized Debtors' entry into the Harker Palmer LOI; (ii) authorizing the Reorganized Debtors and their professionals to perform all obligations thereunder; and (iii) granting related relief.

Dated: April 3, 2025
      Wilmington, Delaware

**PASHMAN STEIN WALDER HAYDEN, P.C.**

*/s/John W. Weiss*
John W. Weiss (No. 4160)
Joseph C. Barsalona II (No. 6102)
824 North Market Street, Suite 800
Wilmington, DE 19801
Telephone: (302) 592-6496
Email: jweiss@pashmanstein.com
      jbarsalona@pashmanstein.com

-and-

Katherine R. Beilin (admitted *pro hac vice*)
Court Plaza South, East Wing
21 Main Street, Suite 200
Hackensack, NJ 07601
Telephone: (201) 488-8200
Email: kbeilin@pashmanstein.com

*Counsel to the Reorganized Debtors and Reorganized Debtors in Possession*