**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re<br><br>Sticky's Holdings LLC, *et al.*,<br><br>　　　　Reorganized Debtors.[1] | Chapter 11<br><br>Case No. 24-10856 (JKS)<br><br>Jointly Administered<br><br>**Obj. Deadline:  TBD**<br>**Hearing Date:  TBD** |

**REORGANIZED DEBTORS' MOTION FOR ENTRY OF AN ORDER
(I) AUTHORIZING THE REORGANIZED DEBTORS TO MODIFY,
AND APPROVING MODIFICATIONS TO, THE CONFIRMED
PLAN OF REORGANIZATION, (II) CONFIRMING THE SUBCHAPTER V
REORGANIZED DEBTORS' SECOND MODIFIED FIRST AMENDED
PLAN OF REORGANIZATION, AND (III) GRANTING RELATED RELIEF**

The above-captioned reorganized debtors (the "Reorganized Debtors") file this motion

(this "Motion")[2] pursuant to sections 105, 363, 1191, and 1193(c) of title 11 of the United States

Code (the "Bankruptcy Code")[3] (a) for authority to modify, and approve the modifications to, the

*Subchapter V Debtors' Modified First Amended Plan of Reorganization* [D.I. 368]

(the "Confirmed Plan") as reflected in the *Subchapter V Reorganized Debtors' Second Modified*

*First Amended Plan of Reorganization* (the "Modified Plan");[4] (b) to confirm the Modified Plan;

---

[1]　　　The Reorganized Debtors in these cases, along with the last four digits of each Reorganized Debtor's federal tax identification number are as follows: Sticky's Holdings LLC (3586); Sticky Fingers LLC (3212); Sticky Fingers II LLC (7125); Sticky Fingers III LLC (3914); Sticky Fingers IV LLC (9412); Sticky Fingers V LLC (1465); Sticky Fingers VI LLC (0578); Sticky's BK I LLC (0423); Sticky's NJ 1 LLC (5162); Sticky Fingers VII LLC (1491); Sticky's NJ II LLC (6642); Sticky Fingers IX LLC (5036); Sticky's NJ III LLC (7036); Sticky Fingers VIII LLC (0080); Sticky NJ IV LLC (6341); Sticky's WC 1 LLC (0427); Sticky's Franchise LLC (5232); Sticky's PA GK I LLC (7496); Stickys Corporate LLC (5719); and Sticky's IP LLC (4569). The Reorganized Debtors' mailing address is 21 Maiden Lane, New York, NY 10038.

[2]　　　The Reorganized Debtors intend to file a declaration in support of this Motion and confirmation of the Modified Plan (as defined below) prior to the hearing on this Motion, which will provide support for the factual assertions herein (the "Modified Plan Declaration").

[3]　　　References herein to "section [  ]" shall refer to the applicable section of the Bankruptcy Code.

[4]　　　Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Modified Plan.

and (c) to be granted related relief. In further support of this Motion, the Reorganized Debtors respectfully represent as follows:

## PRELIMINARY STATEMENT

1.      After having successfully confirmed their Confirmed Plan on November 13, 2024, unforeseen market headwinds, congestion pricing and other detrimental factors put the Reorganized Debtors on the brink of converting their Cases to cases under chapter 7. In the face of shuttering for good, the Reorganized Debtors continued to exercise their fiduciary duties and explored all options with multiple parties with the goal of finding a value-maximizing transaction that would enable modifications to the Confirmed Plan, maximize value for Debtors' creditors, and avoid conversion of the Cases to chapter 7 cases. To that end, the Reorganized Debtors filed the *Reorganized Debtors' Motion for Entry of an Order (I) Authorizing Entry into Proposed Letter of Intent with Harker Palmer Investors LLC; (II) Authorizing Reorganized Debtors and their Professionals to Perform Obligations Thereunder; and (III) Granting Related Relief* (the "LOI Motion") [D.I. 545], seeking approval of the Harker Palmer LOI with Harker Palmer. The Court approved the LOI Motion on April 30, 2025 [D.I. 585] (the "LOI Order").

2.      Pursuant to the LOI Order, the Reorganized Debtors are hereby seeking approval of the modifications to the Confirmed Plan contemplated by the Harker Palmer LOI, and confirmation of that Modified Plan. The Modified Plan is attached hereto as **Exhibit A**. A blacklined copy of the Modified Plan marked to show changes to the Confirmed Plan is attached hereto as **Exhibit B**.

3.      The Harker Palmer LOI contemplates, and the Modified Plan incorporates, the following: (i) selling Free and Clear the Purchased Assets (all Assets except for certain Excluded Assets) to the Purchaser for the Purchase Price (a $2,000,000 cash portion and the assumption of the EIDL Loans owed to the SBA); (ii) funding from the Purchase Price an Allowed

Administrative Claims Reserve to pay the costs and expenses of administering the Allowed Administrative Claims Reserve and to pay Pro Rata Allowed Administrative Expense Claims; (iii) funding from the Purchase Price an Allowed General Unsecured Claims Reserve to pay the costs and expenses of administering the Allowed General Unsecured Claims Reserve and to pay Pro Rata Allowed General Unsecured Claims; (iv) rejecting the Reorganized Debtors' Executory Contracts, except for the Separation Agreement; (v) abandoning FFE at leased locations and granting lessors of FFE the immediate right to take possession of their collateral (to the extent not previously rejected);[5] (vi) the Purchaser assuming the EIDL Loans; (vii) leaving Equity Interests unimpaired; (viii) dissolving the Reorganized Debtors other than Reorganized Sticky's; and (ix) authorizing Reorganized Sticky's to implement the Modified Plan.

4.    With the payment of the Net Cash Portion of the Purchase Price on the Modified Plan Effective Date, the Reorganized Debtors believe they will be able to: (1) provide better recoveries for claimants than would be available if these cases were converted to chapter 7; (2) dispose of the Reorganized Debtors' remaining assets on an arms-length basis and for fair value; (3) allow landlords of Reorganized Debtors' leased premises to re-gain possession and re-lease their properties (to the extent  not done earlier) in an effort to mitigate damages; and (4) terminate Reorganized Debtors' remaining agreements to stop the further accrual of related expenses that the Reorganized Debtors simply do not have the resources to pay. The Modified Plan will also provide an opportunity for Allowed Claims to be paid Pro Rata as soon as practicable from the Reserves following confirmation of the Modified Plan and reconciliation of claims.

---

[5]    To expedite this process, on May 8, 2025, the Reorganized Debtors filed *the Reorganized Debtors' Omnibus Motion for Entry of an Order (I) Authorizing the Rejection of Unexpired Leases, Equipment Leases, and Executory Contracts; (II) Authorizing the Abandonment of Certain Personal Property; and (III) Granting Related Relief* [D.I. 594].

5.      It is the Reorganized Debtors' firm belief that the present exigent circumstances warrant modification of the Confirmed Plan, the Modified Plan satisfies all of the requirements for confirmation, and the Modified Plan, as confirmed, will provide better treatment for the Reorganized Debtors, their estates, and creditors than if these Cases were to convert to chapter 7. On this record, and as will be demonstrated at the hearing on this Motion, the relief requested herein represents a sound exercise of business judgment, and the Reorganized Debtors request entry of the proposed order confirming the Modified Plan attached hereto as **Exhibit C** (the "Proposed Order").

## JURISDICTION

6.      The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

7.      Venue in this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory bases for the relief requested herein are sections 105 and 1193(c), Bankruptcy Rules 2002, 4001 and 9014 and Rules 2002-1, 4001-1, and 9013-1(f) of the Local Rules.

8.      The Reorganized Debtors confirm their consent pursuant to Local Rule 9013-1(f) to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

## BACKGROUND

9.      On the Petition Date, the Debtors commenced voluntary cases under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") as debtors defined in Bankruptcy Code section 1182(1) and the Debtors elected to proceed under Subchapter V of chapter 11 of the Bankruptcy Code pursuant to the Small Business Debtor Reorganization Act, as amended.

4

10.     On April 26, 2024, the United States Trustee appointed Natasha Songonuga of Archer & Greiner, P.C. to serve as the Subchapter V trustee (the "Subchapter V Trustee") in these cases pursuant to section 1183(a).  No official committee was appointed in this case.

11.     Additional detail regarding the Reorganized Debtors, their businesses, the events leading to commencement of these Cases, and the facts and circumstances supporting the relief requested herein (i) are set forth in the *Declaration of Jamie Greer in Support of First Day Relief*, sworn to on April 25, 2024 [D.I. 13] (the "First Day Declaration"),  the *Brief In Support Of Subchapter V Debtors' Modified First Amended Plan of Reorganization* [D.I. 380] ("Confirmation Brief"), and the *Findings of Fact, Conclusions of Law, and Order Confirming Subchapter V Debtors' Modified First Amended Plan of Reorganization* [D.I. 431] ("Confirmed Plan Confirmation Order"), the *Declaration of Jamie Greer in Support of Reorganized Debtors' Motion for Entry of an Order (I) Authorizing Reorganized Debtors' Entry Into Proposed Letter of Intent with Harker Palmer Investors LLC; (II) Authorizing Reorganized Debtors and their Professionals to Perform Obligations Thereunder; and (III) Granting Related Relief* [D.I. 571] (the "LOI Declaration"), and/or (ii) will be set forth in the Modified Plan Declaration.

12.     Each condition precedent to the effectiveness of the *Subchapter V Debtors' Modified First Amended Plan of Reorganization* [D.I. 368] (the "Confirmed Plan") occurred in accordance with the provisions of the Confirmed Plan, and the Confirmed Plan went effective November 29, 2024 (the "Effective Date").

13.     As described in the *Motion of Reorganized Debtors to Convert the Chapter 11 Cases to Cases Under Chapter 7 of the Bankruptcy Code* [D.I. 481] (the "Motion to Convert"), filed February 10, 2025, and the LOI Declaration, the Reorganized Debtors were unable to generate sufficient cash to administer these Cases and continue as a going concern. The Motion to

Convert was initially scheduled for a hearing on February 26, 2025. *See* D.I. 491. On February 24, 2025, the hearing was cancelled and converted to a status conference to be held on March 4, 2025. *See* D.I. 500.

14.     Ultimately, the Court held multiple status conferences following the Motion to Convert. During a March 19, 2025 status conference, the Bankruptcy Court requested that, should any proposed letter of intent be entered into between the Reorganized Debtors and another party in interest, the Reorganized Debtors file such letter of intent with the Court. Moreover, several parties in interest expressed concern that absent a possible deal being presented by March 31, 2025, they were likely in favor of conversion.

15.     On March 30, 2025, the Reorganized Debtors received the proposed Harker Palmer LOI, which the Reorganized Debtors selected as the highest and best offer available.

16.     On April 3, 2025, the Reorganized Debtors filed the *Reorganized Debtors' Motion for Entry of an Order (I) Authorizing Entry into Proposed Letter of Intent with Harker Palmer Investors LLC; (II) Authorizing Reorganized Debtors and their Professionals to Perform Obligations Thereunder; and (III) Granting Related Relief* (the "LOI Motion") [D.I. 545].

17.     On April 30, 2025, the Court entered the Order *(I) Authorizing Entry into Proposed Letter of Intent with Harker Palmer Investors LLC; (II) Authorizing Reorganized Debtors and their Professionals to Perform Obligations Thereunder; and (III) Granting Related Relief* (the "LOI Order") [D.I. 585].

18.     Pursuant to the LOI Order, the Reorganized Debtors now file this Motion for authority to modify their Confirmed Plan, approval of the modifications to the Confirmed Plan, and Confirmation of the Modified Plan.

## RELIEF REQUESTED

19.     The Reorganized Debtors seek pursuant to sections 105, 363, 1123, 1129, and 1191, and 1193, authority to modify the Confirmed Plan consistent with the terms of the Harker Palmer LOI, approval of the modifications to the Confirmed Plan, and Confirmation of the Modified Plan.

20.     The Purchase Price from the sale of the Purchased Assets pursuant to the Modified Plan will allow the Reorganized Debtors to fund the Reserves to make Pro Rata payments on Allowed Administrative Expense Claims and Allowed General Unsecured Claims, and otherwise provide for the treatment to SBA, Other Secured Claim Holders and Equity Interests under the Modified Plan, and to implement the Modified Plan.  In the case of Allowed Secured Claims and Equity Interests, the Modified Plan leaves unimpaired those classes as did the Confirmed Plan.  In the case of Allowed Administrative Expense Claims and General Unsecured Claims, the Modified Plan provides for Pro Rata payment from the respective Reserves net of reconciliation and administrative costs.  While the Reorganized Debtors' factual circumstances has resulted in an increase in Claims than was anticipated under the Confirmed Plan, the Modified Plan provides the same aggregate dollars available for distribution and provides for faster payment than was set forth in the Confirmed Plan.

21.     The Modified Plan includes the following material modifications to the Confirmed Plan, without limitation:

a.      The Purchased Assets will be sold to the Purchaser Free and Clear.

b.      The Purchase Price will be used to fund the Modified Plan, including to establish an Administrative Expense Claims Reserve and an Allowed General Unsecured Claims Reserve.

c.      The Administrative Expense Claims Reserve shall fund the costs and expenses of administering the Administrative Expense Claims Reserve and Pro Rata payments to Allowed Administrative Expenses Claims, including those on account of Unpaid Ordinary Course Expenses, Post-Confirmation Unpaid and Allowed Professional Fees and Expenses, Professional Fees as of the Confirmed Plan Effective Date,

Administrative Tax Claims, the U.S. Foods Settlement, Cure Claims, and Lease Rejection Administrative Claims, to the extent such Claims are Allowed.

d. The General Unsecured Claims Reserve shall fund the costs and expenses of administering the General Unsecured Claims Reserve and Pro Rata payments to each holder of an Allowed General Unsecured Claim.

e. With respect to Allowed Secured Claims: (1) the SBA's Secured Claim will be assumed by the Purchaser and paid in accordance with the terms of the EIDL Loans; (2) each holder of Other Secured Claims shall receive in satisfaction of such Claim the collateral securing such Claim, and any remaining Allowed Claim shall be paid Pro Rata from the General Unsecured Claims Reserve.

f. The Reorganized Debtors will surrender all furniture, fixtures, and equipment subject to a lien in favor of the lessor of a furniture, fixtures, and equipment lease to such lessor (to the extent not earlier surrendered) and in the absence thereof, to the applicable landlord.

g. The Reorganized Debtors other than Reorganized Sticky's will be dissolved, and Reorganized Sticky's will continue to exist for the purpose of implementing the Modified Plan.

22. As noted, a blackline of the Modified Plan comparing the Confirmed Plan to the Modified Plan is attached hereto as **Exhibit B** to facilitate the Court's and parties' review of the modifications to the Confirmed Plan incorporated in the Modified Plan.

23. The Reorganized Debtors request entry of the Proposed Order, which will (1) authorize and approve the modifications to the Confirmed Plan; (2) confirm the Modified Plan, (3) authorize and approve the sale of the Purchased Assets to the Purchaser, (4) authorize the Reorganized Debtors' performance pursuant to the Modified Plan; (5) approve various deadlines related to the Modified Plan; and (6) approve the *Notice of Modified Plan Effective Date* annexed to the Proposed Order.

**BASIS FOR RELIEF**

A.   **MODIFICATION OF THE PLAN IS APPROPRIATE UNDER THE CONFIRMED PLAN AND SECTION 1193(C) OF THE BANKRUPTCY CODE**

24.    Modification of the Confirmed Plan is appropriate both under the Confirmed Plan and section 1193(c).

25.    Section 7.6 of the Confirmed Plan provides:

If the Plan is Confirmed under § 1191(b), the Debtors may seek to modify the Plan at any time only if (1) it is within three years of the Confirmation Date, or such longer time not to exceed five years as fixed by the court and (2) the Bankruptcy Court authorizes the proposed modifications after notice and a hearing. This Plan represents the Debtors' request that the Court enter an order that the Debtors may seek to modify the Plan under such circumstances within three years of the Confirmation Date, since the Plan payments go out three years.

26.    Thus, pursuant to section 7.6 of the Confirmed Plan, the Reorganized Debtors may seek to modify the Confirmed Plan given that: (1) the Confirmed Plan was confirmed under section 1191(b); and (2) the filing of this Motion is within three years of the Confirmation Date.

27.    Similar to the requirements in section 7.6 of the Confirmed Plan, pursuant to section 1193(c), a plan that is confirmed under section 1191(b) may be modified "at any time within 3 years, or such longer time not to exceed 5 years, as fixed by the court, but may not modify the plan so that the plan as modified fails to meet the requirements of section 1191(b) of this title." 11 U.S.C. § 1193(c).   Furthermore, a plan can be modified "only if circumstances warrant such modification and the court, after notice and a hearing, confirms such plan, as modified, under section 1191(b) of this title." *Id.*

28.    Few cases have interpreted what "circumstances warrant" modification for purposes of section 1193(c). *See In re Chesney*, 2023 WL 8855242, at *4–5 (Bankr. W.D.N.C December 21, 2023).  At least one court suggested that such circumstances are found under section 1127(b) of the Bankruptcy Code. *See In re Samurai Martial Sports, Inc.*, 644 B.R. 667, 680–81

9

(Bankr. S.D. Tex. 2022).[6]  However, as noted by the decision in *Chesney*, "no cases" have fully described what "qualifying circumstances" are required for purposes of section 1193(c).  *Chesney*, 2023 WL 8855242 at \*5. .[7]

29.     Here, this Motion should be granted because: (1) exigent financial circumstances warrant permitting the modifications in light of a key policy goal of Subchapter V—providing a small business debtor an expedited reorganization process;  (2) recoveries under the Confirmed Plan were not guaranteed, but were uncertain and dependent upon the Reorganized Debtors' operating performance, (3) the modifications benefit all creditors and either do not adversely affect their treatment or provide a better recovery than they would receive if these cases were converted to chapter 7—the only other option under the circumstances, and (4) the proposed sale of the Purchased Assets to the Purchaser with the funding provided pursuant thereto requiring the modifications to the Confirmed Plan, is the only value maximizing transaction available to the Reorganized Debtors under the circumstances.

30.     Subchapter V was created with the passage of the SBRA and provides for an expedited process for small business debtors to efficiently reorganize.  *See In re Off-Spec Solutions, LLC*, 651 B.R. 862, 868 (Bankr. 9th Cir. BAP 2023).  The goals of Subchapter V include

---

[6]     Typically, modification under section 1127(b) of the Bankruptcy Code requires "unforeseen circumstances that render the confirmed plan unworkable." *Id.*  Because this Chapter 11 Case is under subchapter V, the Reorganized Debtors respectfully submits that section 1127 and its applicable case law is not applicable to this case.  *See* 11 U.S.C. § 1181(a) (section 1127 of the Bankruptcy Code "do[es] not apply in a case under this subchapter").

[7]     Additionally, a plan under chapter 11 cannot be modified after it has been substantially consummated. *See In re Boy Scouts of America and Delaware BSA, LLC*, Case No. 20-10343 (LSS), 2024 WL 459571, at \*9 (Bankr. D. Del. Feb. 5, 2024). Substantial consummation means "(A) transfer of all or substantially all of the property proposed by the plan to be transferred; (B) assumption by the debtors or by the successor to the debtors under the plan of the business or of the management of all or substantially all of the property dealt with by the plan; and (C) commencement of distribution under the plan." 11 U.S.C. § 1101(2). Here, very few distributions occurred and therefore, the Confirmed Plan has not been substantially consummated. Moreover, section 1193(c), not section 1127(b), governs here and thus the "substantial consummation" test is inapplicable in any event. Indeed, section 1127 does not apply in a Subchapter V case. 11 U.S.C. § 1181(a).

"provid[ing] the debtor with an accelerated path to reorganize." *In re HBL SNF*, LLC, 635 B.R. 725, 729 (Bankr. S.D.N.Y. 2022). Here, permitting modifications of the Confirmed Plan provides the Reorganized Debtors an accelerated path to finalizing their reorganization and exiting bankruptcy, consistent with the key objectives of Subchapter V.

31.     In contrast to having to wait three years for payments under the Confirmed Plan (which now is not even possible), the funding to be provided through the sale of the Purchased Assets to the Purchaser will allow the Reorganized Debtors to complete their reorganization process, minimize further administrative costs, and allow creditors to receive payments earlier than anticipated in the Confirmed Plan. None of this would likely be achieved if these Cases are converted to chapter 7. Indeed, conversion of these Cases to chapter 7 would likely result in a materially worse outcome for stakeholders. Given: (i) achieving the primary Subchapter V goals of expediency, benefit the estates and creditors, and reorganization; (ii) entering into the LOI was a sound exercise in the Reorganized Debtors' business judgment as found by the Bankruptcy Court in entering the LOI Order; and (iii) the exigent facts and "circumstances warrant" modifying the Confirmed Plan, the Reorganized Debtors should be authorized to modify the Confirmed Plan as set forth in the Modified Plan, and such modifications should be approved.

## B.    THE MODIFIED PLAN SHOULD BE CONFIRMED[8]

### Section 1190

32.     As an initial matter, section 1190 sets forth certain requirements for a plan of reorganization in a Subchapter V case. The Confirmed Plan satisfied the disclosure requirements of section 1190. Confirmation Brief ¶¶ 30–31; Confirmed Plan Order ¶ S. These disclosures have

---

[8]     The Modified Plan Declaration will set forth further reasons why the Modified Plan meets the requirements of sections 1190, 1191(b)–(e), 1129(a)(1), 1129(a)(2), 1122, 1123, 1123(a)(1)-(8), 1123(b)(1)–(5), and 1129(a)(3)–(15) of the Bankruptcy Code.

been supplemented in the Modified Plan, *see* Modified Plan Art. 1.10, *see also* LOI Declaration ¶¶ 9–33. These supplemental disclosures describe the events that have transpired since the confirmation of the Confirmed Plan, the adverse financial circumstances the Reorganized Debtors have suffered, the Reorganized Debtors' efforts to identify an alternative transaction, and the circumstances surrounding the Reorganized Debtors' entering into the Harker Palmer LOI, and the Court approving the Reorganized Debtors' entering into the Harker Palmer LOI. Accordingly, the Modified Plan satisfies the disclosure requirements of section 1190.

**Section 1191(b)**

33.     The Modified Plan meets the requirements for confirmation under section 1191(b) and should accordingly be confirmed. Section 1191(b) provides that a plan can be confirmed if: (1) the requirements of section 1129(a) are met, other than subsections (8), (10), and (15); (2) the plan does not unfairly discriminate; and (3) the plan is fair and equitable.

34.     The Modified Plan meets the requirements of section 1129(a). As set forth in the Confirmation Brief, the Confirmed Plan Declaration, the Confirmed Plan Confirmation Order, the LOI Declaration, and as will be set forth in the Modified Plan Declaration, the Modified Plan complies with all of the requirements for confirmation.

**C.     THE MODIFIED PLAN SATISFIES THE APPLICABLE PROVISIONS OF THE BANKRUPTCY CODE**

**Sections 1129(a)(1) and (2).**

35.     Sections 1129(a)(1) and (2) require that the Reorganized Debtors and the Modified Plan comply with the applicable requirements of the Bankruptcy Code, including sections 1122 and 1123. The Confirmed Plan so complied. Confirmation Brief ¶¶ 36–37, Confirmed Plan Findings ¶¶ K & I. As the Modified Plan follows the structure of the Confirmed Plan, the

Reorganized Debtors believe that it too complies with sections 1129(a)(1) and (2) as detailed below.

### Section 1122.

36.     The Modified Plan, like the Confirmed Plan, in accordance with section 1122, specifies four (4) separate classes of claims and interests, with each class containing substantially similar claims or interests as required by section 1122 – Small Business Administration's Secured Claim (Class 1), Other Secured Claims (Class 2), General Unsecured Claims (Class 3), and Equity Interests (Class 4). Modified Plan Art. 3.2. Each of the four classes are dissimilar and, therefore, are properly classified separately under the Modified Plan. *Id.*; Confirmation Brief ¶¶ 38–39; Confirmed Plan Order ¶ K. Based upon the foregoing, the Modified Plan complies with the provisions of section 1122.

### Section 1123

37.      **Section 1123(a)(1).** As with the Confirmed Plan, the Modified Plan, as required by section 1123(a)(1), expressly classifies all claims and interests against the Reorganized Debtors, other than Administrative Claims and Priority Tax Claims, which are unclassified under the Modified Plan. Modified Plan Art. 2.1; Confirmation Brief ¶ 41; Confirmed Plan Order ¶ K. Based upon the foregoing, the Modified Plan complies with section 1123(a)(1).

38.     **Section 1123(a)(2).** As with the Confirmed Plan, the Modified Plan in Article 2, as required by section 1123(a)(2), identifies Small Business Administration's Secured Claim (Class 1), Other Secured Claims (Class 2), and Equity Interests (Class 4) as unimpaired. Modified Plan Art. 2.1;Confirmation Brief ¶ 42; Confirmed Plan Order ¶ K. Based upon the foregoing, the Modified Plan complies with section 1123(a)(2).

39.     **Section 1123(a)(3).** As with the Confirmed Plan, the Modified Plan in Article 2, as required by section 1123(a)(3), specifies the treatment of General Unsecured Claims (Class 3), the impaired class under the Modified Plan. Modified Plan Art. 2.2; Confirmation Brief ¶ 43; Confirmed Plan Order ¶ K.  Based upon the foregoing, the Modified Plan complies with section 1123(a)(3).

40.     **Section 1123(a)(4).**  As with the Confirmed Plan, the Modified Plan in Article 2, as required by section 1123(a)(4), provides that each claim or interest that is classified in a particular Class under the Modified Plan will receive the same treatment as other claims and interest included in such Class. Modified Plan Art. 2.1;Confirmation Brief ¶ 44; Confirmed Plan Order ¶ K.  Based upon the foregoing, the Modified Plan complies with section 1123(a)(4).

41.     **Section 1123(a)(5).**  As with the Confirmed Plan, the Modified Plan in Article 2, as required by section 1123(a)(5),  provides for adequate means of implementation of the Modified Plan, including: (i) the sale of the Purchased Assets to the Purchaser Free and Clear, (ii) the funding of the Reserves; (iii) the rejection of Executory Contracts; (iv) deadlines for filing proofs of claim; (v) the dissolution of the Reorganized Debtors other than Reorganized Sticky's; and (vi) the management of Reorganized Sticky's.   Modified Plan Art. 2.5; Confirmation Brief ¶ 45; Confirmed Plan Order ¶ M.  Based upon the foregoing, the Modified Plan complies with section 1123(a)(5).

42.     **Section 1123(a)(6).**  Section 1123(a)(6) prohibits the issuance of non-voting equity securities and requires the reorganized debtors' charters to so provide.  The Modified Plan, like the Confirmed Plan, does not provide for issuance of non-voting equity securities and, as such, the Modified Plan complies with section 1123(a)(6).

43.     **Section 1123(a)(7).**  As with the Confirmed Plan, Holders of Equity Interests will maintain their existing Equity Interests as they existed on the Petition Date and applicable non-bankruptcy law and the Modified Plan, like the Confirmed Plan, specifies the Reorganized Debtors' post-confirmation management.  Modified Plan Art. 2.2 & 2.5.5; Confirmation Brief ¶ 47; Confirmed Plan Order ¶ T. Based upon the foregoing, the Modified Plan complies with section 1123(a)(6).

44.     **Section 1123(a)(8).**  This section is inapplicable as it only applies to individuals and the Reorganized Debtors are not individuals. Confirmation Brief ¶ 48.

45.     **Section 1123(b).**  Section 1123(b) permits the Modified Plan to include various enumerated provisions, and "any other appropriate provision not inconsistent with the applicable provisions of this title. Section 1123(b).  The Modified Plan, like the Confirmed Plan, complies with section 1123(b).  Confirmation Brief ¶ 56–77; Confirmed Plan Order ¶¶ O–P, 6, 7, & 12.

   **a.   Section 1123(b)(1) - Discretion to Impair or Leave Unimpaired Claims and Equity Interests.**

46.     As discussed above, the Modified Plan specifies Classes of Claims and Equity Interests that are either impaired or unimpaired.

   **b.   Section 1123(b)(2) – Executory Contracts**

47.     In Article 2.4, the Modified Plan provides for the assumption and rejection of Executory Contracts.

   **c.   Section 1123(b)(3) – Settlement and Retention of Estate Claims**

48.     In Article 3 the Modified Plan incorporates the settlement with US Foods previously approved, Confirmed Plan Art. 3; Confirmation Brief  ¶¶ 125–34; Confirmed Plan Order ¶ 21, and preserves the Estates' claims, Causes of Action and Avoidance Actions.

**d. Section 1123(b)(4) – Sale of Assets**

49.     Article 2.5 of the Modified Plan implements the Harker Palmer LOI and provides for the sale, Free and Clear, of the Purchased Assets to the Purchaser for the Purchase Price.  As described and established by the HP LOI Approval Motion, the LOI Order, and the LOI Declaration:

- As of the end of January 2025, the Reorganized Debtors could no longer operate and implement the Confirmed Plan.

- As a result of the financial circumstances plaguing the Reorganized Debtors, they were forced to cease operations and file the Motion to Convert.

- Despite the adverse circumstances that befell the Reorganized Debtors, the Reorganized Debtors engaged in substantial efforts to identify and develop an alternative value maximizing transaction.

- During the months of February, March and April 2025, the Reorganized Debtors engaged in negotiations with various parties.

- As a result of the Reorganized Debtors' efforts, in the exercise of their fiduciary duties, and in the reasoned and deliberated application of their business judgment, the Reorganized Debtors entered into, and obtained Court approval to enter into, the Harker Palmer LOI.  LOI Order.

- The negotiations with Harker Palmer regarding the Harker Palmer LOI and the Modified Plan were at arm's length, fair and reasonable, not collusive, and in good faith.  LOI Order.  Harker Palmer has supported the Reorganized Debtors' restructuring, holds Equity Interests in the

Reorganized Debtors, and its controlling owner (who is a member of the Board) recused himself from the Board deliberations regarding the Harker Palmer LOI.  LOI Declaration ¶ [26; LOI Order.

- The Purchase Price for the Purchased Assets is fair consideration, is the only transaction available to the Reorganized Debtors following efforts to identify an alternative transaction, is value maximizing, and is in the best interest of the estates.

- The sale of the Purchased Assets to Harker Palmer, Free and Clear, the inclusion of Harker Palmer as an Exculpated Party, and the other terms and conditions of the Harker Palmer LOI as incorporated into the Modified Plan were negotiated in good faith, at arms' length, and are reasonable, fair and necessary provisions to induce Harker Palmer to consummate the sale of the Purchased Assets.  Without the consummation of the sale of the Purchased Assets, the Cases would convert to chapter 7 cases.  *Id.*

### e.  Section 1123(b)(5) – Other Provisions

#### i.  Reorganized Debtors' Releases and Consensual Third-Party Releases

50.   The Confirmed Plan included releases by the Debtors and consensual third-party releases, which were approved. Confirmed Plan Art. 7.9 & 7.10; Confirmation Brief  ¶¶ 49–67; Confirmed Plan Order ¶¶ O & 6.  The Modified Plan incorporates these same releases.  Modified Plan ¶ Art. 7.9 & 7.10.  As the Confirmed Plan contemplated deferred payments over time, the releases in the Confirmed Plan were contingent upon the distributions being completed.  *Id.*  In contrast, under the Modified Plan, the funding of the Modified Plan will be completed on the Modified Plan Effective Date, with Distributions to be made on, or as soon as practicable after,

the Modified Plan Effective Date. Importantly, on the Modified Plan Effective Date the funding of the Reserves is made into a trust account to be used for the intended purposes. Accordingly, the releases in the Modified Plan are effective upon the Modified Plan Effective Date. Based upon the foregoing, the release provisions continue to be integral to the Debtors' reorganization, are a condition of the Harker Palmer LOI, and are reasonable, appropriate, tailored provisions in the best interests of these estates. Accordingly, the release provisions are in compliance with section 1123(b).

### ii.    Exculpation

51.    The Confirmed Plan included an exculpation provision which was approved. Confirmed Plan Art. 7.11; Confirmation Brief ¶¶ 68–77; Confirmed Plan Order ¶¶ O & 6 . The Modified Plan incorporates the same provision, with the addition of the Purchaser as an Exculpated Party. Modified Plan at Definitions – Exculpated Party. The Purchaser's inclusion as an Exculpated Party is a condition of the Harker Palmer LOI. The inclusion of the Purchaser as an Exculpated Party is also fair, reasonable and in the best interest of the estates, as described in the Modified Plan. Modified Plan Art. 1.10.4 . The Purchaser has provided substantial support to the Reorganized Debtors, holds Equity Interests in the Reorganized Debtors, is providing the funding through the Purchase Price to fund the Modified Plan and avoid a conversion to chapter 7, and its controlling owner is a member of the Board but recused himself from the Board decisions regarding the Harker Palmer LOI and the Modified Plan. *See In re Laboratory Partners, Inc.*, No. 13-12769 (PJW) (Bankr. D. Del July 10, 2014) (finding that exculpation was appropriately extended to secured lender who funded the chapter 11 case); *In re FAH Liquidating Corp.*, No. 13-13087 (KG) (Bankr. D. Del. July 28, 2014) (finding that exculpation as applied to a non-debtor Plan Sponsor was appropriate under section 1123(b)). For these reasons, and as is customary with

18

sponsors of a plan of reorganization, it is fair and appropriate, and consistent with section 1125(e), to include the Purchaser as an Exculpated Party.  Based upon the foregoing, the exculpation provision continues to be integral to the Debtors' reorganization, is a condition of the Harker Palmer LOI, and is a reasonable, appropriate, tailored provision in the best interests of these estates.  Accordingly, the exculpation provision is in compliance with section 1123(b).

### iii.    Post Modified Plan Effective Date Operations and Management

52.    As provided for in Article 2.5.3 of the Modified Plan, from and after the Modified Plan Effective Date, Reorganized Sticky's will create the Reserves and implement the Modified Plan.  The Reorganized Debtors, other than Reorganized Sticky's, will be dissolved upon occurrence of the Modified Plan Effective Date.  Reorganized Sticky's will be managed as described in section 2.5.5 of the Modified Plan.

53.    **Section 1129(a)(3)**.  As with the Confirmed Plan, the Modified Plan is proposed in good faith. Confirmation Brief ¶ 78–79; Confirmed Plan Order ¶ T. Specifically, as with the Confirmed Plan, the Modified Plan is the product of arms-length negotiation with Holders of Claims and Equity Interests, the Subchapter V Trustee and the US Trustee.  In addition, the Board engaged in a months-long process to avoid conversion to chapter 7 by identifying and pursuing a value maximizing transaction.  The Harker Palmer LOI, which forms the basis of the Modified Plan, was negotiated at arms-length, in good faith, and provides a value maximizing transaction for the Reorganized Debtors and the estates.  Thus, there is substantial support for a finding that the Modified Plan has been proposed in good faith and not by any means forbidden by law.  Based upon the foregoing, the Modified Plan complies with section 1129(a)(3).

54.    **Section 1129(a)(4)**.  In compliance with section 1129(a)(4), the Confirmed Plan required that each estate professional must serve and file a properly noticed fee application.  Each

Professional did so and the Bankruptcy Court entered orders approving such Professional Fee Claims.  Under the Confirmed Plan the Reorganized Debtors' Professional Fee Claims are not subject to further approval of the Bankruptcy Court, but they are subject to the approval of the Reorganized Debtors.  Under the Modified Plan, Reorganized Debtors' Professional Fee Claims will continue to be subject to the approval of the Reorganized Debtors to the extent that they are incurred during the period since the Effective Date of the Confirmed Plan and are in excess of the amounts allocated therefor as part of the Deposits paid by Harker Palmer pursuant to the Harker Palmer LOI.  To the extent that Reorganized Debtors Professional Fee Claims accruing after the Confirmed Plan Effective Date exceed the Deposits, and are approved by the Reorganized Debtors, the Modified Plan provides that they will be Allowed Administrative Expense Claims that will share Pro Rata from the Allowed Administrative Expense Reserve. Modified Plan Art. 2.1(a). Accordingly, the Modified Plan complies with section 1129(a)(4).

55.    **Section 1129(a)(5).** Article 2 of the Modified Plan, as with the Confirmed Plan, describes the Reorganized Debtors' post-confirmation management.  Confirmed Plan Art. 2.7; Modified Plan ¶ 2.5.5.  Accordingly, the Modified Plan complies with section 1129(a)(5).

56.    **Section 1129(a)(6).**  This section is inapplicable as the Reorganized Debtors are not subject to rate regulations.

57.    **Section 1129(a)(7).**  The "best interest of creditors test" was satisfied with respect to the Confirmed Plan.  Confirmation Brief ¶¶ 87–88; Confirmed Plan Order ¶ T.  The Reorganized Debtors cannot implement the Confirmed Plan, have ceased operations. and have determined that the sale of the Purchased Assets to the Purchaser, and the corresponding modifications to the Confirmed Plan, presents the best, and only, available value maximizing transaction.  In the absence of confirmation of the Modified Plan, these Cases would convert to chapter 7.  Under

these circumstances, and with the Reserves being funded in amounts that are the same as the aggregate total consideration that the Confirmed Plan proposed to pay to Holders of Allowed Administrative Expense Claims and Allowed General Unsecured Claims, the Modified Plan similarly satisfies the "best interest of creditors test". Accordingly, the Modified Plan complies with section 1129(a)(7).

58. **Section 1129(a)(8).** The Confirmed Plan was not confirmed pursuant to Bankruptcy Code section 1129(b), which is inapplicable under Bankruptcy Code section 1181(a). Pursuant to section 1191(b) of the Bankruptcy Code, the Modified Plan need not comply with section 1129(a)(8). Confirmation Brief ¶¶ 89–90; Confirmed Plan Order ¶ T. Confirmation of the Modified Plan is being sought pursuant to section 1129(b), rendering section 1129(a)(8) inapplicable.

59. **Section 1129(a)(9).** Section 1129(a)(9) governs the treatment of claims entitled to priority under section 507(a) (1)–(8). The Reorganized Debtors are not subject to claims under sections 507(a)(1), (4), (5), (6) or (7). The allowed priority tax claims under the Confirmed Plan were paid and there are no current priority tax claims. *Id.* There are, however, outstanding section 50(7)(a)(2) Administrative Expense Claims.

60. However, in a Subchapter V case, like this one, section 1129(a)(9)(A) does not apply to claims under section 507(a)(2). Rather, section 1191(e) applies.

61. Subchapter V carries with it a 'special rule' in section 1191(e):

> "(e) Special Rule. – Notwithstanding section 1129(a)(9)(A) of this title, a plan that provides for the payment through the plan of a claim of a kind specified in paragraphs (2)(or (3) of section 507(a) of this title may be confirmed under subsection (b) of this section."

Section 1191(e).

The "notwithstanding" lead-in establishes that a plan of reorganization can be confirmed under section 1191(b) without regard to section 1129(a)(9)(A). In interpreting equivalent "notwithstanding" lead-in language to section 1129(b)(1), the Bankruptcy Court in *In re Tribune*, 972 F.3d 228 (3d Cir. 2019), held that an otherwise enforceable subordination agreement was not applicable to prevent confirmation, under the cram-down provisions of the Bankruptcy Code, of a plan of reorganization that did not enforce the subordination agreement. The Third Circuit reasoned, in part:

> We have previously defined the phrase "notwithstanding" in the bankruptcy context to mean "'in spite of' or 'without prevention or obstruction from or by.'" *Goody's*, 610 F.3d at 817 (*quoting* Webster's Third Int'l Dictionary 1545 (1971)); *see also In re Federal-Mogul Global Inc.*, 684 F.3d 355, 369 (3d Cir. 2012) (reading the lead-in to Bankruptcy Code § 1123(a)—"notwithstanding any otherwise applicable non bankruptcy law"—to mean that what follows in subsection (a) displaces conflicting state nonbankruptcy law). Although these cases interpret different sections of the Code, their analysis applies equally to § 1129(b)(1) because, "[p]resumptively, identical words used in different parts of the same act are intended to have the same meaning." *U.S. Nat'l Bank of Or. v. Indep. Ins. Agents of Am., Inc.*, 508 U.S. 439, 460, 113 S. Ct. 2173, 124 L. Ed. 2d 402 (1993) (internal quotation marks and citation omitted). Further, as we explained in Federal-Mogul, "[w]hen a federal law contains an express preemption clause, we focus on the plain wording of the clause, which necessarily contains the best evidence of Congress' preemptive intent." 684 F.3d at 369 (internal quotation marks omitted). Applying the lessons of Goody's and FederalMogul here, §1129(b)(1) overrides § 510(a) because that is the plain meaning of "[n]otwithstanding." Thus our holding becomes simple: Despite the rights conferred by § 510(a), "if all of the applicable requirements of subsection (a) of this section [1129] . . . are met with respect to a plan, the court . . . shall confirm the plan . . . if [it] does not discriminate unfairly, and is fair and equitable," for each impaired class that does not accept the plan."

*Id.* at 237–38.

62. As with the contractual subordination agreement otherwise enforceable under section 510(b), but rendered inapplicable pursuant to section 1129(b)(1) by reason of the lead-in "notwithstanding" clause, the general rule in chapter 11 cases that administrative claims must be

22

paid in full unless the holder consents does not apply to a plan of reorganization under Subchapter V that is confirmed under section 1191(b), by reason of the "notwithstanding" lead-in clause in section 1191(e).

63.     If the consent of the holder of an administrative claim does not govern its treatment under a Subchapter V plan of reorganization, what does govern? As set forth in the Special Rule, the test under section 1191(b) is no unfair discrimination and fair and equitable.

64.     As discussed below, the Modified Plan complies with the "no unfair discrimination" and "fair and equitable" tests.   Accordingly, the Modified Plan satisfies the requirements of section 1129(9)(a).

65.     **Section 1129(a)(10).** The Confirmed Plan was not confirmed pursuant to section 1129(b), which is inapplicable under Bankruptcy Code section 1181(a). Pursuant to section 1191(b) of the Bankruptcy Code, the Modified Plan need not comply with section 1129(a)(10). Confirmation Brief ¶ 97.; Confirmed Plan Order ¶ T.  Similarly, confirmation of the Modified Plan is being sought pursuant to section 1129(b), rendering section 1129(a)(10) inapplicable.

66.     **Section 1129(a)(11).**  The Confirmed Plan contemplated the Reorganized Debtors continuing to operate, and the Court found that the Confirmed Plan met the requirements of section 1129(a)(11).  Confirmation Brief at ¶ 98–105; Confirmed Plan Order at ¶ T.  Under the Modified Plan, the Reorganized Debtors (other than Reorganized Sticky's) will be dissolved upon occurrence of the Modified Plan Effective Date.  Modified Plan Art. 2.5.4; 11 U.S.C. § 1129(a)(11) ("unless such liquidation or reorganization is proposed in the plan").  In contrast, Reorganized Sticky's will continue in existence for the purpose of implementing the Modified Plan. Accordingly, the Modified Plan satisfies the requirements of section 1129(a)(11).

67. **Section 1129(a)(12).** As these Cases are proceeding under Subchapter V of the Bankruptcy Code, section 1129(a)(12) is inapplicable. Confirmation Brief ¶ 106; Confirmed Plan Order ¶ T.

68. **Section 1129(a)(13).** The Reorganized Debtors do not have any present obligations to pay retiree benefits within the meaning of section 1129(a)(13). Accordingly, this section of the Bankruptcy Code is inapplicable.

69. **Section 1129(a)(14).** The Reorganized Debtors are not individuals and do not have domestic support obligations to pay retiree benefits within the meaning of section 1129(a)(14). Accordingly, this section of the Bankruptcy Code is inapplicable.

70. **Section 1129(a)(15).** Pursuant to section 1181(a), section 1129(a)(15) is inapplicable in these Cases. Further, section 1191(a) provides that a plan that is confirmed under section 1191(b), need not comply with section 1129(a)(15). Accordingly, this section of the Bankruptcy Code is inapplicable.

71. **No Unfair Discrimination and Fair and Equitable - 1191(c), (d) and (e).** To confirm the Modified Plan pursuant to section 1191(b), that section requires no unfair discrimination and fair and equitable treatment under the Modified Plan. As noted above, the Bankruptcy Code incorporates this same test in connection with the "Special Rule" set forth in section 1191(e) with respect to Administrative Expense Claims.

72. **No Unfair Discrimination.** The Bankruptcy Code does not define unfair discrimination. But its meaning and application have long been established in the Third Circuit.

73. The Bankruptcy Court in *In re Mallinckrodt PLC*, 639 B.R. 837 (Bankr. D. Del. 2022) summarized the standard as follows:

> "Generally, the standard "ensures that a dissenting class will receive relative value equal to the value given to all other similarly situated

> classes." *In re Armstrong World Indus., Inc.* 348 B.R. 111, 121 (D. Del.
> 2006) (quoting *In re Johns-Manville Corp.*, 68 B.R. 618, 636 (Bankr.
> S.D.N.Y. 1986)). As the District Court for the District of Delaware
> observed, "[v]arious tests have emerged in the caselaw, with the
> hallmarks being whether there is a reasonable basis for the
> discrimination, and whether the debtor can confirm and consummate a
> plan without the proposed discrimination." *In re Nuverra Envtl. Sols.
> Inc.*, 590 B.R. 75, 90 (D. Del. 2018)."

*Id.* at 897.

74.     The Bankruptcy Court in *Mallinckrodt* also discussed the Third Circuit decision in

*Tribune*.   *Id.*  In *Tribune*, the Third Circuit noted that unfair discrimination is "subject to

interpretation," *Tribune,* 972 F.3d at 242, and "is rough justice," *id.* at 245.

75.     Under the Modified Plan, the proposed treatment of Administrative Expense

Claims, Secured Claims, and General Unsecured Claims follows the Confirmed Plan both as to

the amount to be distributed. While the Modified Plan modifies certain aspects of the Confirmed

Plan in order to reflect changed circumstances and implement the Harker Palmer LOI as described

herein and in the Modified Plan, these changes do not change the fundamental structure of the

treatment of Holders of Claims and Interests, albeit claims will be paid Pro Rata from available

funding, not in full over an extended and uncertain future period (which has turned out not to be

possible).   Under the Modified Plan, Holders of Administrative Expense Claims and Holders of

General Unsecured Claims each will have the benefit of a dedicated Reserve that is similarly

structured, and both are allocated value to their respective Reserves that for each aggregates the

projected amounts that were to be paid (over time) under the Confirmed Plan.   Importantly, the

Confirmed Plan did not guaranty full payment; it was dependent upon future performance of the

Reorganized Debtors.   At this point, the Confirmed Plan cannot be implemented.   In contrast, the

Modified Plan provides for immediate funding into the Reserves on the Modified Plan Effective

Date from the Purchase Price being paid by the Purchaser for the Purchased Assets. While it is

true that the aggregate amount of Administrative Expense Claims and General Unsecured Claims are now larger because the Confirmed Plan cannot be implemented, and thus percentage recoveries will be lower than what was projected (but not guaranteed) under the Confirmed Plan, this outcome is the result of uncontrollable circumstances and not any discrimination that falls within the meaning of "unfair discrimination". The Modified Plan's certainty of funding and identified proceeds to fund distributions to holders of Allowed Claims is a marked improvement over the uncertainty of payment in a Chapter 7 conversion.

76.    In addition, the SBA continues to receive the benefit of its bargain as the EIDL Loans will be assumed by the Purchaser.  Further, the Modified Plan provides for the landlords to regain possession of their properties on an expedited basis, and allows equipment lessors to recover their collateral (in each case, to the extent, if at all, that has been done sooner).

77.    Based upon the foregoing, the Modified Plan satisfies the no unfair discrimination requirement.

22.    **Fair and Equitable.**

78.    Importantly, the fair and equitable rule in a Subchapter V case is not the absolute priority rule that applies in a chapter 11 case.  Section 1181(a) renders the statutory definition of fair and equitable inapplicable. Indeed, the purpose and intent of Subchapter V was to enable equity holders to retain equity even if allowed claims were not paid in full. *In re Pearl*, 622 B.R. 236, 267 (Bankr. S.D. Tex. 2020) ("Thus, it [Section 1191(c)] allows a debtor's equity holders to retain their equity or individual debtors to retain their assets, even if unsecured creditors are not paid in full.").

79.    Section 1191(c)(2)(A) of the Bankruptcy Code provides that a plan is fair and equitable if "all *projected* disposable income of the debtor to be received in the 3-year period, or

such longer period not to exceed 5 years as the court may fix, beginning on the date that the first payment is due under the plan will be applied to make payments under the plan." 11 U.S.C. § 1191(c)(2)(A) (emphasis added). The statutory focus on projected income of a defined period, anchors the fair and equitable test in the available pool for recovery, not any particular recovery. This fair and equitable treatment equally applies to both general unsecured creditors and administrative creditors. That is the import of the "notwithstanding" lead-in language in section 1191(e). *Supra* ¶ 61.

80. With the Free and Clear sale of the Purchased Assets to the Purchaser, the projected value of the estates is maximized and realized immediately, without deferral and uncertainty—and in lieu of conversion to cases under chapter 7. Under the Modified Plan, **all of the value from the Purchase Price** is available to the Reorganized Debtors for the benefit of creditors. And, notwithstanding, section 1129(a)(9), that value is fairly and equitably allocated under the Modified Plan in a manner that is consistent with the non-guaranteed expectations as to the value available under the Confirmed Plan. Accordingly, the Modified Plan is fair and equitable.

81. Therefore, just as was the case with the Confirmed Plan, the Modified Plan meets all the requirements for confirmation under section 1191(b) and should therefore be confirmed.[9]

### D.   SETTING DEADLINES AND APPROVAL OF NOTICE THEREOF

82. The Modified Plan provides for the fixing of certain deadlines in connection with Confirmation of the Modified Plan. These deadlines are set forth in the *Notice of Modified Plan Effective Date* annexed to the Proposed Order. The Reorganized Debtors submit that the Confirmation Notice is reasonable and appropriate and requests approval thereof.

---

[9]     To the extent applicable, the Reorganized Debtors incorporate by reference the arguments set forth in the *Brief in Support of Confirmation of Subchapter V Debtor's Modified First Amended Plan of Reorganization* [D.I. 380].

E.      **WAIVER OF BANKRUPTCY RULE 6004(h)**

83.      The Reorganized Debtors believe an efficient and expeditious approval and implementation of the terms of the Modified Plan by the Reorganized Debtors are in the best interests of their creditors and other parties in interest.  Without immediate receipt of the Purchase Price, the Reorganized Debtors will be forced to promptly convert these cases to chapter 7, to the detriment of creditors and parties in interest.  Accordingly, the Reorganized Debtors seek waiver of the 14-day stay of orders authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h), and request Court approval of the Motion, approval of the modifications to the Confirmed Plan, and confirmation of the Modified Plan.

## **NOTICE**

84.      Notice of this Motion will be provided to: (i) the Office of the United States Trustee; (ii) the Subchapter V Trustee; (iii) all of the Reorganized Debtors' creditors pursuant to Bankruptcy Rule 3019; and (iv) all parties requesting notice pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested herein, the Reorganized Debtors submit that no other or further notice is necessary.

*[Remainder of page left blank intentionally]*

## CONCLUSION

WHEREFORE, the Reorganized Debtors request entry of the Proposed Order, granting the

relief requested herein and such other and further relief as is just and proper.

Dated: May 8, 2025
      Wilmington, Delaware

**PASHMAN STEIN WALDER HAYDEN, P.C.**

*/s/ John W. Weiss*
John W. Weiss (No. 4160)
Henry J. Jaffe (No. 2987)
Joseph C. Barsalona II (No. 6102)
824 North Market Street, Suite 800
Wilmington, DE 19801
Telephone: (302) 592-6496
Email: jweiss@pashmanstein.com
      hjaffe@pashmanstein.com
      jbarsalona@pashmanstein.com

-and-

Amy Oden (admitted *pro hac vice*)
Katherine R. Beilin (admitted *pro hac vice*)
Court Plaza South, East Wing
21 Main Street, Suite 200
Hackensack, NJ 07601
Telephone: (201) 488-8200
Email: aoden@pashmanstein.com
      kbeilin@pashmanstein.com

*Counsel to the Reorganized Debtors*