**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| Sticky's Holdings LLC, *et al.*, | Case No. 24-10856 (JKS) |
| Debtors.[1] | Jointly Administered |
| | **Relates to D.I. 595** |
| | **Hearing Date:  June 6, 2025 at 10:30 a.m. (ET)** |

**HARKER PALMER INVESTORS LLC'S RESPONSE TO
OBJECTION OF THE U.S. TRUSTEE TO REORGANIZED DEBTORS' MOTION
FOR ENTRY OF AN ORDER (I) AUTHORIZING THE REORGANIZED DEBTORS
TO MODIFY, AND APPROVING MODIFICATIONS TO, THE CONFIRMED
PLAN OF REORGANIZATION, (II) CONFIRMING THE SUBCHAPTER
V REORGANIZED DEBTORS' SECOND MODIFIED FIRST AMENDED
PLAN OF REORGANIZATION, AND (III) GRANTING RELATED RELIEF**

Harker Palmer Investors LLC ("Harker Palmer") hereby submits this response (the "Response") to the *Objection of the U.S. Trustee To Reorganized Debtors' Motion For Entry Of An Order (I) Authorizing The Reorganized Debtors' To Modify, And Approving Modifications To, the Confirmed Plan Of Reorganization, (II) Confirming The Subchapter V Reorganized Debtors' Second Modified First Amended Plan Of Reorganization, And (III) Granting Related Relief* [Docket No. 609] (the "UST Objection") and in support of *Reorganized Debtors' Motion For Entry Of An Order (I) Authorizing The Reorganized Debtors' To Modify, And Approving*

---

[1] The Reorganized Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number are as follows: Sticky's Holdings LLC (3586); Sticky Fingers LLC (3212); Sticky Fingers II LLC (7125); Sticky Fingers III LLC (3914); Sticky Fingers IV LLC (9412); Sticky Fingers V LLC (1465); Sticky Fingers VI LLC (0578); Sticky's BK I LLC (0423); Sticky's NJ 1 LLC (5162); Sticky Fingers VII LLC (1491); Sticky's NJ II LLC (6642); Sticky Fingers IX LLC (5036); Sticky's NJ III LLC (7036); Sticky Fingers VIII LLC (0080); Sticky NJ IV LLC (6341); Sticky's WC 1 LLC (0427); Sticky's Franchise LLC (5232); Sticky's PA GK I LLC (7496); Stickys Corporate LLC (5719); and Sticky's IP LLC (4569). The Reorganized Debtors' mailing address is 21 Maiden Lane, New York, NY 10038.

*Modifications To, the Confirmed Plan Of Reorganization, (II) Confirming The Subchapter V Reorganized Debtors' Second Modified First Amended Plan Of Reorganization, And (III) Granting Related Relief* [Docket No. 595] (the "<u>Motion</u>") and confirmation of the *SubChapter V Reorganized Debtors' Second Modified First Amended Plan Of Reorganization* [Docket No. 595-1] (as the same be by amended, the "<u>Modified Plan</u>").[2]  Harker Palmer joins and incorporates herein by this reference the Debtors' response to the UST Objection.

**A.      No Creditor Has Objected To The Modified Plan And The Modified Plan Will Be Modified To Include The Purchaser As An Exculpated Party Only To The Extent Claims Are Made Against It As A Fiduciary**

1.      The facts and circumstances of these Chapter 11 Cases are dire.  If the Modified Plan is not confirmed, conversion to chapter 7 will follow resulting in no recovery to **any** creditors. To avoid this result, the SubChapter V Trustee has undertaken heroic efforts to forge consensus among the parties resulting in not a single creditor filing an objection to the Modified Plan.  The Modified Plan is supported by the Debtors' landlords and US Foods as reflected in settlements reached with those parties.[3] In the face of these facts and creditor consensus, the UST Objection to the treatment of administrative claims should be denied, as the proposed treatment has been consented to by all affected parties. The UST Objection should also be denied with respect to the inclusion of the Purchaser as an Exculpated Party, as the exculpation clause in the Modified Plan will be modified as set out herein to make it clear that the Purchaser is only exculpated to the extent claims are made against it alleging it is a fiduciary.

2.      Even without the consent of creditors and the limited exculpation of the Purchaser, the UST Objection would fail as a matter of law.  The UST Objection is anchored in two

---

[2] Capitalized terms used herein and not defined shall have the meaning given to such terms in the Modified Plan.
[3] The settlements are reflected in modifications to the proposed Confirmed Plan Confirmation Order set forth in the revised proposed Confirmed Plan Confirmation Order being filed by the Debtors.

unsupported legal propositions – (i) that administrative claims must be paid in full under a SubChapter V plan of reorganization; and (ii) a plan of reorganization exculpation provision can only apply to estate fiduciaries.  The law in this Circuit, the Bankruptcy Code, the case law, and the facts of these Chapter 11 Cases do not support adopting the position of the U.S. Trustee ("UST") and rejecting a value maximizing transaction for creditors and supported by the Debtors' creditors.  That said, the Court need not reach these legal issues given the consent of creditors to the Modified Plan and the proposed change to the Modified Plan to limit the exculpation of the Purchaser to asserted fiduciary claims.  The discussion below is included solely in case the Court determines that there is a need to address those issues.

**B.     The Modified Plan Can Be Confirmed Without Paying Administrative Claims In Full**

3.      The UST is wrong that a SubChapter V plan of reorganization that does not pay administrative claims in full cannot be confirmed.  The express language of Sections 1191(b) and 1191(e) of the Bankruptcy Code, 11 U.S.C. § 1191(b) and (d),[4] unequivocally establishes that the fair and equitable and no unfair discrimination tests are determinative.

4.      The UST draws upon – and focuses much of its ink - on the Supreme Court's decision in *Jevic*,[5] suggesting it established a *per se* rule against priority skipping.  UST Objection at ¶¶ 19-34.  However, *Jevic* acknowledged the numerous proper instances in chapter 11 cases where priority skipping applies.  *Jevic*, 137 S.Ct. at 985.  Moreover, *Jevic* was not a SubChapter V case which expressly abrogates the requirements of section 1129(a)(2), did not involve confirmation of a plan of reorganization to which no creditor has objected as is the case here, and was focused on the propriety of a structured dismissal which is not applicable to the instant case.

---

[4] Hereinafter, all references to "section [  ]" are to the applicable section of 11 U.S.C. § 101 *et. seq.*
[5] *Czyzewski v. Jevic Holding Corp.,* 137 S. Ct. 973 (2017) ("*Jevic*").

As such, *Jevic* has no bearing on the confirmation requirements of a SubChapter V plan of reorganization under the Bankruptcy Code.  Creditors have raised no objection to the treatment of administrative claims nor have they objected to the Modified Plan as discriminating unfairly or not being fair and equitable.  The evidence establishes that the Bankruptcy Code's substantive and procedural protections have been followed.

5.      The UST also posits that the word "provide" in Section 1191(e) requires payment in full of administrative claims under a SubChapter V plan.[6]  But, the natural meaning of "provides for" does not mean "pays in full."  Rather it simply means to make available.  *See* https://www.merriam-webster.com/disctionary/provide ("to supply or make available (something wanted or needed)."  If Congress intended for "provide" as used in section 1191(e) to mean payment in a particular quantum, it knew how to say so.  There are numerous provisions in the Bankruptcy Code where Congress set forth the quantum of recovery that is required for payment of a claim.  *See, e.g.*, Sections 1129(a)(7)(A)(ii), 1129(a)(7)(B), 11129(a)(9)(A), (B)(i) and (ii), 1129(a)(9)(C)(i), 1129(a)(9)(D), 1129(b)(2)(A)(i)(II), and 1129(b)(2)(B)(i).   Section 1191(e) employes no descriptive language dictating the quantum of payment to be provided.  Instead, the section 1191(e) requirement of "provides" expressly states the standard for approval of the proposed treatment of administrative claims – "may be confirmed under subsection (b) of this section."  Section (b) of 1191 sets forth the standard for confirmation of a plan that provides for administrative claims: "if the plan does not discriminate unfairly, and is fair and equitable."  Section 1191(b).

---

[6] In an effort to avoid the direct and proper application of section 1191(e) to administrative claims of the Debtors' landlords and other administrative creditors, the UST also argues that section 365(d)(3) is a mandatory payment provision.  That is not the law.  *See, e.g.*, *In re Jughandle Brewing Co.*, *LLC*, 2024 Bankr. LEXIS 1305, at *9 (Bankr. D.N.J. 2024).  Nonetheless, the issue is moot: Harker Palmer understands that the landlords that hold 365(d)(3) claims have settled those claims and consented to the treatment proposed in the Modified Plan.

315611787V3

6.      In short, a SubChapter V plan of reorganization requires nothing more than following the express language of section 1191(e), which by reference to section 1191(b) establishes that the no unfair discrimination and fair and equitable tests are the applicable requirements for confirmation of a non-consensual SubChapter V plan of reorganization.

7.      Subchapter V carries with it a 'special rule' in Section 1191(e):

> "(e) Special Rule. – Notwithstanding section 1129(a)(9)(A) of this title, a plan that provides for the payment through the plan of a claim of a kind specified in paragraphs (2)(or (3) of section 507(a) of this title may be confirmed under subsection (b) of this section."

Section 1191(e).

8.      The "notwithstanding" lead in establishes that a plan of reorganization can be confirmed under Section 1191(b) without regard to section 1129(a)(9)(A).   In interpreting an identical "notwithstanding" lead in language to Section 1129(b)(1), the Bankruptcy Court in *In re Tribune*, 972 F.3d 228 (3d Cir. 2019) held an otherwise enforceable subordination agreement was not applicable to prevent confirmation under the cram down provisions of the Bankruptcy Code of a plan of reorganization that did not enforce the subordination agreement.   The Third Circuit reasoned, in part:

> "We have previously defined the phrase "notwithstanding" in the bankruptcy context to mean "'in spite of' or 'without prevention or obstruction from or by.'" *Goody's*, 610 F.3d at 817 (quoting Webster's Third Int'l Dictionary 1545 (1971)); *see also In re Federal-Mogul Global Inc.*, 684 F.3d 355, 369 (3d Cir. 2012) (reading the lead-in to Bankruptcy Code § 1123(a)—"notwithstanding any otherwise applicable non-bankruptcy law"—to mean that what follows in subsection (a) displaces conflicting state nonbankruptcy law). Although these cases interpret different sections of the Code, their analysis applies equally to § 1129(b)(1) because, "[p]resumptively, identical words used in different parts of the same act are intended to have the same meaning." *U.S. Nat'l Bank of Or. v. Indep. Ins. Agents of Am., Inc.*, 508 U.S. 439, 460, 113 S. Ct. 2173, 124 L. Ed. 2d 402 (1993) (internal quotation marks and citation omitted). Further, as we explained in *Federal-Mogul*, "[w]hen a federal law contains an express preemption clause, we focus on the plain wording of the clause, which necessarily contains the best evidence of Congress' preemptive intent." 684 F.3d at 369 (internal quotation

> marks omitted). Applying the lessons of *Goody's* and *Federal-Mogul* here, §
> 1129(b)(1) overrides § 510(a) because that is the plain meaning of
> "[n]otwithstanding." Thus our holding becomes simple: Despite the rights
> conferred by § 510(a), "if all of the applicable requirements of subsection (a) of this
> section [1129] . . . are met with respect to a plan, the court . . . shall confirm the
> plan . . . if [it] does not discriminate unfairly, and is fair and equitable," for each
> impaired class that does not accept the plan."

*Id.* at 237-38.

9.      As with the contractual subordination agreement otherwise enforceable under

Section 510(b), but rendered inapplicable pursuant to Section 1129(b)(1) by reason of the lead in

"notwithstanding" clause, the general rule in a chapter 11 cases that administrative claims have to

be paid in full unless the holder consents does not apply to a plan of reorganization under

Subchapter V that is confirmed under Section 1191(b) by reason of the "notwithstanding" lead in

clause in Section 1191(e).

10.     In the absence of consent by creditors – which consent has been provided in this

case - section 1191(c)(2)(B) sets forth the fair and equitable test with respect to claims that are not

secured.  The test requires the distribution of projected disposable income of a three to five year

period.  Here, all the proceeds from the proposed sale of all the Reorganized Debtors' assets will

be available for distribution to creditors on the effective date of the Modified Plan.  And,

importantly, the aggregate dollars available to holders of Allowed Administrative Claims and

holders of Allowed General Unsecured Claims is the same or greater than was projected under the

Plan that was confirmed.  *See* Motion at ¶ 20.

11.     The test for "unfair discrimination" is not modified under Subchapter V.  The

Bankruptcy Court in *In re Mallinckrodt PLC*, 639 B.R. 837 (Bankr. D. Del. 2022) summarized the

standard as follows:

> "Generally, the standard "ensures that a dissenting class will receive relative
> value equal to the value given to all other similarly situated classes." *In re*

> *Armstrong World Indus., Inc.* 348 B.R. 111, 121 (D. Del. 2006) (quoting *In re Johns-Manville Corp.*, 68 B.R. 618, 636 (Bankr. S.D.N.Y. 1986)). As the District Court for the District of Delaware observed, "[v]arious tests have emerged in the caselaw, with the hallmarks being whether there is a reasonable basis for the discrimination, and whether the debtor can confirm and consummate a plan without the proposed discrimination." *In re Nuverra Envtl. Sols. Inc.*, 590 B.R. 75, 90 (D. Del. 2018)."

*Id.* at 897.

12.     The Bankruptcy Court in *Mallinckrodt* also discussed the Third Circuit decision in *Tribune*. *Id.*    In *Tribune*, the Third Circuit noted that unfair discrimination is "subject to interpretation," *Tribune,* 972 F.3d at 242, and "is rough justice," *Id.* at 245.

13.     Here, as set forth in the Motion and declarations filed in support of it, the proposed treatment of administrative claims, secured claims and unsecured claims follows the Confirmed Plan both in structure and in value to be distributed.  While the Modified Plan modifies certain aspects of the Confirmed Plan, and neither administrative claims nor unsecured claims will receive total payments aggregating the projected amounts of the allowed claims, the Confirmed Plan did not guaranty full payment.  The Confirmed Plan was dependent upon future performance of the Reorganized Debtors.  In addition, as noted above, the aggregate dollars allocated to administrative claims and unsecured claims follows the Confirmed Plan.  While it is true that the aggregate amount of administrative claims and unsecured claims are now larger because the Confirmed Plan cannot be implemented, and thus recoveries may be lower than what was projected (but not guaranteed) under the Confirmed Plan, this outcome is the result of uncontrollable circumstances and not any discrimination that falls within the meaning of "unfair discrimination".

14.     The facts and circumstances supporting that the Modified Plan imposes no unfair discrimination and is fair and equitable are amply demonstrated in the record, as set forth in the Motion and the declarations filed in support thereof.  That record is uncontroverted.  The Motion

and the Modified Plan were served upon creditors and such notice provided that failure to object

would be deemed consent to the Modified Plan.  *See also* Del. Bankr. L.R. 3017.2 and 9013.1.  No

administrative or other creditor has objected to the proposed treatment under the Modified Plan.

By such failure to object to the Motion and the Modified Plan, all such creditors are deemed to

consent to the Modified Plan.[7]

> **C.    There Is No Third Circuit Per Se Rule That A Plan Exculpation Provision Only Applies To Estate Fiduciaries; Nonetheless The Modified Plan Is Being Modified To Limit The Exculpation Of The Purchaser To The Extent Claims Are Asserted Against The Purchaser Alleging It Is A Fiduciary**

15.    Certain parties in the instant cases have alleged that the Purchaser is an "insider"

and that Debtors have not engaged in good faith conduct in connection with the proposed

transaction with Harker Palmer or the Modified Plan.  Harker Palmer vehemently denies any such

allegations and notes that they are contradicted by the unequivocal evidence in the record.  *See*

Motion and declaration filed in support of the Motion.  But, neither Harker Palmer's views, nor

the facts or the law, prevent litigation from being commenced.

16.    In light of such concerns, and in response to the UST Objection, for purposes of

clarification Harker Palmer has agreed to a modification to the exculpation provision in the

Modified Plan as reflected in the added language underlined in red below.  By this modification,

Harker Palmer would only be covered by the exculpation provision if claims are brought against

it alleging it is a fiduciary.   If a fiduciary related claim is asserted, it would be covered by the

revised Modified Plan exculpation provision and Harker Palmer would (and should) be exculpated

without having to incur the expense and delay of such litigation.  If fiduciary related claim is not

asserted but other claims are, such other claims would not be covered by the revised exculpation

---

[7] Where notice and an opportunity to object has been provided to creditors and creditors do not act, such failure has long been established to constitute consent.  *See, e.g., Wellness Int'l Network, Ltd. v. Sharif,* 135 S.Ct. 1932 (S. Ct. 2015).

315611787V3

provision. In this way, the revised exculpation provision would be applied to Harker Palmer consistent with the position of the UST.

7.11 Exculpation

None of the Debtors, their Professionals, Greer, the Debtors' officers and directors that served any time on or after the Petition Date, the Subchapter V Trustee, or the Purchaser, in its capacity as purchaser of the Purchased Assets solely to the extent the Purchaser is alleged to be a fiduciary and/or held to be a fiduciary, (collectively, the "Exculpated Parties") shall have or incur any liability to any Holder of a Claim or Equity Interest, or other party in interest, with respect to any Exculpated Claim, including, without limitation, any act or omission in connection with, related to, or arising out of, in whole or in part, the Debtors' Chapter 11 Cases from the Petition Date to the Modified Plan Effective Date, except for willful misconduct, gross negligence, fraud or criminal misconduct as determined by a Final Order of a court of competent jurisdiction, and, in all respects, the Exculpated Parties shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under the Modified Plan.

17.    Harker Palmer submits that the exculpation clause as revised is appropriate, particularly given that the UST is also mistaken in asserting that the Third Circuit has held that a plan of reorganization exculpation provision of post-petition actions can only apply to estate fiduciaries. The Third Circuit in *Haskell v. Bruno's, Inc. (In re PWS Holding Corp.),* 228 F.3d 224 (3rd Cir. 2000) ("*PWS*") - the case relied upon by the UST - expressly rejected any such *per se* rule. With the revised exculpation provision in the Modified Plan, the Court does not have to reach this legal issue, but a review of the *PWS* decision confirms that the revised exculpation provision is appropriate under the controlling law.

18.    In *PWS*, the Third Circuit, drawing upon its prior decision in *In re Continental Airlines*, 203 F.3d 203, 210 (3rd Cir. 2000) ("*Continental II*"), rejected a *per se* prohibition on plan exculpation provisions. *PWS*, 228 F.3d at 247 ("We did not treat § 524(e) as a per se rule barring any provision in a reorganization plan limiting the liability of **third parties**. Because of the differences between the releases in the two cases [*PWS* and *Continental II*], *Continental II* does not compel the conclusion that this release is impermissible. Indeed, because this release does not

affect the liability of **third parties**, but rather sets forth the appropriate standard of liability, we believe that this release is outside the scope of § 524(e)." *Id.* (emphasis added).

19.     Not only did the Third Circuit in *PWS* not set out a *per se* rule regarding plan exculpation provisions, but the Third Circuit's exculpation discussion was not limited to estate fiduciaries, but rather refers to "third parties" generally.  Indeed, the exculpation at issue in *PWS*, paragraph 58 of the plan of reorganization, covered an array of parties, including New Brunos, employees, advisors, professionals and agents.  *Id.* at 246 ("none of the Debtors, the Reorganized Debtors, New Bruno's, the Creditor Representative, the Committee or any of their respective members, officers, directors, employees, advisors, professionals or agents shall have or incur any liability…, except for willful misconduct or gross negligence, and, in all respects, the Debtors, the Reorganized Debtors, New Bruno's, the Creditor Representative, the Committee and each of their respective members, officers, directors, employees, advisors, professionals and agents shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under the plan.").  As such, *PWS* itself approved exculpation of persons who were not expressly estate fiduciaries.  Thus, *PWS* provides no controlling appellate support for limiting an exculpation plan provision to a narrowly defined set of estate fiduciaries.

20.     Rather, the *PWS* case acknowledges the commonplace occurrence of plan exculpation provisions, endorses their inclusion in a plan of reorganization, and confirms that an exculpation provision does not alter liability but merely sets forth the governing standard of liability.  As the Third Circuit stated: "However, we believe that Paragraph 58, which is apparently a commonplace provision in Chapter 11 plans, does not affect the liability of these parties, but rather states the standard of liability under the Code, and thus does not come within the meaning of § 524(e)." *Id.* at 245.

- 10 -

21.     In the instant case, the revised exculpation provision in Section 7.11 of the Modified Plan similarly conforms to the standard of liability for the Exculpated Parties.

22.     The UST Objection also relies upon the decisions in *In re Washington Mut., Inc.*, 442 B.R. 314, 350-51 (Bankr. D. Del. 2011), *In re Indianapolis Downs, LLC.*, 486 B.R. 286, 306 (Bankr. D. Del. 2013), *In re Tribune Co.*, 464 B.R. 126, 189 (Bankr. D. Del. 2011), and *In re PTL Holdings LLC*, 2011 WL 5509031, at *11-*12 (Bankr. D. Del. Nov. 10, 2011).  These cases do not establish a controlling *per se* rule as to the scope of a plan exculpation that is binding on this Court.[8]

23.     In *Washington Mutual* the court stated, without analysis or explanation: "That fiduciary standard, however, applies only to estate fiduciaries."  *In re Washington Mut., Inc.*, 442 B.R. at 350.  The *Washington Mutual* Court's statement that that estate fiduciaries could be exculpated is correct.  This sentence can equally be interpreted to mean that (i) an exculpation provision that applies to non-estate fiduciaries may be appropriate but would require a different standard, or (ii) only estate fiduciaries are entitled to the benefit of an exculpation provision.  With only one untethered sentence, the *Washington Mutual* decision provides no guidance as to the rationale, analysis or support for reading the *PWS* decision as establishing a *per se* rule that a plan exculpation can only apply to estate fiduciaries.

24.     The following decisions in *Indianapolis Downs* and *Tribune* provide no further rationale, analysis or support for limiting a plan exculpation provision, as they simply parrot the

---

[8] *See* "*Threadgill v. Armstrong World Industries, Inc.*, 928 F.2d 1366, 1371 (3d Cir. 1991) ("[I]t is clear that there is no such thing as the law of the district.  Even where the facts of a prior district court case are, for all practical purposes, the same as those presented to a different district court in the same district, the prior resolution of those claims does not bar reconsideration by this Court of similar contentions.  The doctrine of stare decisis does not compel one district court judge to follow the decision of another.") (internal citations omitted); *see also Marcus Montgomery Wolfson & Burten, P.C. v. AM Int'l (In re AM Int'l)*, 203 B.R. 898, 905 (applying the *Threadgill* rule to bankruptcy court decisions).

decision in *Washington Mutual*. *Indianapolis Downs*, 486 B.R. at 306, and *Tribune*, 464 B.R. at

189.

25.     It is only in *PTL Holdings* that an attempt is made to explain the basis for the

decision in *Washington Mutual*, but even there the court did not engage in a full analysis of the

rationale for limiting plan exculpation to estate fiduciaries, but rather stated that such a limitation

is an "implication" of the holding in *PWS*:

> The *Washington Mutual* court based its reasoning on the Third Circuit's decision in
> *In re PWS Holding Corp.,* 228 F.3d 224 (3d Cir. 2000), which held that a plan may
> exculpate a creditor's committee, its members, and estate professionals for their
> actions in the bankruptcy case, except where those actions amount to willful
> misconduct or gross negligence. *Id.* at 246. The *PWS* court's reasoning thus **implies**
> that a party's exculpation is based upon its role or status as a fiduciary. That is why
> as the *Washington Mutual* court pointed out, courts have permitted exculpation
> clauses insofar as they "merely state[ ] the standard to which ... estate fiduciaries
> [a]re held in a chapter 11 case." *Wash. Mut.,* 442 B.R. as 350. "That fiduciary
> standard, however, applies only to estate fiduciaries," no one else. Accordingly, the
> exculpation clause here must be reeled into include only those parties who have
> acted as estate fiduciaries and their professionals. *See Tribune,* 2011 Bankr. LEXIS
> 4128 at *160–61 (holding that exculpation provision must "exclude non-
> fiduciaries"). The U.S. Trustee's objection is therefore sustained.

*PTL Holdings*, 2011 WL 5509031, at *12 (emphasis added).  While the court in *PTL Holdings*

adopted the view that a plan exculpation should be limited to estate fiduciaries based on the

implication, it did not engage in an analysis of the reasoning supporting the implication, let alone

a *per se* rule.

26.     The Ninth Circuit took a broader approach.  In *Blixseth v. Credit Suisse*, 961 F.3d

1074, 1084 (9th Cir. 2020), the Ninth Circuit approved exculpation of non-estate fiduciaries,

including the debtors' largest creditor, and explaining the exculpation clause allowed parties to

"engage in the give-and-take of the bankruptcy proceeding without fear of subsequent litigation".

27.     Numerous other courts have similarly approved plan exculpation provisions for

persons that were not fiduciaries, including secured creditors, plan administrators, lenders, equity

holders, and other parties involved in the formulation of the debtor's plan.  *See, e.g.*, *In re Astria Health*, 623 B.R. 793, 799-800 (Bankr. E.D. Wash. 2021) (holding that an exculpation may properly be applied to non-estate fiduciaries, including the debtors' main secured creditor); *In re Murray Metallurgical Coal Holdings, LLC*, 623 B.R. 444, 502-03 (Bankr. S.D. Ohio 2021) (holding that it was appropriate to apply the exculpation to non-estate fiduciaries to ensure that skilled parties participated in the formulation of a debtor's chapter 11 plan); *In re Ditech Holding Corp.*, 606 B.R. 544, 631–32 (Bankr. S.D.N.Y. 2019) (holding exculpation provision that included the plan administrator was reasonable and could be approved); *In re Cumulus Media Inc., et al.*, Case No. 17-13381 (SCC) [Docket No. 769] (Bankr. S.D.N.Y. May 10, 2018) (approving exculpation for term loan lenders and equity holders); *In re Garlock Sealing Technologies LLC*, Case No 10-31607 (JCW) [Docket No. 5972] (Bankr. W.D.N.C. May 24, 2017) (approving exculpation for ad hoc asbestos claimants committee and other non-estate fiduciaries).

28.     The UST also objects to the Modified Plan exculpation provision to the extent it applies to actions after the "Effective Date."  UST Objection at ¶ 42-43.  The UST's objection is misguided.  While the Confirmed Plan Effective Date occurred, the Reorganized Debtors remained under the Court's supervision following the Confirmed Plan Effective Date, and the Modified Plan, if confirmed, will reset a new Effective Date that will be controlling.  *Astria Health*, 623 B.R. at 798-799  (holding the exculpation provision was appropriate, noted the provision covered the period "during which the debtors and their affairs were subject to this court's supervision").  As such, the Exculpation Provision would cover all actions prior to the Modified Plan Effective Date.

29.     Harker Palmer has gone to great lengths to provide funding for, and a process to, salvage the failed Confirmed Plan, and to set in motion a consensual Modified Plan that provides a recovery for stakeholders that would not happen in a chapter 7 case.   With the assistance of the

315611787V3

Subchapter V Trustee, administrative creditors and the Debtors have worked together to forge consensus regarding that Modified Plan. As the Modified Plan complies with applicable law, Harker Palmer requests that the Court overrule the UST Objection and approve the Modified Plan with the modification to the exculpation provision set forth herein.

Respectfully submitted,

Dated: June 3, 2025            /s/ *David M. Fournier*
      Wilmington, Delaware       David M. Fournier (DE No. 2812)
                           TROUTMAN PEPPER LOCKE LLP
                           Hercules Plaza, Suite 1000
                           1313 N. Market Street, P.O. Box 1709
                           Wilmington, DE 19899-1709
                           Telephone: (302) 777-6500
                           Email: david.fournier@troutman.com

                           -and-

                           GOODWIN PROCTER LLP
                           Michael H Goldstein (admitted *pro hac vice*)
                           The New York Times Building
                           620 Eighth Avenue
                           New York, New York 10018
                           Telephone: (212) 813-8800
                           Email: mgoldstein@goodwinlaw.com

                           *Attorneys for Harker Palmer Investors LLC*

- 14 -